# EXHIBIT A

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**FOR COURT USE ONLY**
**(SOLO PARA USO DE LA CORTE)**

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):**

H&R BLOCK, INC., HRB TAX GROUP, INC., HRB DIGITAL LLC, and DOES 1 THROUGH 50,

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**

PELANATITA OLOSONI, and DEREK SNARR, on behalf of themselves, the general public, and those similarly situated,

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is: | CASE NUMBER: |
|---|---|
| (El nombre y dirección de la corte es): | (Número del Caso): **CGC-19-576093** |
| San Francisco Superior Court, 400 McAllister Street, San Francisco, CA 94012 | |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Seth A. Safier, Gutride Safier LLP, 100 Pine St., #1250, San Francisco, CA 94111; 415-336-6545

| DATE: | **MAY 1 7 2019** | CLERK OF THE COURT | Clerk, by | SANDRA L. SCHIRO | , Deputy |
|---|---|---|---|---|---|
| (Fecha) | | | (Secretario) | | (Adjunto) |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☒ on behalf of (specify): HRB DIGITAL LLC   c/o CT Corporation (mth)
   1205 Central Ave.
   Clayton mo 6/1/us

   Under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
   ☒ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other (specify):
4. ☐ by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

H&R BLOCK, INC., HRB TAX GROUP, INC., HRB DIGITAL LLC,
and DOES 1 THROUGH 50,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

PELANATITA OLOSONI, and DEREK SNARR, on behalf of
themselves, the general public, and those similarly situated,

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | CASE NUMBER:<br>*(Número del Caso):* CGC-19-576093 |
|---|---|

The name and address of the court is:
*(El nombre y dirección de la corte es):*
San Francisco Superior Court, 400 McAllister Street, San Francisco, CA 94012

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Seth A. Safier, Gutride Safier LLP, 100 Pine St., #1250, San Francisco, CA 94111; 415-336-6545

| DATE:<br>*(Fecha)* | MAY 17 2019 | CLERK OF THE COURT | Clerk, by<br>*(Secretario)* | SANDRA L. SCHIRO | , Deputy<br>*(Adjunto)* |
|---|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

| [SEAL] | **NOTICE TO THE PERSON SERVED:** You are served |
|---|---|

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):* (math)
3. ☒ on behalf of *(specify):* H&R BLOCK, INC.   c/o CT Corporation System 120 S. Central Ave Clayton mo 63105

   under: ☒ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

H&R BLOCK, INC., HRB TAX GROUP, INC., HRB DIGITAL LLC,
and DOES 1 THROUGH 50,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

PELANATITA OLOSONI, and DEREK SNARR, on behalf of
themselves, the general public, and those similarly situated,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
San Francisco Superior Court, 400 McAllister Street, San Francisco, CA
94012

CASE NUMBER:
*(Número del Caso):* **CGC-19-576093**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Seth A. Safier, Gutride Safier LLP, 100 Pine St., #1250, San Francisco, CA 94111; 415-336-6545

| DATE: *(Fecha)* | **MAY 1 7 2019** | **CLERK OF THE COURT** Clerk, by *(Secretario)* | SANDRA L SCHIRO | , Deputy *(Adjunto)* |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒☒ on behalf of *(specify):* HRB TAX GROUP, INC. c/o CT Corporation Svc
   1205 S. Corporation
   Clayton MO 63105

   under: ☒☒ CCP 416.10 (corporation)
   ☐ CCP 416.20 (defunct corporation)
   ☐ CCP 416.40 (association or partnership)
   ☐ other *(specify):*

   ☐ CCP 416.60 (minor)
   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.90 (authorized person)

4. ☐ by personal delivery on *(date):*

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

H&R BLOCK, INC., HRB TAX GROUP, INC., HRB DIGITAL LLC,
and DOES 1 THROUGH 50,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

PELANATITA OLOSONI, and DEREK SNARR, on behalf of
themselves, the general public, and those similarly situated,

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>San Francisco Superior Court, 400 McAllister Street, San Francisco, CA 94012 | CASE NUMBER:<br>*(Número del Caso):*<br>**CGC-19-576093** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Seth A. Safier, Gutride Safier LLP, 100 Pine St., #1250, San Francisco, CA 94111; 415-336-6545

| | | | | |
|---|---|---|---|---|
| DATE: **MAY 17 2019**<br>*(Fecha)* | CLERK OF THE COURT<br>*(Secretario)* | Clerk, by<br>S. Sa__ | , Deputy<br>*(Adjunto)* | |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served          SANDRA L. SCHIRO

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)          ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL] SUPERIOR COURT OF CALIFORNIA COUNTY OF SAN FRANCISCO EUREKA

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courtinfo.ca.gov* |

**GUTRIDE SAFIER LLP**
ADAM J. GUTRIDE (State Bar No. 181446)
SETH A. SAFIER (State Bar No. 197427)
MARIE A. MCCRARY (State Bar No. 262670)
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 336-6545
Facsimile: (415) 449-6469
adam@gutridesafier.com
seth@gutridesafier.com
marie@gutridesafier.com

Attorneys for Plaintiffs

**F I L E D**
San Francisco County Superior Court

MAY 1 7 2019

CLERK OF THE COURT
BY: _Sandra_ _Sabir_
Deputy Clerk

FILE BY FAX

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

| | |
|---|---|
| PELANATITA OLOSONI, and DEREK SNARR, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>H&R BLOCK, INC., HRB TAX GROUP, INC., HRB DIGITAL LLC, and DOES 1 THROUGH 50,<br><br>Defendants. | Case No. **CGC-19-576093**<br><br>**UNLIMITED CIVIL CASE**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

1

## INTRODUCTION

1.     Plaintiffs Pelanatita Olosoni and Derek Snarr, on behalf of themselves, the general public, and those similarly situated, (collectively "Plaintiffs"), by and through their attorneys, bring this class action against Defendants H&R Block, Inc., HRB Tax Group, Inc., HRB Digital LLC, and Does 1-50, inclusive (collectively "Defendants" or "H&R Block"), for violations of California's Consumer Legal Remedies Act ("CLRA"), California Civil Code §§ 1750 *et seq.*; False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; and Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*; and for breach of contract and unjust enrichment. Plaintiffs allege the following upon information and belief, except for those allegations that specifically pertain to Plaintiffs, which are based on Plaintiffs' personal knowledge.

2.     Defendants market and sell the H&R Block brand of tax preparation software and services to consumers and businesses.

3.     In 2002, the Internal Revenue Service ("IRS") launched a program pursuant to which the majority of taxpayers in the United States would be able, and would be encouraged, to e-file their federal tax returns for free. To accomplish this goal, the IRS partnered with private companies to handle the e-filing services and processes. Under the program, all taxpayers with adjusted gross income below the 70th percentile (currently, below $66,000 per year) are eligible for free online filing.

4.     Through their participation in the IRS "Free File" program, Defendants are required to make available free electronic tax filing services to certain eligible taxpayers and to refrain from marketing their commercial services in competition with the Free File program. While Defendants purport to offer such a free service, available at https://www.hrblock.com/ffa/ (referred to herein as "Defendants' True Free File Service" or "H&R Block Free File"), Defendants are affirmatively acting to hide that program from taxpayers and to divert taxpayers seeking free e-filing services into Defendants' paid programs. These actions violate both California law and Defendants' agreement with the IRS.

2

1    5.    Defendants aggressively advertise, and direct consumers to, a competing service

2    that Defendants represent as "free," "free tax filing," and "H&R Block's free online tax filing,"

3    available at https://www.hrblock.com/online-tax-filing/free-online-tax-filing/ (Defendants' "Fake

4    'Free' Offer"), which is *not* the same as Defendants' True Free File Service and which is

5    ultimately *not* free for most taxpayers. Defendants' Fake "Free" Offer is a lure Defendants use to

6    ensnare unsuspecting taxpayers. At the same time, Defendants take steps to hide the existence of

7    Defendants' True Free File Service, including intentionally hiding it from search engines and

8    depressing its search rankings. This is essentially a bait-and-switch scheme: Defendants use

9    deceptive, misleading, and unfair marketing and tactics to divert taxpayers from the true IRS Free

10   File program into their Fake "Free" Offer (or to pages promoting it), and then Defendants tell

11   taxpayers who are eligible for free filing under the IRS Free File program that they have to pay

12   for Defendants' tax preparation services ("Defendants' Bait-and-Switch Program").

13   6.    The majority of taxpayers are eligible to file their tax returns for free and should be

14   directed to one of the IRS Free File offers. By contrast, only a small portion of taxpayers satisfy

15   the conditions for filing a free return within the Fake "Free" part of Defendants' Bait-and-Switch

16   Program. Nonetheless, Defendants heavily promote their Bait-and-Switch Program, manipulate

17   search engine results to divert taxpayers seeking free services (such as Defendants' True Free File

18   Service) into Defendants' Bait-and-Switch Program, and then prompt many taxpayers to pay

19   Defendants for services that those taxpayers do not need. Once Defendants lure taxpayers into

20   Defendants' Bait-and-Switch program, Defendants falsely and misleadingly tell most of them that

21   they must pay to file their tax returns, even though the taxpayers are actually eligible to file their

22   returns for free through Defendants' True Free File Service or through another IRS Free File

23   program available from another provider. Defendants' deceptive conduct of creating the Bait-and-

24   Switch program misleads reasonable taxpayers to believe that they are ineligible for the IRS Free

25   File program, when in fact they are eligible.

26   7.    For those few taxpayers who actually make it to the landing page for Defendants'

27   True Free File Service, those over the age of 51 will find that they are generally ineligible for

28

1    Defendants' True Free File Service, even though they are eligible for free filing under multiple

2    other free services within the IRS Free File program. But Defendants do not inform such

3    taxpayers that there are other free filing offers or that the IRS Free File program is much broader

4    than Defendants' True Free File Service. Instead, they mislead reasonable taxpayers to believe

5    that they are ineligible for the IRS Free File program, when in fact they are eligible, and that they

6    must pay to file with H&R Block, when in fact there are other free options that are readily

7    available to such taxpayers.

8        8.    In pursuing this scheme, Defendants disregard (and intentionally violate) their

9    agreement with the IRS, which requires Defendants to direct taxpayers to other free e-filing

10   services when they do not qualify for Defendants' True Free File Service, and which requires

11   Defendants to refrain from marketing their paid services in such direct competition with and to

12   the disadvantage of the IRS Free File program. Defendants' marketing campaign is not only

13   deceptive but, at a minimum, it unfairly violates the spirit of Defendants' contract with the IRS, in

14   which Defendants agreed to ensure that taxpayers, especially lower income taxpayers, would

15   have unfettered access to free e-filing services.

16       9.    Throughout the relevant period, Defendants have obtained substantial profits from

17   their unlawful, deceptive and unfair practices.

18                            **PARTIES**

19       10.   Plaintiff Pelanatita Olosoni is, and at all times alleged in this Complaint was, an

20   individual and resident of Hayward, California.

21       11.   Plaintiff Derek Snarr is, and at all times alleged in this Complaint was, an

22   individual and resident of San Francisco, California.

23       12.   Defendant H&R Block, Inc. is a company existing under the laws of the State of

24   Missouri, having its principal place of business at One H&R Block Way, Kansas City, Missouri

25   64105.

26

27

28

Class Action Complaint

1    13.    Defendant HRB Tax Group, Inc. is a company existing under the laws of the State

2  of Missouri, having its principal place of business at One H&R Block Way, Kansas City,

3  Missouri 64105.

4    14.    Defendant HRB Digital LLC is a company existing under the laws of the State of

5  Delaware, having its principal place of business at One H&R Block Way, Kansas City, Missouri

6  64105.

7    15.    The Defendants sued as Does 1 through 50 inclusive are individuals who

8  participated in the tortious conduct alleged herein but whose true names and capacities are

9  unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names.  Plaintiffs will

10  seek leave of Court to amend this Class Action Complaint when said true names and capacities

11  have been ascertained.

12    16.    The Parties identified in paragraphs 12-15 of this Class Action Complaint are

13  collectively referred to hereafter as "Defendants."

14    17.    With respect to the allegations herein, each of the Defendants was each other's

15  agent and, in doing the things herein alleged, was acting within the scope and course of its

16  authority as such agent.

17    18.    With respect to the allegations herein, each of the Defendants was a member of,

18  and engaged in, a joint venture, partnership and common enterprise, and acting within the course

19  and scope of, and in pursuance of, said joint venture, partnership and common enterprise.

20    19.    With respect to the allegations herein, the acts and omissions of each of the

21  Defendants concurred and contributed to the various acts and omissions of each and all of the

22  other Defendants in proximately causing the injuries and damages as herein alleged.

23    20.    With respect to the allegations herein, each of the Defendants ratified each and

24  every act or omission complained of herein. At all times herein mentioned, each of the

25  Defendants aided and abetted the acts and omissions of each and all of the other Defendants in

26  proximately causing the damages, and other injuries, as herein alleged.

27

28

**JURISDICTION AND VENUE**

21.     Plaintiffs bring this action pursuant, *inter alia*, to the California Business and Professions Code, section 17200, *et seq.* Plaintiffs and Defendants are "persons" within the meaning of the California Business and Professions Code, section 17201.

22.     The injuries, damages and/or harm upon which this action is based, occurred or arose out of, and will continue to occur and arise out of, activities engaged in by Defendants within and affecting the State of California.

23.     Defendants aggressively market their tax preparation services in California to citizens of California, have engaged in numerous transactions with California taxpayers, have harmed many California taxpayers, and will continue to harm many California taxpayers, as alleged herein.

24.     Defendants have engaged, and continues to engage, in substantial and continuous business practices in the State of California, including in the County of San Francisco.

25.     Defendants have an Online Services Agreement associated with their online tax preparation services, which includes an arbitration provision that states, in part, as follows:

> 11.3 **Waiver of right to bring class action and representative claims.** All arbitrations will proceed on an individual basis. The arbitrator is empowered to resolve the dispute with the same remedies available in court, including compensatory, statutory, and punitive damages; attorneys' fees; and declaratory, injunctive, and equitable relief. However, any relief must be individualized to you and will not affect any other client. The arbitrator is also empowered to resolve the dispute with the same defenses available in court, including but not limited to statutes of limitation. **You and the H&R Block Parties also agree that each may bring claims against the other in arbitration only in your or their respective individual capacities and in so doing you and the H&R Block Parties hereby waive the right to a trial by jury, to assert or participate in a class action lawsuit or class action arbitration, to assert or participate in a private attorney general lawsuit or private attorney general arbitration, and to assert or participate in any joint or consolidated lawsuit or joint or consolidated arbitration of any kind.** If a court decides that applicable law precludes enforcement of any of this paragraph's limitations as to a particular claim for relief, then that claim for relief (and only that claim for relief) must remain in court and be severed from any arbitration. The H&R Block Parties do not consent to, and the arbitrator will not have authority to conduct, any class action arbitration, private attorney general arbitration, or arbitration involving joint or consolidated claims, under any circumstance.

26.     Under *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017), Defendants' arbitration provision purports to deprive California taxpayers of their right to seek a public injunction under the CLRA, FAL, and UCL in any forum and thus is not enforceable. This action is not subject to arbitration because it seeks public injunctive and declaratory relief, under *McGill*, to prohibit Defendants from continuing their deceptive and unfair practices and to protect the general public from the threat of future injury. Moreover, Defendants' arbitration provision explicitly states that "If a court decides that applicable law precludes enforcement of any of this paragraph's limitations as to a particular claim for relief, then that claim for relief (and only that claim for relief) must remain in court and be severed from any arbitration." Under the express terms of this arbitration provision, the claims asserted in this lawsuit "must remain in court" and are not subject to the limitations of Defendants' purported arbitration agreement.

27.     In addition, Plaintiff Snarr has opted out of the arbitration within 60 days, as provided by Defendants' Online Services Agreement:

> **Right to Opt Out of This Arbitration Agreement: You are not required to accept arbitration even though you must accept this Agreement to receive service today. You may opt out of this Arbitration Agreement within the first 60 days after you accept this Agreement by fully filling out the form found at www.hrblock.com/goto/optout, or by sending a signed letter to Arbitration Opt-Out, P.O. Box 32818, Kansas City, MO 64171. The letter should include your printed name, the first five digits of your Social Security Number, state, zip code, and the words "Reject Arbitration." If you opt out of this Arbitration Agreement, any prior arbitration agreement will remain in force and effect.**

28.     Plaintiff Snarr filed his federal and state tax returns on April 15, 2019, and opted out of the above-referenced arbitration provision on May 14, 2019, by filling out the form found at www.hrblock.com/goto/optout.

29.     In accordance with California Civil Code Section 1780(d), Plaintiffs file herewith a declaration, attached as Exhibit 1, establishing that they are filing this lawsuit in the county in which Plaintiff Snarr filed his tax return and was harmed.

30.     Plaintiffs accordingly allege that jurisdiction and venue are proper in this Court.

## SUBSTANTIVE ALLEGATIONS

### A.    Defendants' Online Tax Services

31.    Defendants develop, market, sell, operate, and control a number of financial products and services, including electronic tax preparation and filing software, services, and applications. According to a press release, dated April 24, 2019, on Defendants' website, H&R Block products and services were used to prepare more than 20 million tax returns in the United States in Defendants' most recent fiscal year. About 2 million of those were through desktop products and about 6 million were filed online, while only 661,000 of those were part of the IRS Free File program. *See* https://www.hrblock.com/tax-center/newsroom/around-block/financial-statements/tax-season-volume-april-19-2019/ (last accessed May 14, 2019).

32.    Electronic tax preparation and filing software and services generally consist of two basic components: a user interface that prompts users to provide relevant information and an electronic tax engine which processes the information. The interface is similar to that with a live tax preparer. Through a series of questions, taxpayers provide information to the software, which is then processed by the tax engine for calculation. The tax engine is a software program based upon federal and state tax codes and regulations.

33.    Defendants offer a desktop version of their software as well as an online version and a mobile application version. Taxpayers using the online version of H&R Block tax preparation software and services create an account and fill out their tax information through a web-based or smartphone-based program or interface. Nearly all of Defendants' electronic tax preparation and filing software and services are sold to consumers and businesses for a fee. Among those marketed to the public for profit by Defendants is their Fake "Free" Offer, which is only free in limited instances and which is used by Defendants as part of their Bait-and-Switch Program to extract money from vulnerable taxpayers. Although most taxpayers (and all taxpayers with AGI of $66,000 or less in 2018) are entitled to file their returns for free, Defendants deceptively and unfairly inform those taxpayers that they are required to pay for Defendants' tax

services. (Defendants' for-profit tax preparation offerings are collectively referred to herein as "Paid HRB Tax Programs.")

**B.    IRS Free File Program**

34.    Congress passed the Restructuring and Reform Act of 1998, which set goals to have at least 80 percent of all federal tax returns filed electronically by 2007. To meet this 80 percent benchmark, the IRS developed a "Free File" program in 2001-2002, whereby, in theory, the majority of taxpayers would be entitled to e-file their federal tax returns for free.

35.    Rather than develop its own software to allow for the filing of tax returns electronically, the IRS decided to partner with established private software companies to provide free tax preparation and filings services. In 2002, Free File Alliance, LLC was formed, consisting of companies engaged in the electronic tax preparation and filing industry ("Members"), including the major electronic tax preparation companies such as Defendants. In 2010, those Members formed Free File, Inc. to take the place of Free File Alliance, LLC, but the Members and Free File, Inc. still sometimes use the name "Free File Alliance" to refer to themselves. (Free File, Inc. and its predecessor Free File Alliance, LLC are collectively referred to herein as "FFI.")

36.    On October 30, 2002, FFI and the IRS entered into a 3-year agreement that set forth parameters for the IRS Free File program, pursuant to which FFI would offer free online tax preparation and filing services to the majority of taxpayers. In exchange for providing this service, the IRS agreed not to independently develop and maintain its own tax return e-filing system.

37.    In particular, the Free File program is intended to serve all taxpayers with an adjusted gross income ("AGI") equal to or less than that of 70 percent of all taxpayers for the prior year ("Eligible Taxpayers"). For the 2018 tax year, taxpayers with an AGI of $66,000 or less would qualify for the Free File program. To further encourage e-filing, the IRS provides substantial incentives to taxpayers who file their returns electronically, including quicker processing and more rapid tax refunds, and threatens those who do not with a greater likelihood of an audit.

Class Action Complaint

38.     FFI and IRS have subsequently renewed their original agreement and entered into supplemental Memorandum of Understanding agreements to the original agreement. The current operating agreement between FFI and the IRS is the Eighth Memorandum of Understanding on Service Standards and Disputes Between the Internal Revenue Service and Free File, Incorporated ("Eighth MOU", attached hereto as Exhibit 2), which became effective on October 31, 2018 and has a termination date of October 31, 2021. As a Member of FFI, Defendants agreed to and are bound by the Eighth MOU.

C.     **The Eighth MOU Requires FFI Members to Provide Filers With Easy, Streamlined Access to Free Tax Filing Services.**

39.     Under the terms of the Eighth MOU, FFI Members are to assist the IRS in increasing electronic filing of tax returns, and in particular, provide those services "to economically disadvantaged and underserved populations at no cost to either the individual user or to the public treasury." Ex. 2, Art. 2. In participating in the program, the FFI Members explicitly agree "to serve the greater good" and acknowledge that the program "is focused on covering the taxpayers least able to afford e-filing their returns on their own." *Id.* FFI Members also agree to "[m]ake tax return preparation and filing easier and reduce the burden on individual taxpayers, particularly the economically disadvantaged and underserved populations," *Id.*, § 2.1; and "provid[e] taxpayers the option to file their tax return online without charge." *Id.*, § 2.4.

40.     Pursuant to the Eighth MOU, FFI as a whole is required to make free e-filing services available to all Eligible Taxpayers. Each Member of FFI is only responsible, however, to serve between 10% and 50% of Eligible Taxpayers. Accordingly, the Members of FFI have agreed among themselves that each Member will serve only a portion of Eligible Taxpayers, based on various criteria, so that all Eligible Taxpayers have access to at least one platform on which they can e-file their return. In other words, Members agree that some Members will serve only qualified taxpayers who make over a certain amount or require the use of certain additional schedules, whereas others will serve only those with lower AGIs or do not need those schedules. Defendants have agreed with FFI Members to offer free e-filing services to taxpayers with

$66,000 or less in AGI and: (i) who are between the ages of 17 and 51; (ii) who have been on active duty in the military; or (iii) who qualify for the Earned Income Credit. Other Members serve non-military taxpayers with up to $66,000 of AGI, with different exclusions. The various factors that a consumer must consider to determine which Member's offer he or she qualifies for is complex. The current list of available offers under the IRS Free File program is available at https://apps.irs.gov/app/freeFile (last accessed Apr. 30, 2019).

41.    To ensure that Eligible Taxpayers are able to e-file for free, FFI and the IRS have agreed that each Member must set up their e-filing system in such a way so as to ensure taxpayers who do not qualify for that particular Member's free e-filing service can easily locate a free e-filing service for which they do qualify. Ex. 2, §§ 4.19.2(iii), 4.32.2. Specifically, in the event that a taxpayer is ineligible for Defendants' Free File offer, Defendants is required to direct the taxpayer "back to the IRS Free File Landing Page as the first and most prominent alternative action so that [the taxpayer] may immediately consider other Free File offers available from the Free File Program." Ex. 2, §§ 4.19.2(iii).

42.    FFI and the IRS agreed that the IRS Free File program should not be used by FFI Members to sell their commercial products and services. Members are not permitted to include "a 'value-added' button (i.e., an icon, link, or any functionality that provides a taxpayer with access to a Member's commercial products or services) on the Member's Free File Landing Page." Ex. 2, § 4.32.6. More generally, "[n]o marketing, soliciting, sales or selling activity, or electronic links to such activity are permitted in the Free File Program," with two limited exceptions. The first exception is the sale of a federal return **after** the taxpayer is notified that he or she is ineligible for the Member's Free File offer, has been directed back to the IRS Free File Landing Page to consider other Free File offers, and has nonetheless chosen "to complete and file his or her return using the Member's commercial offer." Ex. 2, § 4.32.5. The second exception is for "disclosures or sales (as applicable) related to free or paid state tax preparation offers as specifically provided for in this MOU." *Id.*

43.     Once a taxpayer has filed a return using a Member's Free File service, the Member is required to send at least one email to the taxpayer prior to the next year's tax season reminding the taxpayer of that Member's Free File offer and inviting the taxpayer to return to that Member's Free File Landing Page. Ex. 2, § 4.32.4. Free File Members may not use that communication to market non-Free File products or services.

**D.      Defendants' Bait-and-Switch Program Is Designed to Trick Taxpayers Into Paying to E-File and Violates the Terms and Spirit of the Eighth MOU.**

44.     Defendants purport to offer two separate "free" services: Defendants' True Free File Service and Defendants' Bait-and-Switch Program. However, the Bait-and-Switch Program is designed to supplant Defendants' True Free File Service and then to railroad Eligible Taxpayers into purchasing Paid HRB Tax Programs.

45.     Defendants' True Free File Service is offered pursuant to their participation in the FFI and the Eighth MOU. To qualify for Defendants' True Free File Service, which provides free e-filing for both federal and state tax returns, the taxpayer must have $66,000 or less in AGI and: (i) be between the ages of 17 and 51; (ii) have been on active duty in the military; or (iii) qualify for the Earned Income Credit. The website for Defendants' True Free File Service is: https://www.hrblock.com/ffa/.

46.     Defendants' Bait-and-Switch Program, while using the word "free" extensively, is actually free for few taxpayers and is designed to extract money from unsuspecting, vulnerable taxpayers, thereby undermining the usage, effectiveness, and goals of Defendants' True Free File Service and of the IRS Free File program generally. Among other things: (a) Defendants pay to broadly advertise their Bait-and-Switch Program on multiple platforms, in ways designed to deceive, mislead, and confuse consumers about the nature and cost of Defendants' tax services and to effectively supplant Defendants' True Free File Service; (b) Defendants manipulate search engine results to ensure that the vast majority of internet users searching for Defendants' True Free File Service are funneled instead into Defendants' Bait-and-Switch Program; and (c) Defendants design their websites to convince taxpayers that they are in the process of filing a

free return when, in fact, they are in Defendants' Bait-and-Switch Program. In their advertising, internet search manipulations, and website designs, Defendants repeatedly and heavily emphasize the word "free," to mislead taxpayers as to the nature of the Bait-and-Switch Program.

        **1.**    **Defendants Went to Great Lengths to Steer Taxpayers Into the Bait-and-Switch Program Instead of Their True Free File Service.**

    47.    Defendants have used a variety of tactics to conceal their True Free File Service and to supplant it with their Bait-and-Switch Program.

    48.    First, Defendants have paid for extensive ad campaigns on television, radio, internet, and social media platforms for Defendants' Bait-and-Switch Program.

    49.    Second, Defendants purposely made it difficult to find Defendants' True Free File Service by placing a "noindex" tag on the webpage for that True Free File Service, which essentially tells search engines **not** to crawl that page. In particular, the source code for https://www.hrblock.com/ffa/ included the following line of code:

    <meta name="robots" content="noindex, nofollow">

    50.    As a result, the website for Defendants' True Free File Service typically would not appear near the top of internet search results, while webpages for Defendants' Bait-and-Switch Program (such as https://www.hrblock.com/online-tax-filing/free-online-tax-filing, https://www.hrblock.com/online-tax-filing, and https://www.hrblock.com/tax-center/filing/efile/free-e-file) would appear at the top of the list of results for searches consisting of terms such as "free," "file," "filing," "tax," "taxes," and/or "h&r block."

    51.    ProPublica, a nonprofit news organization, recently published a series of articles exposing Defendants' and Intuit, Inc.'s unfair and deceptive practices with respect to the IRS Free File program and Defendants' Bait-and-Switch Program. One of those articles explained how Intuit, Inc. and Defendants used their source code to hide the webpage for Defendants' True Free File Service, using the code referenced in the above paragraph. *See* https://www.propublica.org/article/turbotax-deliberately-hides-its-free-file-page-from-search-engines (last accessed Apr. 30, 2019).

1    52.    In response to that negative press about Defendants' deceptive and unfair

2    practices, and recognizing that their practices were, in fact, unfair and deceptive, Defendants

3    recently changed the above-referenced line of source code to the following:

4            <meta name="robots" content="index,follow">

5    53.    Accordingly, it appears that Defendants are now allowing search engine robots to

6    index the homepage for Defendants' True Free File Service. However, Defendants continue to

7    engage in a number of additional unfair and deceptive practices.

8    54.    For example, Defendants hijack demand for their True Free File Service and

9    redirect taxpayers into Defendants' Bait-and-Switch Program.

10   55.    Webpages for Defendants' Bait-and-Switch Program (such as

11   https://www.hrblock.com/online-tax-filing/free-online-tax-filing,

12   https://www.hrblock.com/online-tax-filing, and https://www.hrblock.com/tax-

13   center/filing/efile/free-e-file) continue to appear at the top of the list of results for searches

14   consisting of terms such as "free," "file," "filing," "tax," "taxes," and/or "h&r block."

15   56.    Defendants' Bait-and-Switch Program includes a webpage

16   (https://www.hrblock.com/tax-center/filing/efile/free-e-file) that is designed to capture taxpayers

17   seeking free e-filing services and which ranks highly in search results. A screenshot that page is

18   below. That page represents that many taxpayers (but not all) can e-file for free with H&R Block

19   through its Fake "Free" Offer, and includes links to other pages within Defendants' Bait-and-

20   Switch Program (including https://www.hrblock.com/online-tax-filing/free-online-tax-filing,

21   https://www.hrblock.com/online-tax-filing, and https://www.hrblock.com/filing-options-and-

22   products.html). Defendants thereby represent and imply that Defendants' Fake "Free" Offer is the

23   free filing service taxpayers are seeking, when Defendants know that taxpayers are seeking the

24   truly free filing that is available through the IRS Free File program. Remarkably, *none* of the

25   links on this page take taxpayers to Defendants' True Free File Service and, as the screenshot

26   below shows, Defendants do not refer taxpayers to either Defendants' True Free File Service or to

27   the IRS Free File program:

28

14

1

2

TAX INFORMATION CENTER : FILING : EFILE

# Free E-File Taxes – Learn How to e-File for Free

3

4

5

**Free e-File Tax Return**

6

Free e-file taxes online with H&R Block. File your tax return with free e-file options online at H&R Block and let our expert online tax preparation help you file your taxes.

7

8

In many instances, it is possible to free e-file your tax return. Electronic tax filing is the process of submitting your completed tax return to the IRS through electronic means, usually over the Internet. This process is very desirable since it reduces the processing time of your return and may get a refund to you quicker. However, it is not available for everyone. Additionally, it is not always possible to find a free e file option. You may have to pay a small fee for this. H&R Block offers several tax **filing options.**

9

10

In many cases, free tax e-file services are available. For example, you may be able to use your **tax software** or **file online** to complete your taxes and then benefit from a free e-file credit provided to you by the organization. Most tax preparation companies will lump any fees associated in the electronic filing process into your fee for the service. This allows you to avoid paying an additional fee at the completion of your taxes to file them.

11

12

13

It is also important to remember that in order to file your taxes through an electronic method like this, you will need to first complete your tax return. The electronic filing process is only a submission process that sends your completed return to the IRS. You still need to complete your return and make sure that you get all of the deductions you qualify for included.

14

15

To make it easier for you to complete your taxes and to free e-file, work with H&R Block. Let our tax professionals help you to complete your taxes quickly and with the best level of accuracy. You can then get free e file service in many instances. This could help you to get your tax refund faster and it allows you to track your submission status. Let H&R Block help you to get the most back.

16

17

Learn more about H&R Block **tax offices** and our **free tax preparation** services.

18

19

RELATED TOPICS             Dependents          Credits          Filing Online                   ‹  ›

20

21

22

23

57.     On certain pages within the Bait-and-Switch Program (such as

24

https://www.hrblock.com/online-tax-filing/ and https://www.hrblock.com/filing-options-and-

25

products.html), Defendants present four online options to the taxpayer, but none of them is the

26

True Free File Service. The first option is the Fake "Free" Offer that is designed to lure taxpayers

27

28

15

1    into Defendants' Bait-and-Switch Program. Screenshots from the two webpages referenced in the

2    first sentence of this paragraph are, respectively, below:





16

58.     The landing page for Defendants' Fake "Free" Offer (https://
www.hrblock.com/online-tax-filing/free-online-tax-filing), whether reached through clicking on
an internet search result or on a link or icon on another webpage within Defendants' Bait-and-
Switch Program, represents that Defendants' tax preparation services are "free" without referring
taxpayers to either Defendants' True Free File Service or to the IRS Free File program, as a
screenshot of that landing page shows below:

 



59.     Even if consumers enter information establishing that they are eligible for
completely free filing under Defendants' True Free File Service and/or other IRS Free File
programs, Defendants manipulate them into paying for tax products, services, and/or "upgrades."

17

60.     If, at any point, the taxpayer is informed that he or she does not qualify for the

Fake "Free" Offer (whether at the end of filling out information or, occasionally, sooner) the

taxpayer is presented with Defendants' Paid HRB Tax Programs and must choose a paid option to

continue. The taxpayer is not directed to Defendants' True Free File Service or to the landing

page for the IRS Free File program, where eligible taxpayers would be able to truly file for free

and would not be told that they have to pay for Defendants' services. Thus, Defendants have

structured their website to convince most taxpayers to believe that they are not eligible for free

filing when they are in fact eligible for free filing.

61.     During peak filing season, Defendants purchase search advertising (in addition to

other advertising) to promote its Bait-and-Switch Program to consumers seeking free filing

services. For example, in the screenshot below, the second Google search result for "irs free file

taxes" was a paid advertisement from Defendants directing taxpayers to "H&R Block Official

Site| Free Federal Tax Filing | HRBlock.com":

62.     Visitors to Defendants' homepage (www.hrblock.com) are first and most prominently presented with a choice between two buttons (or links): one for visiting an H&R Block office and one for e-filing online. The online option links to https://www.hrblock.com/online-tax-filing. That webpage (see paragraph 57 above) does not refer taxpayers to Defendants' True Free File Service or the IRS Free File program. At the bottom of the page, in small font, there is also a link titled "Free E-File" which links to https://www.hrblock.com/tax-center/filing/efile/free-e-file. That webpage (see paragraph 58 above) does not refer taxpayers to Defendants' True Free File Service or the IRS Free File program. Thus, while Defendants' homepage provides an entry point into the Bait-and-Switch Program, it does not refer to or link to Defendants' True Free File Service or the IRS Free File program.

63.     Defendants takes other affirmative acts to channel taxpayers into their Bait-and-Switch Program, to heighten the visibility of their Bait-and-Switch Program, and to suppress the IRS Free File program.

64.     For example, H&R Block explicitly instructs its customer service staff to push people away from its free offering. In written internal guidance regarding the Free File program, H&R Block instructs its employees as follows: "Do not send clients to this Web site unless they are specifically calling about the Free File program. We want to send users to our paid products before the free product, if at all possible." *See* Justin Elliott & Paul Kiel, *TurboTax and H&R Block Saw Free Tax Filing as a Threat — and Gutted It*, ProPublica, https://www.propublica.org/article/intuit-turbotax-h-r-block-gutted-free-tax-filing-internal-memo (last accessed May 13, 2019).

65.     In addition, Defendants run affiliate marketing programs or campaigns for third-party publishers of blogs and other websites. Such affiliate marketing programs encourage such publishers to promote Defendants' tax services on their websites and to provide links to Defendants' webpages where consumers can sign up for Defendants' services. In exchange, the publishers earn a commission when such consumers use Defendants' services, particularly

1    Defendants Paid HRB Products. Through such affiliate marketing programs, Defendants provide

2    financial incentives for third-party publishers to direct consumers to Defendants' Bait-and-Switch

3    Program.

4          66.    In the affiliate marketing program, the taxpayer typically takes a slight detour by

5    clicking on an article or webpage published by the affiliate publisher. That article or webpage

6    (perhaps in the guise of providing a review, a recommendation, or some other information) refers

7    to H&R Block services, may actively promote H&R Block services, and provides a link to

8    Defendants' website. The affiliate then collects a commission for transactions in which that

9    consumer engages while on Defendants' website.

10          67.    Links from third-party websites to Defendants' Bait-and-Switch webpages are a

11   key reason why Defendants' Bait-and-Switch webpages rank so highly in the list of results for

12   search engine queries. Accordingly, Defendants' affiliate program not only pays other parties to

13   refer customers to Defendants' Bait-and-Switch Program but it also bolsters the ranking of

14   Defendants' Bait-and-Switch Program in search results generally. Defendants more broadly seed

15   the internet and provides incentives for other websites to link to Defendants' Bait-and-Switch

16   program and to Defendants' webpages to ensure that those webpages are ranked at the top of

17   search results.

18          68.    By contrast, Defendants make no such efforts to encourage links to Defendants'

19   True Free File Service. For the most part, and particularly within the Bait-and-Switch Program to

20   which most customers are directed, Defendants do not promote or link to their True Free File

21   Service from other webpages within Defendants' online domain. If anything, Defendants take

22   steps to ensure that their True Free File Service is difficult to find, thereby minimizing the

23   number of third-party links to that service, lowering their ranking and public awareness of that

24   genuinely free service, and minimizing the number of taxpayers who find and use Defendants'

25   True Free File Service.

26          69.    Defendants' deceptive and unfair search engine manipulations, together with their

27   deceptive, unfair, and confusing use of "free" in connection with their Bait-and-Switch Program,

28

also ensure that consumers will be directed to Defendants' Bait-and-Switch Program even when Defendants has not purchased certain search engine advertising. For example, on May 6, 2019, the third non-paid search result for a Google search for "free tax filing" was a link to Defendants' Fake "Free" Offer (titled "Free Online Tax Filing" and including the description: "File your taxes online for free with H&R Block Free Edition. File free taxes online with an easy-to-use tax preparation system from H&R Block."). No link to Defendants' True Free File Service appeared on the first page of Google search results.

70. On May 6, 2019, a search for "h&r block free filing" showed that the top three results were for pages within Defendants' Bait-and-Switch Program, with broad result headings such as "Free Online Tax Filing," "Free e-File," and "File Taxes Online – Online Tax Filing Products." Defendants' True Free File Service appeared as the fourth result under the heading "Free State Tax Filing – Free File Alliance," which could confuse or mislead consumers as to whether it provided free filing for federal returns.

71. Moreover, even when a taxpayer lands on Defendants' True Free File Service, the webpage does not inform taxpayers over the age of 51 that they are eligible for free filing under the IRS Free File program and the webpage does not immediately direct them to the landing page for the IRS Free File program where those taxpayers can select from multiple free filing options. Instead, the only alternative Defendants explicitly provide to such taxpayers is Defendants' Paid HRB Tax Programs. Directly under the eligibility criteria on the main webpage for Defendants' True Free File Service, Defendants state "If you do not qualify for H&R Block's Free File program, it's only $69.99 $29.99 to file a federal return and $39.99 for each state return filed."

## FILE FEDERAL AND STATE TAXES FOR FREE WITH H&R BLOCK FREE FILE

If your AGI was $66,000 or less and can answer "Yes" to one of these questions, then you can start your free file return:

- Are you between the ages of 17-51 (as of 12/31/2018)? Or;
- Were you active duty military? Or;
- Do you qualify for the Earned Income Tax Credit (EITC)?

Start For Free

If you do not qualify for H&R Block's Free File program, it's only $68.99 $29.99 to file a federal return and $39.99 for each state return filed.

### State Tax Filing
If you qualify for H&R Block's Free File program, all states are free to file for any state you lived or claimed income in.



### More Resources

**Additional Free Tools**

Return to the IRS.gov Free File ›
H&R Block Free File Supported Forms ›

**Need Additional Help?**

FAQs ›
Customer Support ›

**Policy and Forms**

Accuracy/Calculation Guarantee ›
Privacy and Security Information ›

72.     In the FAQs associated with this webpage, Defendants mislead taxpayers (particularly those over the age of 51) into believing that they are not eligible for free filing under the IRS Free File program when they are in fact eligible. Defendants never expressly disclose that the IRS Free File program is much broader than Defendants' True Free File Service and that taxpayers who do not qualify for Defendants' True Free File Service have other options to file for free. For example, the first three FAQs are quoted below:

> **What is the Free File Alliance (FFA)?**
> FFA is a public-private partnership between the IRS and participating tax preparers. Eligible taxpayers may prepare and file their federal tax returns for free, utilizing the online programs of the participating tax preparers. Taxpayers between the ages of 17 and 51 who have an adjusted gross income (AGI) of $66,000 or less are eligible for the H&R Block FFA program.
>
> **How can I do my federal taxes for free? Is there a catch?**

Class Action Complaint

The Free File Alliance is a public-private partnership between the IRS and participating tax preparers. Taxpayers between the ages of 17 and 51 who have an adjusted gross income (AGI) of $66,000 or less are eligible for the H&R Block FFA program.

**How do I file online?**
E-filing is a fast and convenient alternative to mailing your return. However, the IRS has strict regulations about which returns are eligible for e-filing. First, we'll determine if your return is eligible for e-file. If it is, we'll present you with your options for how to receive your refund or pay your balance due. (If it is not eligible, we'll let you know, then we'll present you with your options.) Depending on the option you select, we may ask for additional information. Next, we'll give you a link to your completed return and, when you're ready, we'll send your return to the IRS. The IRS will accept or reject your return, and we'll send you an e-mail letting you know. If your return is accepted, we'll let you know if you need to do anything else. If it's rejected, we'll help you resolve the problems in your return. Log in to the H&R Block Free File online program, go to the Main Menu to check your filing status.

73.     In sum, Defendants simultaneously: make it easy and likely for a taxpayer to end up on a webpage for Defendants' Bait-and-Switch Program; make it very unlikely that a taxpayer would find Defendants' True Free File Service; make it very unlikely that a taxpayer would see or understand the difference between the Bait-and-Switch Program and the True Free File Service; and mislead many taxpayers who are eligible for free filing into believing that they are not eligible and that they should pay Defendants for tax filing services.

74.     Defendants' efforts (including efforts directly on the main page for Defendants' True Free File Service) to convert Eligible Taxpayers who are not eligible for Defendants' True Free File Service into paying customers for Defendants' Paid HRB Tax Programs, without informing them of and directing them to other free filing options within the IRS Free File program as the first, best option for those Eligible Taxpayers, are a breach of the Eighth MOU and constitute violations of the CLRA, FAL, and UCL.

> **2.     Defendants Extract Extensive Information from Taxpayers Under False Pretenses and then Trick Vulnerable Tax Payers Into Purchasing Paid HRB Tax Programs.**

75.     After arriving at Defendants' online filing options, taxpayers are prompted to create a profile (or sign in if they already have an account) and are then prompted to provide their

1    sensitive personal and financial information. At the beginning of the process, taxpayers are

2    informed that the filing will be free, as indicated by the screenshots in the section above. Eligible

3    Taxpayers believe that they have begun the process of filing for free and that Defendants will not

4    charge them if they qualify for free filing under Defendants True Free File Service or the IRS

5    Free File program. Once they log in, create an account, or begin providing their information to

6    Defendants (other than through the landing page for Defendants' True Free File Service, which

7    the vast majority of taxpayers never see), taxpayers are **not**, at any point, informed of or directed

8    to Defendants True Free File Service or the IRS Free File program, even if they clearly qualify

9    for such free services.

10          76.     After the taxpayer creates a profile or logs in, Defendants then present the taxpayer

11   with more than a dozen questions about their finances and personal data.

12          77.     In reality, Defendants' Fake "Free" Offer is free for only a limited number of

13   taxpayers who have **only** W-2 income, who have not worked as independent contractors or

14   received any other forms of income, and who are taking only very specific deductions and are not

15   required to file other forms.

16          78.     The majority of the individuals who begin with the Fake "Free" Offer in

17   Defendants' Bait-and-Switch Program are informed (often **at the end of the process**) that they

18   will, in fact, be charged for Defendants' services. Defendants inform most taxpayers that they

19   "need" a Paid HRB Tax Product and prompt consumers to agree to Defendants' charges. Below is

20   an example of the type of message displayed to taxpayers who do not qualify for Defendants'

21   Fake "Free" Offer but who would still qualify for free filing under Defendants' True Free File

22   Service and/or other IRS Free File offers:

23

24

25

26

27

28

Class Action Complaint

1

2

3

4

5

6

7

8

9

10

11

12



13   79.    Clicking on the link for "More info" further misleads consumers to believe that

14 they are ineligible for free filing and must pay Defendants for their services, as the following

15 example demonstrates:

16

17

18

19

20

21

22

23

24

25

26



27   80.    Defendants know that many taxpayers who have spent the time required to enter

28 their information in the Bait-and-Switch Program are unlikely to start over somewhere else,

1  particularly given that Defendants hide the fact that another service would be truly free.

2  Defendants also intend for reasonable taxpayers to conclude (and reasonably taxpayers do

3  conclude) that they are simply ineligible for free filing under the IRS Free File program, because

4  Defendants do not conspicuously inform them that (1) their Bait-and-Switch Program is not part

5  of the IRS Free File program, or (2) the taxpayers would be eligible for free filing through the

6  IRS Free File Program—either Defendants' True Free File Service or another Free File service

7  available from another provider. As intended by Defendants, many taxpayers ultimately pay the

8  charge that Defendants tells them is required at the end of the Bait-and-Switch Program.

9      81.    Defendants do not inform taxpayers caught in Defendants' Bait-and-Switch

10  Program that they can file tax returns for free if they qualify for Defendants' True Free File

11  Service, or whether the taxpayers do in fact qualify for Defendants' True Free File Service. For

12  taxpayers using Defendants' Bait-and-Switch Program but who qualify for Defendants' True Free

13  File Service, Defendants do not offer to transfer the taxpayers' information to Defendants' True

14  Free File Service to complete their return for free.

15      82.    Defendants also do not inform taxpayers caught in Defendants' Bait-and-Switch

16  Program that they are eligible to file tax returns for free under the IRS Free File program, which

17  requires only that the taxpayer's AGI not exceed $66,000. There are no limitations on the federal

18  program based on self-employment income, various deductions, and other limitations of

19  Defendants' Fake "Free" Offer.

20      83.    In sum, Defendants' Bait-and-Switch Program violates, and is designed to

21  circumvent, several of the provisions and protections of the Eighth MOU. In derogation of

22  Section 4.19.2, Defendants' Bait-and-Switch Program does not "unequivocally inform taxpayers

23  who are ineligible for the free offer at the earliest feasible point," that they are ineligible for the

24  free e-filing service and direct them back to the IRS Free File Landing Page. To the contrary,

25  Defendants' Bait-and-Switch Program requires taxpayers to answer numerous questions and

26  provide a lot of personal and financial information before telling them whether they "need to

27  upgrade" (i.e., pay for the service). At no point does Defendants' Bait-and-Switch Program direct

28

1    taxpayers back to the IRS Free File Landing Page or inform them that they do or may qualify for

2    a Free File offer. Instead, Defendants uses Defendants' Bait-and-Switch Program to direct

3    taxpayers to Defendants' paid commercial services and products, which violates and/or unfairly

4    circumvents Sections 4.32.5 and 4.32.6 of the Eighth MOU.

5        84.    As a result, many taxpayers, including many in precarious financial situations,

6    were tricked into paying fees to Defendants when they should have been directed to free filing

7    options.

8        85.    Defendants know that if they informed taxpayers who do not qualify for free filing

9    in Defendants' Bait-and-Switch Program about Defendants' True Free File Service and about the

10   IRS Free File program, and transferred the financial information they had already entered into

11   Defendants' True Free File Service and/or directed them to the IRS Free File landing page, those

12   taxpayers likely would not purchase any of Defendants' commercial offerings. Thus, Defendants

13   have devised a complicated scheme to evade the spirit of the MOU to increase their profits.

14       86.    Defendants' efforts (and the efforts of others) to steer taxpayers away from the

15   Free File program to which they are entitled have worked. During the 2017 tax season, 2,231,261

16   taxpayers, less than *three percent* of Eligible Taxpayers, used Free File, a significant decrease

17   from 2005, a year in which 5,142,125 taxpayers filed through Free File. *See* Internal Revenue

18   Service Advisory Council Public Report (Nov. 2018), at 16, available at

19   https://www.irs.gov/pub/irs-pdf/p5316.pdf.

20       **E.    Plaintiff Olosoni's Experiences**

21       87.    Plaintiff Olosoni's AGI for 2018 was less than $66,000, so she was an Eligible

22   Taxpayer under the IRS Free File program, and she qualified for a free federal return e-filing

23   under multiple offers available under the IRS Free File program. If she had been directed to the

24   IRS Free File website in 2019, Plaintiff Olosoni would have found offers from multiple providers

25   to file her federal return for free.

26       88.    Plaintiff Olosoni has been using Defendants' online products to file her taxes since

27   about 2015. Defendants charged her fees in every year that she had filed through them despite the

28

1  fact that she qualified for truly free filing under the IRS Free File program and despite

2  Defendants' representations in advertisements on their webpages that taxpayers could file tax

3  returns for "free" through H&R Block.

4    89.    Throughout this period, Plaintiff Olosoni saw television advertisements, heard

5  radio advertisements, and viewed representations on Defendants' website that taxpayers could file

6  tax returns for "free" through H&R Block.

7    90.    At one point, Plaintiff Olosoni called Defendants to determine why she had been

8  charged despite Defendants' representations that tax filing would be "free" and despite her belief

9  that she was entitled to file her returns for free. That inquiry was never substantively answered.

10    91.    In or about January 2019, Plaintiff Olosoni directly logged in to Defendants'

11  website. When she logged in to her account, Defendants routed Plaintiff Olosoni to their Bait-

12  and-Switch Program rather than Defendants' True Free File Service. Defendants never informed

13  Plaintiff Olosoni that she was not accessing Defendants' True Free File Service or that

14  Defendants' had established a Bait-and-Switch Program to supplant the IRS Free File program.

15  Defendants concealed the fact that their Bait-and-Switch Program was separate from (and

16  designed to compete with and undermine) Defendants' True Free File Service.

17    92.    Based on her belief that she was eligible to file for free under generally available

18  programs (such as the IRS Free File program), Defendants' representations in their television and

19  radio advertisements, and the representations on Defendants' webpages within their Bait-and-

20  Switch Program, Plaintiff Olosoni believed she qualified for a free tax return and that she could

21  file a free tax return through Defendants' website. Plaintiff Olosoni spent approximately 45

22  minutes entering in her sensitive personal and financial information, in reliance on that belief.

23    93.    At the end of that process, she was informed that she was not eligible to file her

24  tax return for free and that she would be charged fees (about $85) for her state and federal filings.

25  She was given the option to either pay upfront or have the fees deducted from her refund. She

26  opted to have the fees deducted from her refund, in reliance on Defendants' representation that

27  she did not qualify to file her tax return for free.

28

94.     Plaintiff Olosoni would not have paid for Defendants' service if she had been informed by Defendants at the outset of the process that she was eligible for Defendants' True Free File Service (as well as free tax filing from other tax service providers) and that the service to which she had been directed was not part of that True Free File Service and/or if she had been directed to the websites for those truly free e-filing services.

95.     Plaintiff Olosoni will continue to seek free tax filing services in the future and expects to continue to be eligible for such services as mandated by the IRS.  Because Defendants (a) disguise their Bait-and-Switch Program as being a true Free File program, (b) use deceptive and confusing terms to describe and market those services and can easily change the name of their True Free File Service and/or their competing Bait-and-Switch Program, (c) can change the conditions of and/or landing page for their True Free File Service, and (d) can deploy search engine optimization strategies to divert taxpayers away from Defendants' True Free File Service and the IRS Free File program and into alternative, competing services, Plaintiff Olosoni is likely to again be misled into spending time to complete tax forms through Defendants, including providing her sensitive financial information, and paying for her tax filings, unless the injunctive relief requested in this Class Action Complaint is awarded.

**F.     Plaintiff Snarr's Experiences**

96.     Plaintiff Snarr's AGI for 2018 was less than $66,000, so he was an Eligible Taxpayer under the IRS Free File program, and he qualified for a free federal return e-filing under multiple offers available under the IRS Free File program. If he had been directed to the IRS Free File website in 2019, Plaintiff Snarr would have found offers from multiple providers to file his federal return for free.

97.     Plaintiff Snarr conducted a Google search for the words "free tax filing" (or a substantially similar combination of words) on or about April 15th, 2019. Defendants' website was one of the top results.

98.     Through that search result and its associated link, Defendants routed Plaintiff Snarr to their Bait-and-Switch Program rather than Defendants' True Free File Service.

Class Action Complaint

1    Defendants never informed Plaintiff Snarr that he was not accessing Defendants' True Free File

2    Service or that Defendants' had established a Bait-and-Switch Program to supplant the IRS Free

3    File program. Defendants concealed the fact that their Bait-and-Switch Program was separate

4    from (and designed to compete with and undermine) Defendants' True Free File Service.

5        99.    Plaintiff Snarr spent multiple hours entering his tax information on or about

6    April 15, 2019, believing that he was eligible to file his tax return for free and that the tax

7    preparation and filing service offered by Defendants would be free. But, at the end of H&R

8    Block's online process for providing information for tax filing (part of Defendants' Bait-and-

9    Switch Program), Plaintiff Snarr was informed that he did not qualify for the Fake "Free" Offer

10   that Defendants' had advertised and to which Defendants had directed him, and was informed that

11   he needed to pay fees to file his tax return with H&R Block.

12       100.   Plaintiff Snarr was surprised by the fee disclosure because it was contrary to his

13   belief that he was entitled to file for free and it was contrary to what Defendants had represented

14   in their Google search result and on their website. Plaintiff Snarr opted to proceed, despite the

15   fees (which were charged to him), in reliance on Defendants' representation that he did not

16   qualify to file his tax return for free.

17       101.   Plaintiff Snarr would not have paid for Defendants' service if he had been

18   informed by Defendants at the outset of the process that he was eligible for Defendants' True

19   Free File Service (as well as free tax filing from other tax service providers) and that the service

20   to which he had been directed was not part of that True Free File Service and/or if he had been

21   directed to the websites for those truly free e-filing services.

22       102.   Plaintiff Snarr will continue to seek free tax filing services in the future and

23   expects to continue to be eligible for such services as mandated by the IRS.  Because Defendants

24   (a) disguise their Bait-and-Switch Program as being a true Free File program, (b) use deceptive

25   and confusing terms to describe and market those services and can easily change the name of

26   their True Free File Service and/or their competing Bait-and-Switch Program, (c) can change the

27   conditions of and/or landing page for their True Free File Service, and (d) can deploy search

28

1  engine optimization strategies and tactics to divert taxpayers away from Defendants' True Free

2  File Service and the IRS Free File program and into alternative, competing services, Plaintiff

3  Snarr is likely to again be misled into spending time to complete tax forms through Defendants,

4  including providing his sensitive financial information, and paying for his tax filings, unless the

5  injunctive relief requested in this Complaint is awarded.

6       **G.**    **Because Defendants Intend to Continue Their Deceptive and Unfair Conduct,**

7                **a Public Injunction Is Needed to Protect the Public from Future Harm.**

8       103.    While Defendants' Bait-and-Switch Program has been exposed in multiple

9  articles, Defendants have not ended the Bait-and-Switch Program, and thus Defendants clearly

10  intend to continue extracting money from taxpayers who are entitled to file returns for free and

11  who should be directed to Defendants' True Free File Service or to the IRS Free File program's

12  website.

13       104.    Among other things, Defendants intend to continue (1) operating and aggressively

14  marketing their Bait-and-Switch Program, including through television, radio, social media,

15  banner advertising, paid search advertising, affiliate marketing programs, and search engine

16  optimization programs, (2) hiding the availability of Defendants' True Free File Service by

17  preventing search engines from indexing key pages and content of those webpages, by excluding

18  Defendants' True Free File Service from affiliate marketing programs, and by otherwise

19  depressing search engine rankings, (3) using the deceptive word "free" for their Bait-and-Switch

20  Program, and targeting their marketing (affiliate marketing and otherwise) for Defendants' Bait-

21  and-Switch Program to capture people searching for "free" tax filing services, in order to confuse

22  their Bait-and-Switch Program with the IRS Free File program and to mislead taxpayers because

23  Defendants' Bait-and-Switch Program is not actually free for most taxpayers, including those

24  taxpayers who qualify for IRS Free File, (4) failing to provide a clear and prominent disclosure

25  that the "free" portion of Defendants' Bait-and-Switch Program is not Defendants' True Free File

26  Service and failing to clearly identify the differences between the programs, (5) failing to clearly

27  inform taxpayers of their eligibility for the IRS Free File program, (6) failing to inform users at

28

1    the earliest opportunity of their ineligibility for free filing under the Bait-and-Switch Program and

2    to direct them to other truly free filing services, or to transfer to Defendants' Free File program

3    any information they have already entered so that it need not be reentered, (7) prompting users for

4    payment and selling paid services without clearly informing those users of their right to free tax

5    services, (8) failing to clearly and accurately inform taxpayers that any information they have

6    provided to Defendants will automatically and conveniently be transferred to Defendants' True

7    Free File Service if the taxpayer elects to proceed with Defendants' True Free File Service and

8    then immediately transferring all relevant information a taxpayer has provided to Defendants to

9    Defendants' True Free File Service if the taxpayer elects to proceed with Defendants' True Free

10   File Service, and (9) unfairly competing with, undermining, and supplanting both Defendants'

11   True Free File Service and the IRS Free File program generally.

12       105.    Defendants profit from the public's lack of awareness of or confusion about the

13   various IRS Free File offers, from Defendants' efforts to minimize public awareness of the IRS

14   Free File offers and the ways to take advantage of them, and from the victims of Defendants'

15   Bait-and-Switch Program.

16       106.    To protect these illicit and inequitable profits and to maintain space in which to

17   conduct their deceptive and unfair practices with respect to taxpayers who are entitled to free tax

18   preparation services, Defendants have spent millions of dollars lobbying to make sure that the

19   IRS is legally prohibited from offering their own tax preparation and filing service, which would

20   make tax filing easy and free for most taxpayers and thereby substantially reduce Defendants'

21   profits from their Paid HRB Tax Programs.[1]

22       107.    Defendants' investment of money in such lobbying efforts shows a determination

23   to minimize the number of people who actually file tax returns for free, an intent to continue to

24

25

---

26   [1] *See, e.g.*, https://www.propublica.org/article/congress-is-about-to-ban-the-government-from-offering-free-online-tax-filing-thank-turbotax (last accessed April 23, 2019),

27   https://www.propublica.org/article/filing-taxes-could-be-free-simple-hr-block-intuit-lobbying-against-it (last accessed May 13, 2019), and https://sunlightfoundation.com/2013/04/15/tax-

28   preparers-lobby-heavily-against-simple-filing/ (last accessed May 13, 2019).

1    profit from taxpayers who should be filing for free, and thus an intent to undermine the IRS Free

2    File program and the Eighth MOU.

3         108.    Moreover, Defendants' practices are poised to become worse, not better, in the

4    future. Because the IRS is allowed under current law to develop their own e-filing system,

5    Defendants have at least some incentive to moderate their behavior. In theory, if Defendants'

6    conduct were to go too far and there were too many complaints, the IRS could enter the market

7    and eliminate much of Defendants' profits. At the same time, Defendants' incentive is to try to do

8    the bare minimum to avoid such a result, without sacrificing too much of the profits it currently

9    earns through the Bait-and-Switch Program. By offering fig-leaf solutions to their much larger

10   problems, Defendants are attempting to convince the IRS that it does not need to develop their

11   own system. More significantly at this point, Defendants are attempting to ensure the passage of

12   the legislation that is on track to prohibit the IRS from developing their own generally available,

13   easy-to-use, cost-free e-filing system (*see* footnote 1 herein). Once that law gets passed, and the

14   IRS is prohibited from developing an e-filing system, Defendants will no longer face any

15   deterrence at all from the threat of IRS competition.

16        109.    To protect the general public from the threat of future injury, Plaintiffs seek a

17   public injunction, under *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017), prohibiting Defendants

18   from continuing their deceptive and unfair practices.

19        110.    To stop Defendants', deceptive, unfair, and unlawful conduct, Defendants should

20   be prohibited from marketing and operating a supposedly "free" service in competition with

21   Defendants' True Free File Service. The only "free" e-filing service Defendants should be

22   allowed to offer to the public is Defendants' True Free File Service. If Defendants wish to offer

23   free filing to additional taxpayers beyond those eligible for their True Free File Service, they can

24   simply expand the eligibility for their True Free File Service; there is no need to offer a

25   competing "free" service. Defendants should be prohibited from using the word "free" in

26   connection with services other than Defendants' True Free File Service. Defendants should be

27   prohibited from advertising any alternative free tax filing service (including purchasing search

28

Class Action Complaint

1   advertisements in connection with the search term "free") other than advertisements for

2   Defendants' True Free File Service.

3       111.   Defendants must unequivocally inform taxpayers at the earliest feasible point—

4   including on the landing page for their True Free File Service, any FAQs section for their True

5   Free File Service, and at any point at which a taxpayer enters information indicating that the

6   taxpayer is eligible for free filing under the IRS Free File program—whether the taxpayers are

7   eligible or ineligible for Defendants' True Free File Service, whether they are eligible for free

8   filing under the IRS Free File program, and where and how the taxpayers may file for free using

9   such services. Defendants should be prohibited from marketing Paid HRB Tax Products (whether

10  through an upgrade prompt, a recommendation, an advertisement, or a menu featuring paid

11  services) to taxpayers who are eligible for free filing under the IRS Free File program.

12      112.   In the event Defendants are allowed to continue to offer a "free" service in

13  addition to Defendants' True Free File Service, then through a prominent disclosure on the home

14  page of the alternative free service, on other webpages/screens throughout the process of such

15  service, and on any page that indicates that a taxpayer does not qualify for the alternative free

16  service or proposes an upgrade or payment for Defendants' Paid HRB Tax Programs:

17  (a) Defendants must make clear that the alternative free service is not Defendants' True Free File

18  Service; (b) Defendants must clearly identify the differences between Defendants' True Free File

19  Service and the alternative free service; (c) Defendants must disclose that there are other free

20  filing offers available through the IRS Free File program; (d) Defendants must provide a

21  prominent link to Defendants' True Free File Service and to the IRS Free File Landing Page; and

22  (e) Defendants must unequivocally inform taxpayers at the earliest feasible point—including on

23  the landing page for the alternative free service and as soon as the taxpayer enters any response

24  (such as the taxpayer's AGI) that is sufficient to determine the taxpayer's eligibility for the

25  following services—whether they are eligible or ineligible for Defendants' True Free File

26  Service, whether they are generally eligible or ineligible for other offers under the IRS Free File

27  program, and whether they are eligible or ineligible for the alternative free e-filing service. At any

28

1   point in which the choice to proceed with Defendants' True Free File Service is presented,

2   Defendants must clearly inform the taxpayer that any information they have provided to

3   Defendants and that would be used for Defendants' alternative free filing service will

4   automatically be transferred to Defendants' True Free File Service and, if the taxpayer elects to

5   proceed with Defendants' True Free File Service, Defendants must immediately transfer

6   information the taxpayer has already provided to Defendants and that can be used for Defendants'

7   True Free File Service.

8       113.    In addition, Defendants should be prohibited from engaging in practices designed

9   to lower the prominence and ranking of Defendants' True Free File Service in search results. In

10  particular, Defendants should be prohibited from interfering with any search engine robot

11  crawling or indexing that would tend to increase the ranking of the webpages for Defendants'

12  True Free File Service. And Defendants should be prohibited from using search advertisements

13  and search engine optimization techniques to promote the ranking of any competing service (such

14  as their Bait-and-Switch Program or any other Paid HRB Tax Program) to the prejudice of

15  Defendants' True Free File Service or to the prejudice of the IRS Free File program.

16      114.    Absent injunctive relief, Plaintiffs and the public at large are likely to be misled or

17  confused again by Defendants' practices. Defendants can easily change the name of their True

18  Free File Service and/or their competing Bait-and-Switch Program (and the terms Defendants

19  uses to describe and market those services), Defendants can also change the conditions of and/or

20  landing page for their True Free File Service, and Defendants can deploy search engine

21  optimization strategies to divert taxpayers away from Defendants' True Free File Service and the

22  IRS Free File program and toward alternative, competing services, such that Plaintiffs and other

23  members of the public will not be sure (a) whether they are actually proceeding with Defendants'

24  True Free File Service or some other service or (b) whether they are actually eligible for

25  Defendants' True Free File Service or some other service. Absent injunctive, relief, Defendants

26  could also continue to market their Paid HRB Tax Products and manipulate consumers into

27  paying for Defendants' unnecessary services.

28

1

## CLASS ALLEGATIONS

2   115.   Plaintiffs bring this action against Defendants, on behalf of themselves and all

3   others similarly situated, as a class action pursuant to sections 382 and 1781 of the California

4   Civil Code. Plaintiffs seek to represent the following groups of similarly situated persons, defined

5   as follows:

6      All persons who, between May 17, 2015 and the present, paid to file one or more federal
       tax returns through Defendants' internet-based filing system even though they were
7      eligible to file those tax returns for free under IRS Free File  (the "Nationwide IRS Free
8      File Class").

9   116.   Plaintiffs also seek to represent a subclass consisting of those members of the

10  Nationwide IRS Free File Class who were eligible to file the subject tax returns through

11  Defendants' True Free File Service (the "Nationwide HRB Free File Subclass").

12  117.   Plaintiffs also seek to represent a subclass consisting of those members of the

13  Nationwide IRS Free File Class who resided in and were citizens of California at the time of the

14  payments (the "California IRS Free File Subclass").

15  118.   Plaintiffs also seek to represent a subclass consisting of those members of the

16  Nationwide HRB Free File Class who resided in and were citizens of California at the time of the

17  payments (the "California HRB Free File Subclass").

18  119.   The Nationwide IRS Free File Class and Nationwide HRB Free File Subclass are

19  referred to, collectively, as the "Nationwide Classes." The California IRS Free File Class and

20  California HRB Free File Sub-subclass are referred to, collectively, as the "California

21  Subclasses." The Nationwide Classes and California Subclasses are referred to collectively herein

22  as the "Classes."

23  120.   The following persons and entities are excluded from the Classes: Defendants and

24  their officers, directors, employees, subsidiaries, and affiliates; and all judges assigned to this case

25  and any members of their immediate families.

26  121.   Plaintiffs reserve the right to propose additional or alternative classes or

27  subclasses, or to narrow the above class and subclass definitions. This reservation includes but is

28

Class Action Complaint

1   not limited to classes or subclasses involving consumers in multiple states or involving particular

2   issues.

3        122.    This action has been brought and may properly be maintained as a class action

4   against Defendants because there is a well-defined community of interest in the litigation and the

5   proposed Classes are easily ascertainable.

6        123.    The proposed Classes are so numerous that joinder of all members is

7   impracticable. The precise number of members in each of the Nationwide Classes is not yet

8   known to Plaintiff, but it is well in excess of 1,000 people. The precise number of members in

9   each of the California Subclasses is not yet known to Plaintiff, but it is well in excess of 1,000

10  people.

11       124.    Common Questions Predominate:  This action involves common questions of law

12  and fact to the Classes because each class member's claim derives from the deceptive, unlawful

13  and/or unfair statements and omissions that led consumers to believe that Defendants' True Free

14  File Service was actually free. The common questions of law and fact predominate over

15  individual questions, as proof of a common or single set of facts will establish the right of each

16  member of the Classes to recover. There are questions of law and fact that are common to the

17  Classes, including, but not limited to, the following:

18
19       •    whether Defendants' Bait-and-Switch Program was a deceptive, unfair, and/or
             unlawful practice (or set of practices);

20       •    whether Defendants misled class members by representing that their Fake "Free"
             Offer was actually free;

21
22       •    whether Defendants deceptively, unfairly, and/or unlawfully diverted Eligible
             Taxpayers from Defendants' True Free File Service into Defendants' paid products
23           and services;

24       •    whether Defendants deceptively, unfairly, and/or unlawfully diverted Eligible
             Taxpayers from truly free filing offers available under the IRS Free File program
25           into Defendants' paid products and services;

26       •    whether members of the Classes are third-party beneficiaries of the Eighth MOU
             and prior versions thereof;
27
28       •    whether Defendants breached their obligations to the class;

- whether Defendants engaged in the alleged conduct knowingly, recklessly, or negligently;

- the amount of revenues and profits Defendants received and/or the amount of monies or other obligations lost by class members as a result of such wrongdoing;

- whether class members are entitled to injunctive relief and other equitable relief and, if so, what is the nature of such relief; and

- whether class members are entitled to payment of actual, compensatory, incidental, consequential, exemplary, and/or statutory damages plus interest, and if so, what is the nature of such relief.

125.    Plaintiffs' claims against Defendants are typical of the claims of the Classes because Plaintiffs and all other members of the Classes were eligible for free filing under the IRS Free File program but were charged for Defendants' products and services as a result of Defendants' Bait-and-Switch Program.

126.    Plaintiffs will fairly and adequately protect the interests of all class members because it is in their best interests to prosecute the claims alleged herein to obtain full compensation due to them for the unfair and illegal conduct of which they complain. Plaintiffs also have no interests that are in conflict with, or antagonistic to, the interests of class members. Plaintiffs have retained highly competent and experienced class action attorneys to represent them interests and that of the classes. By prevailing on their own claims, Plaintiffs will establish Defendants' liability to all class members. Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for class members.

127.    Superiority:  There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the classes will tend to establish inconsistent standards of conduct for Defendants and result in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently,

38

1  and without the unnecessary duplication of effort and expense that numerous individual actions

2  would engender. Furthermore, as the damages suffered by each individual member of the classes

3  may be relatively small, the expenses and burden of individual litigation would make it difficult

4  or impossible for individual members of the class to redress the wrongs done to them, while an

5  important public interest will be served by addressing the matter as a class action.

6       128.    Plaintiffs are unaware of any difficulties that are likely to be encountered in the

7  management of this action that would preclude its maintenance as a class action.

8  <div align="center">**PLAINTIFFS' FIRST CAUSE OF ACTION**</div>

9  <div align="center">**(Violation of the Consumers Legal Remedies Act (the "CLRA"), California Civil Code §
1750, *et seq.*, on behalf of Plaintiffs and the California Subclasses)**</div>

10

11       129.    Plaintiffs reallege and incorporate the paragraphs of this Complaint as if set forth

12  herein.

13       130.    Defendants' actions, representations and conduct have violated, and continue to

14  violate the CLRA, because they extend to transactions that are intended to result, or which have

15  resulted, in the sale of products to consumers.

16       131.    Each Plaintiff and each member of the California Subclasses is a "consumer" as

17  that term is defined by the CLRA in California Civil Code § 1761(d).

18       132.    The tax services that Plaintiffs (and other similarly situated members of the

19  California Subclasses) purchased from Defendants was a "service" within the meaning of

20  California Civil Code § 1761(b).

21       133.    Defendants' acts and practices, set forth in this Complaint, led Plaintiffs, members

22  of the California Subclasses, and other members of the general public to falsely believe that

23  Defendants' Fake "Free" Offer provides free tax preparation and filing for most taxpayers. In

24  truth, the Fake "Free" Offer was and is subject to several undisclosed and surprising conditions

25  and was and is not free for most taxpayers. Accordingly, Defendants' representations that the

26  Fake "Free" Offer is a "free" service and that it is the free filing service taxpayers are seeking and

27  to which they are entitled are false, misleading, and unfair.

28       134.    By engaging in the actions, representations and conduct set forth in this

<div align="center">39</div>

1     Complaint, Defendants have violated, and continue to violate, § 1770(a)(5), § 1770(a)(7),

2     § 1770(a)(9), § 1770 (a)(10), and § 1770(a)(13) of the CLRA. In violation of California Civil

3     Code §1770(a)(5), Defendants' acts and practices constitute improper representations that the

4     goods and services they sell have sponsorship, approval, characteristics, ingredients, uses,

5     benefits, or quantities, which they do not have (in particular, that Plaintiffs and members of the

6     California Subclasses could/can file for free through Defendants' Fake "Free" Offer and/or that

7     Defendants' Fake "Free" Offer was/is the truly free filing service Plaintiffs and members of the

8     California Subclasses were/are seeking). In violation of California Civil Code §1770(a)(7),

9     Defendants' acts and practices constitute improper representations that the Fake "Free" Offer and

10     Defendants' tax services were and are of a particular standard, quality, or grade (in particular, that

11     they were/are free to Plaintiffs and members of the California Subclasses and/or that Defendants'

12     Fake "Free" Offer was/is the truly free filing service Plaintiffs and members of the California

13     Subclasses were/are seeking), when they are not. In violation of California Civil Code

14     §1770(a)(9), Defendants falsely, deceptively, and unfairly markets and advertises their Fake

15     "Free" Offer as free for most taxpayers, with the intent to direct Plaintiffs and members of the

16     California Subclasses into paid services, such that Plaintiffs and members of the California

17     Subclasses did/do not receive Defendants' services as advertised. In violation of California Civil

18     Code §1770(a)(10), Defendants falsely, deceptively, and unfairly market and advertise their Fake

19     "Free" Offer as free for most taxpayers, with the intent to not to supply reasonably expected

20     demand for such free e-filings but instead to direct Plaintiffs and members of the California

21     Subclasses into paid services. Finally, in violation of California Civil Code §1770(a)(13),

22     Defendants makes false and misleading statements of fact concerning the existence of and

23     amounts of price reductions for their tax e-filing services.

24        135.    Plaintiffs request that this Court enjoin Defendants from continuing to employ the

25     unlawful methods, acts and practices alleged herein pursuant to California Civil Code

26     § 1780(a)(2). If Defendants are not restrained from engaging in these types of practices in the

27     future, Plaintiffs, members of the California Subclasses, and the general public will continue to

28

1    suffer harm.

2        136.    CLRA § 1782 NOTICE. **Irrespective of any representations to the contrary in**

3    **this Class Action Complaint, Plaintiffs specifically disclaim, at this time, any request for**

4    **damages under any provision of the CLRA.** Plaintiffs, however, hereby provide Defendants

5    with notice and demand that within thirty (30) days from that date, Defendants correct, repair,

6    replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of

7    herein. Defendants failure to do so will result in Plaintiffs amending this Class Action Complaint

8    to seek, pursuant to California Civil Code § 1780(a)(3), on behalf of themselves and those

9    similarly situated members of the California Subclasses, compensatory damages, punitive

10   damages and restitution of any ill-gotten gains due to Defendants' acts and practices.

11       137.    Plaintiffs also request that this Court award their costs and reasonable attorneys'

12   fees pursuant to California Civil Code § 1780(d).

13                    **PLAINTIFFS' SECOND CAUSE OF ACTION**

14       **(False Advertising, Business and Professions Code § 17500, *et seq.* ("FAL"), on**
                         **behalf of Plaintiffs and the California Subclasses)**
15

16       138.    Plaintiffs reallege and incorporate by reference the paragraphs of this Complaint as

17   if set forth herein.

18       139.    Beginning at an exact date unknown to Plaintiffs, but within three (3) years

19   preceding the filing of the Complaint, Defendants made untrue, false, deceptive and/or misleading

20   statements in connection with the advertising and marketing of their Fake "Free" Offer.

21       140.    Defendants made (and continue to make) representations and statements (by

22   omission and commission) that led Plaintiffs, members of the California Subclasses, and other

23   members of the general public to believe that Defendants' Fake "Free" Offer was free for most

24   taxpayers and that Defendants' Fake "Free" Offer was the truly free filing service Plaintiffs and

25   members of the California Subclasses were seeking when attempting to file their returns for free.

26       141.    In truth, Defendants' Fake "Free" Offer is not part of the IRS Free File program, is

27   subject to several undisclosed and surprising conditions, is not free for most taxpayers, and is part

28

1    of Defendants' Bait-and-Switch Program, so Defendants' claims that that service is "free" are

2    false and misleading.

3         142.    Plaintiffs, members of the California Subclasses, and members of the general

4    public relied to their detriment on Defendants' false, misleading and deceptive advertising and

5    marketing practices, including each of the misrepresentations and omissions set forth in the

6    Substantive Allegations above. Had Plaintiffs, members of the California Subclasses, and

7    members of the general public been adequately informed and not intentionally deceived by

8    Defendants, they would have acted differently by, without limitation, refraining from using

9    Defendants' Fake "Free" Offer and the Paid HRB Tax Programs.

10        143.    Defendants' acts and omissions are likely to deceive the general public.

11        144.    Defendants engaged in these false, misleading and deceptive advertising and

12    marketing practices to increase their profits. Accordingly, Defendants engaged in false

13    advertising, as defined and prohibited by section 17500, *et seq.* of the California Business and

14    Professions Code.

15        145.    The aforementioned practices, which Defendants used, and continue to use, to

16    their significant financial gain, also constitutes unlawful competition and provides an unlawful

17    advantage over Defendants' competitors as well as injury to the general public.

18        146.    As a direct and proximate result of such actions, Plaintiffs, the members of the

19    California Subclasses, and other members of the general public have suffered, and continue to

20    suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and

21    misleading advertising in an amount which will be proven at trial, but which is in excess of the

22    jurisdictional minimum of this Court.

23        147.    Plaintiffs seek, on behalf of themselves and those similarly situated, full restitution

24    of monies, as necessary and according to proof, to restore any and all monies acquired by

25    Defendants from Plaintiffs and from the members of the California Subclasses by means of the

26    false, misleading and deceptive advertising and marketing practices complained of herein, plus

27    interest thereon.

28

1    148.    Plaintiffs seek, on behalf of themselves, the members of the California Subclasses,

2    and the general public, a declaration that the above-described practices constitute false,

3    misleading and deceptive advertising.

4    149.    Plaintiffs seek, on behalf of themselves, the members of the California Subclasses,

5    and the general public, an injunction to prohibit Defendants from continuing to engage in the

6    false, misleading and deceptive advertising and marketing practices complained of herein. Such

7    misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will

8    continue to cause injury in fact to the general public and the loss of money and property in that

9    Defendants will continue to violate the laws of California, unless specifically ordered to comply

10   with the same. This expectation of future violations will require current and future taxpayers to

11   repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to

12   which they are not entitled. Plaintiffs, the members of the California Subclasses, and other

13   members of the general public have no other adequate remedy at law to ensure future compliance

14   with the California Business and Professions Code alleged to have been violated herein.

15                    **PLAINTIFFS' THIRD CAUSE OF ACTION**

16   **(Unlawful, unfair, and fraudulent trade practices violation of Business and Professions
     Code § 17200, *et seq.* ("UCL") on behalf of Plaintiffs and the California Subclasses)**

17

18   150.    Plaintiffs reallege and incorporate by reference the paragraphs of this Complaint as

19   if set forth herein.

20   151.    Within four (4) years preceding the filing of this lawsuit, and at all times

21   mentioned herein, Defendants have engaged, and continue to engage, in unlawful, unfair, and

22   fraudulent trade practices in California by engaging in the unlawful, unfair, and fraudulent

23   business practices outlined in this complaint.

24   152.    In particular, Defendants have engaged, and continue to engage, in unlawful

25   practices by, without limitation, violating the following state laws: (i) the CLRA as described

26   herein; (ii) the FAL as described herein; and (iii) the unlawful, unfair, and/or fraudulent breach of

27   contract.

28

Class Action Complaint

153.   In particular, Defendants have engaged, and continue to engage, in unfair, unlawful, and fraudulent practices as set forth in paragraphs 1-9, 44-108, and 168 herein, which include without limitation:

    a.  concealing Defendants' True Free File Service from taxpayers (e.g., through coding and search engine strategies, by failing to link to or discuss the True Free File Service in prominent places on Defendants' webpages, by failing to clearly disclose the material differences between Defendants' Fake "Free" Offer and Defendants' True Free File Service while knowing that there is consumer confusion and that consumers are seeking the True Free File Service, and by failing to identify and link to the True Free File Service and the IRS Free File program after taxpayers provide information revealing that they are eligible for those truly free services);

    b.  marketing and operating Defendants' Bait-and-Switch Program to extract money from taxpayers entitled to free filing (e.g., using paid advertisements directed toward consumers seeking free filing, using marketing and search engine strategies to direct Eligible Taxpayers to Defendants' Fake "Free" Offer when they should be directed to Defendants' True Free File Service and/or the IRS Free File program, misrepresenting that Defendants' Fake "Free" Offer is free for most taxpayers, misrepresenting and causing Plaintiffs and members of the Classes to believe that Defendants' Fake "Free" Offer is the free filing service Plaintiffs and members of the California Subclasses are seeking when attempting to file their returns for free, causing consumers to spend substantial amounts of time and effort inputting their tax information (including sensitive personal and financial information) before notifying them they are not eligible for the Fake "Free" Offer, prompting Eligible Taxpayers to pay for Defendants' services and misrepresenting that Eligible Taxpayers are required to pay for services they do not actually need, and failing to use information

provided by Eligible Taxpayers to direct them to and automatically begin

generating tax returns through Defendants' True Free File Service); and

    c.  unlawfully, unfairly and/or fraudulently violating, breaching and/or

circumventing the provisions of the Eighth MOU as set forth above and below.

154.    Moreover, Defendants have unfairly competed with and continue to unfairly compete with the IRS Free File program and the truly free e-filing services available under that program, including Defendants' own True Free File Service. Defendants have profited and continues to profit from their unfair, deceptive, and unlawful conduct.

155.    Plaintiffs, the members of the California Subclasses, and members of the general public relied to their detriment on Defendants' unlawful, unfair, and fraudulent business practices. Had Plaintiffs, the members of the California Subclasses, and members of the general public been adequately informed and not deceived by Defendants, they would have acted differently by not paying for Defendants' Paid HRB Tax Programs, and instead they would have used one of the IRS Free File services.

156.    Defendants' acts and omissions are likely to deceive and mislead the general public.

157.    Defendants engaged in these unfair, deceptive and unlawful practices to increase their profits. Accordingly, Defendants have engaged in unlawful trade practices, as defined and prohibited by section 17200, *et seq.* of the California Business and Professions Code.

158.    The aforementioned practices, which Defendants have used to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

159.    As a direct and proximate result of such actions, Plaintiffs, the members of the California Subclasses, and other members of the public, have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.   Among other things, Plaintiffs and the

California Subclasses lost the amounts they paid for Defendants' services (as a result of Defendants' Bait-and-Switch Program), when they should not have paid anything to file their tax returns.

160.    As a direct and proximate result of such actions, Defendants have enjoyed, and continue to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

161.    Plaintiffs seek, on behalf of themselves and those similarly situated members of the California Subclasses, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendants from Plaintiffs, the members of the California Subclasses, the general public, or those similarly situated by means of the false, misleading and deceptive advertising and marketing practices complained of herein, plus interest thereon.

162.    Plaintiffs seek, on behalf of themselves, the members of the California Subclasses, and the general public, a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

163.    Plaintiffs seek, on behalf of themselves, the members of the California Subclasses, and the general public, an injunction to prohibit Defendants from continuing to engage in the deceptive and/or unlawful trade practices complained of herein. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future taxpayers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which they is not entitled. Plaintiffs, the members of the California Subclasses, and members of the general public have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

## PLAINTIFFS' FOURTH CAUSE OF ACTION

(Breach of Contract, on behalf of Plaintiffs and the Classes)

164.   Plaintiffs reallege and incorporate by reference the paragraphs of this Complaint as if set forth herein.

165.   The Eighth MOU is a contract between the IRS and FFI (including FFI Members). Defendants are Members of FFI and are subject to the terms of the Eighth MOU.

166.   The Eighth MOU was entered into for the express benefit of "economically disadvantaged and underserved populations" of taxpayers and "the lowest 70 percent of the taxpayers."

167.   Plaintiffs and members of the Classes are third-party beneficiaries of the Eighth MOU.

168.   Defendants breached the terms of the Eighth MOU by:

   a.   failing to comply with the first paragraph of Article 2, which requires Defendants to "extend[] the benefits of online tax preparation and electronic filing to economically disadvantaged and underserved populations at no cost to . . . the individual user;"

   b.   failing to comply with Section 2.1, which requires Defendants to "[m]ake tax preparation and filing easier and reduce the burden on individual taxpayers, particularly the economically disadvantaged and underserved populations;"

   c.   failing to comply with Section 2.4, which requires Defendants to "provid[e] taxpayers the option to file their tax return online without charge;"

   d.   failing to comply with Section 4.15.14, which requires Defendants to "clearly list their free customer service options;"

   e.   failing to comply with Section 4.19.2, which requires Defendants to "unequivocally inform taxpayers who are ineligible for the free offer at the earliest feasible point" that they are ineligible for the Free File offer and the reason for the ineligibility, and, in the event that a taxpayer is ineligible for either Defendants' Fake "Free" Offer or Defendants' True Free File Service, Defendants are required to direct the taxpayer "back to the IRS Free File

47

Landing Page as the first and most prominent alternative action so that [the taxpayer] may immediately consider other Free File offers available from the Free File Program;"

  f. failing to comply with Section 4.19.4, which prohibits Defendants from posting "a billing screen requesting or collecting bank/financial information (e.g., debit/credit card information) from customers who qualify for a free return where no state tax products have been purchased;"

  g. failing to comply with Sections 4.19.2 and 4.32.2, which require Defendants to direct taxpayers to Defendants' True Free File Service as the first option, then direct Eligible Taxpayers who do not qualify for that True Free File Service to the IRS Free File program where such Eligible Taxpayers can find other free offers, and only then may Defendants present Eligible Taxpayers with an alternative free service, and, only as a last resort, may Defendants offer taxpayers paid services; and

  h. failing to comply with Section 4.19.4, which prohibits Defendants from "marketing, soliciting, sales or selling activity, or electronic links to such activity . . . in the Free File Program" (such violations include but are not limited to Defendants' marketing of paid services on the landing page for their True Free File Service, as the first and most prominent alternative to using Defendants' True Free File Service).

  169. Plaintiffs and members of the Classes have been damaged by the Defendants' breaches of the MOU because Plaintiffs and members of the Classes were entitled to file their federal tax returns for free pursuant to the Eighth MOU but were misled by Defendants and were charged by Defendants to file their tax returns.

  170. Plaintiffs, on behalf of themselves and the members of the Classes, seek recovery for damages, as well as injunctive relief requiring Defendants to comply in good faith with the terms of the Eighth MOU.

1

**PLAINTIFFS' FIFTH CAUSE OF ACTION**

2

(Unjust Enrichment, on behalf of Plaintiffs and the Classes)

3        171.    Plaintiffs reallege and incorporate by reference the paragraphs of this Complaint as

4    if set forth herein.

5        172.    Plaintiffs and the members of the Classes conferred benefits on the Defendants by

6    paying for Defendants' products and services, when they were eligible to file their tax returns for

7    free.

8        173.    But for Defendant's inequitable conduct alleged herein, which misled, misdirected,

9    and manipulated Plaintiffs and the members of the Classes into paying for services they did not

10   need, Plaintiffs and the members of the Classes would not have paid Defendants anything for

11   their tax filings.

12       174.    Defendants engaged in these unjust practices to increase their profits to the

13   detriment of Plaintiffs and those similarly situated.

14       175.    It would be unjust and inequitable for Defendants to retain the benefits of their

15   misconduct as alleged herein, because, among other things, Defendants misled, misdirected, and

16   manipulated Plaintiffs and the members of the Classes into paying for services they did not need,

17   and Defendants knew or should have known that they were unjustly profiting from Plaintiffs and

18   the members of the Classes.

19       176.    Because Defendant's retention of the non-gratuitous benefit conferred on it by

20   Plaintiffs and those similarly situated is unjust and inequitable, Defendant must disgorge such

21   benefits and pay restitution to Plaintiffs and the members of the Classes for their unjust

22   enrichment, as ordered by the Court.

23       177.    Plaintiffs seek, on behalf of themselves and the members of the Classes, full

24   disgorgement of Defendants' revenues or profits from their wrongful conduct and/or full

25   restitution of the fees paid by Plaintiffs and members of the Classes, to restore any and all monies

26   acquired by Defendants from Plaintiffs, members of the Classes, and the general public, by means

27

28

Class Action Complaint

1    of the Bait-and-Switch Program and the false, misleading, and deceptive advertising and

2    marketing practices complained of herein, plus interest thereon.

3                                    **REQUEST FOR RELIEF**

4         WHEREFORE, Plaintiffs, on behalf of themselves, the Classes, and the general public,

5    respectfully requests that the Court enter judgment against Defendants as follows:

6         A. A public injunction temporarily and permanently enjoining Defendants from

7            continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in

8            this Complaint (including without limitation paragraphs 44-86, 103-14, 133-34, 139-

9            40, and 153), and including without limitation:

10               1) prohibiting Defendants from marketing and operating any supposedly "free"

11                  service in addition to or in competition with Defendants' True Free File

12                  Service, including prohibiting Defendants from advertising any other service

13                  as "free" and from purchasing search advertisements, other than

14                  advertisements for Defendants' True Free File Service, in connection with the

15                  search term "free;"

16               2) as an alternative to the public injunction described immediately above, a public

17                  injunction requiring Defendants, on the home page of any alternative free tax

18                  filing service they may offer, on other webpages or screens throughout the

19                  process of using such service, and on any page that indicates that a taxpayer

20                  does not qualify for the alternative free service or proposes an upgrade or

21                  payment for Defendants' Paid HRB Tax Programs, (a) to provide a clear and

22                  prominent disclosure that the alternative free service is not Defendants' True

23                  Free File Service; (b) to clearly identify the differences between Defendants'

24                  True Free File Service and the alternative free service; (c) to disclose that there

25                  are other free filing offers available through the IRS Free File program; (d) to

26                  provide a prominent link to Defendants' True Free File Service and to the IRS

27                  Free File Landing Page; (e) to unequivocally inform taxpayers at the earliest

28

1    feasible point—including on the landing page for the alternative free service

2    and/or as soon as the taxpayer enters any response (such as the taxpayer's

3    AGI) that is sufficient to determine the taxpayer's eligibility for the following

4    services—whether they are eligible or ineligible for Defendants' True Free File

5    Service, whether they are generally eligible or ineligible for other offers under

6    the IRS Free File program, and whether they are eligible or ineligible for

7    Defendants' alternative free e-filing service; (f) to clearly and accurately

8    inform taxpayers that any information they have provided to Defendants and

9    that would be used for Defendants' alternative free filing service will

10   automatically and conveniently be transferred to Defendants' True Free File

11   Service if the taxpayer elects to proceed with Defendants' True Free File

12   Service; and (g) to immediately transfer all relevant information a taxpayer has

13   provided to Defendants to Defendants' True Free File Service if the taxpayer

14   elects to proceed with Defendants' True Free File Service;

15   3) prohibiting Defendants from engaging in practices designed to lower the

16   prominence and ranking of Defendants' True Free File Service in search

17   engine results, including prohibiting Defendants from disallowing any search

18   engine robot crawling and indexing that would tend to increase the ranking of

19   the webpages for Defendants' True Free File Service, and prohibiting

20   Defendants from using search advertisements and search engine optimization

21   techniques to promote the ranking of any competing service to the prejudice of

22   Defendants' True Free File Service or to the prejudice of the IRS Free File

23   program;

24   4) prohibiting Defendants from initiating, directing, or using any affiliate

25   marketing program as part of a Bait-and-Switch Program or that refers

26   taxpayers to a Bait-and-Switch Program, including any affiliate marketing

27   program that targets search terms involving "free" filing or "free" tax returns

28

1   and then paying affiliates when those individuals seeking "free" services are

2   ultimately referred to and/or charged for Defendants' Paid HRB Tax Programs;

3   5) requiring Defendants to provide clear information, at the earliest feasible point,

4   about each taxpayer's eligibility for genuinely free e-filing services under the

5   IRS Free File program and how the taxpayer can get to an online provider who

6   will provide free filing services to that taxpayer;

7   6) prohibiting Defendants from marketing paid services (whether through an

8   upgrade prompt, a recommendation, an advertisement, or a menu featuring

9   paid services) to taxpayers who are eligible for free filing under the IRS Free

10   File program;

11   B.  Additionally:

12   a.  On Cause of Action Number 1 against Defendants and in favor of Plaintiffs

13   and the other members of the California Subclasses:

14   i.  For restitution of the fees paid by Plaintiffs and members of the

15   California Subclasses to Defendants, in an amount to proven at trial;

16   ii.  for injunctive relief pursuant to California Civil Code section 1780 and

17   as described and requested in Section A;

18   iii.  [Reserved];

19   iv.  [Reserved];

20   b.  On Cause of Action Number 2 against Defendants and in favor of Plaintiffs

21   and the other members of the California Subclasses:

22   i.  For restitution of the fees paid by Plaintiffs and members of the

23   California Subclasses to Defendants, in an amount to proven at trial

24   pursuant to, without limitation, the California Business & Professions

25   Code §§ 17200, *et seq.*; and 17500, *et seq.*; and

26   ii.  for declaratory and injunctive relief pursuant to, without limitation, the

27   California Business & Professions Code §§ 17200, *et seq.* and 17500 *et*

28

Class Action Complaint

1                           *seq.* and as described and requested in Section A;

2         c. On Cause of Action Number 3 against Defendants and in favor of Plaintiffs

3             and the other members of the California Subclasses:

4                 i. For restitution of the fees paid by Plaintiffs and members of the

5                    California Subclasses to Defendants, in an amount to proven at trial,

6                    pursuant to, without limitation, the California Business & Professions

7                    Code §§ 17200, *et seq.*; and

8                ii. for declaratory and injunctive relief pursuant to, without limitation, the

9                    California Business & Professions Code §§ 17200, *et seq.* and as

10                    described and requested in Section A;

11         d. On Cause of Action Number 4 against Defendants and in favor of Plaintiffs

12             and the other members of the Classes:

13                 i. For compensatory damages (including the fees paid by Plaintiffs and

14                    members of the Classes), in an amount to proven at trial; and

15                ii. for declaratory and injunctive relief as described and requested in

16                    Section A;

17         e. On Cause of Action Number 5 against Defendants and in favor of Plaintiffs

18             and the other members of the Classes:

19                 i. For disgorgement or restitution of the benefits Defendants have

20                    obtained from (i.e., the fees paid by) Plaintiffs and members of the

21                    Classes, in an amount to proven at trial;

22     C. For reasonable attorneys' fees and the costs of suit incurred; and

23     D. For such further relief as this Court may deem just and proper.

24

25

26

27

28

Class Action Complaint

## JURY TRIAL DEMANDED

Plaintiffs hereby demands a trial by jury as to all issues.

Dated:  May 17, 2019

**GUTRIDE SAFIER LLP**

Seth A. Safier (California Bar No. 197427)
100 Pine Street, Suite 1250
San Francisco, CA 94111
Attorneys for Plaintiffs

54

Class Action Complaint

# Exhibit 1

DocuSign Envelope ID: 418BF978-698A-4B5D-B    56143F67DDE

## **EXHIBIT 1**

1

2      I, Derek Snarr, declare:

3      1.      I am a Plaintiff in this action. If called upon to testify, I could and would

4   competently testify to the matters contained herein based upon my personal knowledge.

5      2.      I submit this Declaration pursuant to California Civil Code § 1780(d) and

6   California Code of Civil Procedure section § 2015.5.

7      3.      On or about April 15, 2019, I used and was charged for Defendants' online tax

8   filing service while I was located in San Francisco, California, where I resided at the time and

9   where I continue to reside.

10     4.      I declare under penalty of perjury under the laws of California that the foregoing is

11  true and correct.

12     Executed in San Francisco, California on    5/17/2019

13

14                                                      DocuSigned by:

15                                              
                                                          88E21ED4B12B4EE
16                                                      Derek Snarr

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION RE CAL. CIV. CODE SECTION 1780(D) JURISDICTION

# Exhibit 2

## EIGHTH MEMORANDUM OF UNDERSTANDING ON SERVICE STANDARDS AND DISPUTES
### Between the Internal Revenue Service and Free File, Incorporated

This Eighth Memorandum of Understanding ("MOU") is entered into as of the date of the last signature on this document between Free File, Inc. ("FFI") and the IRS.

This MOU is a 3-year follow-on agreement entered between the parties, and that has a termination date of October 31, 2021.

### Preamble

**WHEREAS,** FFI (then Free File Alliance LLC) and the IRS entered into a 3-year agreement which was published in the Federal Register (Vol. 67, No. 153, page 51621) on August 8, 2002, and executed on October 30, 2002, (IRS Agreement) that set forth parameters to which industry members of the Alliance would offer online tax preparation and filing services to taxpayers least able to afford e-filing tax returns at no cost to such taxpayers (Services), and pursuant to which it was agreed that the Alliance will offer the Services and the IRS will provide taxpayers with links to the Services offered by the Alliance participants through a web page, which is hosted at irs.gov with links from www.usa.gov; and

**WHEREAS,** on October 29, 2005, the Alliance and the IRS agreed to amend and extend the IRS Agreement for an additional 4 years (2005 IRS Agreement); and

**WHEREAS,** the Alliance and the IRS agreed to amend and extend the IRS Agreement for an additional 5 years from October 30, 2009, through October 30, 2014 (2009 Free On-Line Electronic Tax Filing Agreement Amendment); and

**WHEREAS,** the Alliance applied for 501(C)(3) tax-exempt organization status, and the IRS granted the FFI such status in 2012; and

**WHEREAS,** FFI and the IRS agreed to amend and extend the Agreement for one year, from April 30, 2014 to December 1, 2015, with the intention to negotiate this multi-year agreement; and

**WHEREAS,** the IRS has hosted and maintained its website in accordance with the IRS Agreement; and

**WHEREAS,** the IRS publishes annually to all FFI Members its specifications, requirements, and restrictions for a fillable form program and FFI has agreed to permit one or more Members to provide the IRS an unbranded product that meets the IRS specifications for an unbranded fillable form utility; and

**WHEREAS,** FFI Members are innovators who have introduced innovations through their commercial products that make tax preparation easier, more efficient, and less prone to human error; and

**WHEREAS**, IRS believes Free File should be a place for testing and delivering innovation to taxpayers, and there is a desire to have these product innovations provided for free in the Free File Members' software programs, FFI and IRS agree that specific, continuous, and ongoing efforts should be made to provide further innovations for the benefit of Free File taxpayers over the five-year term of this Memorandum of Understanding.

**NOW THEREFORE**, for good and valuable considerations, the parties, intending to be legally bound by this MOU, hereby agree as follows:

2

## ARTICLE 1
## DEFINITIONS

1.1 "Affiliate" of the Member, Executive Director, or other entity shall mean any Person, directly or indirectly, through one or more intermediaries, controlling, controlled by, or under common control with the Member, Executive Director, or other entity, as applicable. The term "control," as used in the immediately preceding sentence, shall mean with respect to a corporation or limited liability company the right to exercise, directly or indirectly, more than 50 percent of the voting rights attributable to the controlled corporation or limited liability company, and, with respect to any individual, partnership, trust, other entity, or association, the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of the controlled entity.

1.2 "FFI Filers" shall mean those taxpayers with an Adjusted Gross Income (AGI) equal to or less than 70 percent of all United States (U.S.) taxpayers or below for the prior year, including those least able to afford e-filing tax returns, based upon verifiable characteristics in their tax return and, as a result, who for free, online tax return preparation and filing services are offered by an individual Member.

1.3 "Bankruptcy" shall mean: (a) the filing of an application by the Member for, or its consent to, the appointment of a trustee, receiver, or custodian of its assets; (b) the entry of an order for relief with respect to the Member in proceedings under the U.S. Bankruptcy Code, as amended or superseded from time to time; (c) the making by the Member of a general assignment for the benefit of creditors; (d) the entry of an order, judgment, or decree by any court of competent jurisdiction appointing a trustee, receiver, or custodian of the assets of the Member unless the proceedings and the Person appointed are dismissed within ninety (90) days; or (e) the failure by the Member generally to pay its debts as the debts become due within the meaning of Section 303(h)(l) of the U.S. Bankruptcy Code, as determined by the Bankruptcy Court, or the admission in writing of its inability to pay its debts as they become due.

1.4 "Code" shall mean the Internal Revenue Code of 1986, as amended from time to time, and the provisions of succeeding law.

1.5 "Coverage" shall mean the lowest 70 percent of taxpayer population calculated using AGI. The IRS uses the prior year tax return information to compute the AGI amount that equates to 70 percent of the tax return population. The number of taxpayers covered each year will be adjusted for each filing season thereafter based on taxpayer population and income changes, but the agreed upon percentage of coverage will not change.

1.6 The "IRS" shall mean the Internal Revenue Service.

1.7 "Executive Director" shall mean the Executive Director of FFI.

1.8 "Member's Free File Website" shall mean Members' websites that offer free, online tax return preparation and filing services to FFI Filers.

1.9     "Member" shall mean each company in the electronic tax preparation and filing industry who is a member in good standing with FFI

1.10    "Member Free File Landing Page" shall mean the first page a taxpayer sees when leaving the IRS site to the Member company's site.

1.11    "New Market Entrant" shall mean a Person who is not yet a Member that intends to offer Services in the upcoming tax season but has not done so for past seasons.

1.12    "Person" shall mean an individual, partnership, limited partnership, limited liability company, corporation, association, or any other entity.

1.13    "Services" Shall mean free, online tax return preparation and Filing of Federal individual income tax returns.

1.14    "Software Programs" shall mean the software program a Member uses to provide online tax return preparation and filing services to taxpayers.

1.15    "Treasury Regulations" shall, unless the context clearly indicates otherwise, mean the regulations in force as final or temporary that have been issued by the U.S. Department of Treasury pursuant to its authority under the Code, and any successor regulations.

1.16    The "IRS Website" refers to www.irs.gov (or IRS.gov).

1.17    The "IRS Free File Website" shall mean the website hosted and maintained by the IRS through which the Services are offered to taxpayers.

1.18    The "IRS Free File Landing Page" shall mean the introductory IRS Free File splash screen or landing site within the IRS Website.

1.19    "Unbranded Fillable Form Utility" shall mean an unbranded software product that is forms based and provided by a FFI Member in compliance with the particular requirements, limitations, and standards applicable to that service as set forth in the IRS Free File Program Fillable Forms Utility Specifications dated December 9, 2008, and is chosen by the IRS for placement on the IRS Website.

1.20    "State Free File Program" shall mean those programs in states that offer free preparation and e-filing of individual tax returns based on criteria that are materially consistent with the federal Free File program, and which do not provide taxpayer-funded online software for tax preparation and e-filing. In 2014, there are 21 states and the District of Columbia participating in the State Free File Program (see

Appendix A) but this definition applies to all states meeting the above criteria in a given year, and the list of eligible states may change from year to year..

1.21 "Non-Free File States" shall mean those states that have their own taxpayer-funded online software for tax preparation and e-filing.

1.22 "Active Duty Military" shall mean those individual taxpayers currently serving full time in the armed forces, including the United States Army, Navy, Marines, Air Force, Coast Guard, and National Guard, and whose income equates to the lowest 70% of the national AGI.

## ARTICLE 2
## FFI AND IRS OBJECTIVES

Members shall work in concert with the IRS to increase electronic filing of tax returns, which includes extending the benefits of online federal tax preparation and electronic filing to economically disadvantaged and underserved populations at no cost to either the individual user or to the public treasury. Further, the IRS and FFI (previously Free File Alliance or Alliance) agree that to serve the greater good and ensure the long-term stability of FFI, the scope of this program is focused on covering the taxpayers least able to afford e-filing their returns on their own. In recognition of this commitment, the federal government has pledged to not enter the tax preparation software and e-filing services marketplace. Members shall also:

2.1 Make tax return preparation and filing easier and reduce the burden on individual taxpayers, particularly the economically disadvantaged and underserved populations;

2.2 Support the IRS's statutory goals of increased electronic filing, pursuant to the IRS Restructuring and Reform Act of 1998;

2.3 Provide greater service and access to the Services to taxpayers; and

2.4 Implement one of the proposals in the President's Fiscal Year 2003 budget, specifically to encourage further growth in electronic filing by providing taxpayers the option to file their tax return online without charge using cooperation with, and encouraging competition within, the private sector.

## ARTICLE 3
## TRANSPARENCY IN MANAGEMENT

To manage the program in a transparent manner, the IRS will utilize the then current AGI number which equates to the lowest 70 percent of the taxpayers to manage the program, and will not accept or post any offer by a Member which exceeds this AGI amount.  The IRS will describe this limitation on the IRS Free File website. FFI will not have a role in this IRS management process.

## ARTICLE 4
## STANDARDS OF PRACTICE

4.1     Level of Service.

   4.1.1   Each Member and New Market Entrant shall:

   (i)     Be engaged in the electronic tax preparation and filing industry;

   (ii)    Have processed a cumulative total of 2,500 online returns during previous years, or has processed 25,000 e-file returns before becoming a Member;

   (iii)   Meet a 75 percent acceptance rate for electronic returns for traditional Free File throughout the filing season, excluding business rules and any subsequent codes associated with prior year AGI and self-select pin mis-matches. The IRS will work with FFI to identify any business rule errors that are a result of new legislation and/or policy. Specific business rule errors may be excluded from the computation of a company's acceptance rate.

   (iv)    Meet any increased standard agreed to for subsequent years by the IRS and FFI

   4.1.2   Any Member who does not meet the minimum acceptance rate set out in 4.1.1 (iii) and (iv) above may be removed from the IRS Free Website.

   4.1.3   Each Member and New Market Entrant shall:

   (i)     Make its Services available to not less than 10 percent and not more than 50 percent of the individual taxpayer population, or approximately seventy million (70,000,000) taxpayers, within the Coverage, as annually adjusted through IRS analysis of the taxpayer database to determine the lower 70% of all U.S. taxpayers. Additionally, any free services offered under this MOU to Active Duty Military members who meet the requirement of earning no more than the lowest 70% of the national AGI shall be exempt from this service cap of 50% of the taxpayer population. Notwithstanding other terms in this MOU, this provision exempting eligible Active Duty Military members from the service cap shall become effective in January 2015;

6

(ii)     Offer its Services on a non-discriminatory basis;

(iii)    Be an authorized IRS e-File Provider in accordance with IRS Revenue Procedure 2005-60;

(iv)    Be in compliance with applicable Department of Treasury/IRS rules, including, but not limited to, 31 C.F.R. Part 10, IRS Revenue Procedure 2005-60, current versions of IRS Publications 1345, 1345-A and 3112, 4164, Modernized e-File (MeF) Guide for Software Developers and Transmitters, 1436 Test Package for Electronic Filers of Individual Income Tax Returns for Tax Year 2014 and IRC Section 7216;

(v)     Possess and provide appropriate documentation to the IRS and the Executive Director demonstrating they have acquired third party security and privacy certifications which are applicable for the period the company is actively listed on the IRS Free File Website;

(vi)    Have appropriate logos or seals (for both privacy and security) from acceptable and recognized third party privacy and security certification providers placed in clearly visible locations on the Member's Free File Landing Page; and

(vii)   New Market Entrants shall self-certify in writing to the Executive Director, and available upon request to the IRS, that the New Market Entrant has sufficient technical capacity to meet the Level of Service requirements as set forth in this MOU and then current FFI Operating Agreement and are commercial tax preparation software providers aside from their FFI offering.

4.1.4    Participation of Non-Profits. Non-Profit Organizations will be allowed to participate in the Free File program provided that they meet all of the requirements specified in the MOU, including, but not limited to, that their services and products cannot be paid for with Government funds.

4.2    OMITTED BY INTENTION:

4.3    Only one version of each Software Program permitted other than an unbranded fillable forms utility.

4.3.1    Only one version of a Software Program is permitted per Member, except that any Member that chooses to offer an unbranded fillable form Software Program may offer that product in addition to the Software Program that is accessible from the Member's Free File Website. This provision does not preclude a Member from using the same Software Program for access both from the Member's Free File Website and as an unbranded fillable form accessible from the IRS's website. A Member may own the copyright in a Software Program or have a valid license to use a Software Program, but a Software Program may not be used by more than one Person to obtain FFI membership.

4.3.2   Members and/or any New Market Entrant applying for membership with FFI will provide the Executive Director with information as requested by the Executive Director to permit a determination as to whether Software Programs are duplicative and/or substantially similar based upon features, functions, and/or general characteristics and would violate Section 4.3.1. The IRS or the Executive Director shall review the following list of characteristics (i) through (vii), and request any facts needed from the Member or possible New Market Entrant that will assist in this evaluation. No single characteristic below is dispositive of any determination as to whether software is identical or similar. The IRS or the Executive Director may weigh items (i), (ii) and (iii) most heavily, but can take into account any fact or factor:

(i)     The degree to which the underlying software programs are substantially identical or similar;

(ii)    Changes in the logo, color, and presentation do not transform similar software programs into different versions;

(iii)   The degree to which two software programs have a look or feel that is identical or similar;

(iv)    The relationship, if any, of the respective owners of companies; for example, the degree to which corporate officers are the same or dissimilar; whether locations of incorporation are the same or similar, whether the same Uniform Resource Locator is being used by more than one entity; the degree to which two member companies use the same third party developer, etc.;

(v)     The degree to which the company's revenue is related to FFI or principally through commercial sales of software, tax preparation services, and electronic filing to the general public;

(vi)    The degree to which each company has adequate financial resources;

(vii)   The degree to which each company has the necessary organization, experience, operational controls, and technical skills to participate in the tax software preparation industry;

(viii)  The degree to which each company has the necessary technical equipment and facilities; provided that companies are permitted to sell, license, or otherwise transfer software programs for services utilized in FFI offerings, but such sale, license, or other arrangement may be reviewed for its underlying purpose and must be consistent with this entire section; or

(ix)    The degree to which the company has offered and sold tax preparation software and e-filing services competitively in substantial quantities to the general public in the commercial marketplace based on established

catalog prices. For these purposes, catalog prices shall be interpreted consistent with the current definition as described in FAR Part 2.101, or if repealed in entirety, the last version of such definition.

4.3.3   Members and/or New Market Entrants applying for membership in FFI will make the following disclosures with respect to any licensed Software Programs:

(i)   Disclose whether another Person owns more than 25 percent of the code of the licensed Software Program. In the event another Person owns more than 25 percent of the code of the proposed Software Program, the Member and/or New Market Entrants applying for membership must additionally disclose the Person from whom the license has been obtained, as well as the business address and contact point to verify the scope of the license and the relationship between the parties.

(ii)   Disclose whether another Person is providing the Member and/or New Market Entrant with servers or other back-end support other than telecommunications, and provide the business address and contact information for such Person.

4.3.4   All Members shall adhere to industry best practices to ensure the taxpayer return information entrusted to them is secure and the privacy of such information is maintained. In any instance where a Member company contracts with a service provider to obtain technology services, the service provider must adhere to the established industry best practices standard. To the extent multiple Members rely on a single service provider for front or back office services (not Internet Service Provider services), such Members must maintain such taxpayer security and privacy from others who share these service providers.

4.4   Functionality of Member's Website and Software Program. Members and/or New Market Entrants will provide the Executive Director and the IRS with a link to the Member's and/or New Market Entrant's proposed Member's Free File Website no less than 15 business days before the Website is expected to go live. Members' Free File Websites will be functionally adequate in permitting a taxpayer to complete taxpayer's return if the return is consistent with the Member's free offer. Prior to launch, the IRS and the Executive Director will review each Member's Free File Website usability. If the IRS and/or the Executive Director determine that a Member's and/or New Entrant's Software Program is difficult to use, and has or will result in a significant and measurable reduction in the ability of taxpayers to complete their return, the Member will not be listed on the IRS Free File Website or may be delisted until both the IRS and the Executive Director are satisfied that the issue(s) which led to the concern regarding Members' and/or New Market Entrants' Free File Website usability have been addressed.

4.5   Disclosure of Forms and Schedules and Limitations.

4.5.1   Each Member will offer all of the same federal forms and schedules as offered in their basic commercial online consumer programs if they are outside of the minimum required core forms and schedules.

4.5.2   Each Member will offer as a minimum the Core Forms and Schedules as shown in Attachment 1. IRS reserves the right to negotiate with FFI to add new forms before the start of the filing season as necessitated by new legislation.

4.5.3   Each Member and/or New Market Entrant will disclose any limitations in the forms and schedules that are likely to be needed to support Members and/or New Market Entrant's free offerings. This disclosure shall take place on Members' and/or New Market Entrants' Free File Landing Pages (or such page must have a clear link to such disclosures directly from this page). Representative examples of limitations required to be disclosed include, but are not limited to, the inability to support more than one W-2 Form, and/or the lack of a form necessary to prepare a return that is likely to be based on the offer. Limitations in forms and schedules do not include any form that is not routinely required, e.g., the separate forms required for taxpayers with foreign income, unless a Member's offering is particularly orientated around such forms.

4.5.4   Each Member will clearly disclose the supported schedules and forms in addition to the required core forms supported on the Members' Free File Landing Pages or through links on such page.

4.6   Security.

4.6.1   Members will comply with the IRS e-file Security and Privacy Standards, http://www.irs.gov/uac/IRS-e-file-Security-Privacy-and-Business-Standards-Mandated-as-of-January-1-2010

4.6.2   Members will provide no later than December 15th, each year to the IRS the following information:

     (i)   The identity of the company's Approved Payment Card Industry (PCI) scanning vendor, https://www.pcisecuritystandards.org/approved_companies_providers/approved_scanning_vendors.php .

     (ii)   An Executive Summary of the Member's PCI Vulnerability Security Scan. The summary shall include the name of the certified PCI scanning vendor, the date the scan conducted, how many live hosts were scanned, and a discussion of the findings. Vulnerability severity levels should be used to categorize the vulnerabilities (i.e., critical problem or high risk, areas of concern, or medium risk or low risk but potential problems).

4.6.3   Members will possess and provide appropriate documentation to the IRS and the Executive Director demonstrating they have acquired third party security and privacy certifications.

4.6.4   Annually before filing season launch, FFI, or its Members, will conduct penetration and vulnerability assessment of individual Members prior to the start of the filing season. The annual assessments will be conducted prior to, or concurrent with, the annual Acceptance Testing System (ATS) testing. Services relating to this assessment must be obtained from a list of approved vendors jointly created by the IRS and FFI

4.6.5   If a Member is not listed, or is delisted by agreement of the IRS and Executive Director due to perceived security or privacy vulnerabilities, the IRS and FFI have the independent authority to require a penetration test be conducted by an approved third party vendor chosen by the Member if the Member is delisted for concerns which include, but are not limited to, such penetration.

4.6.6   Only the Executive Director, the IRS, and affected individual company will be apprised of a Member's deficiencies identified as a result of any assessment by the IRS or Free File Inc.

4.6.7   Implementation of Completely Automated Turning Test to Tell Computers and Humans Apart (CAPTCHA). Members must implement a CAPTCHA program on the Member's Free File Website as a condition for participation in the program. The CAPTCHA images of text should be distorted randomly and users must then manually enter the text identically as it appears on the screen. The CAPTCHA must be implemented such that a user must successfully complete the CAPTCHA test for proceeding to the next screen. For additional information on the CAPTCHA program, Members may refer to Carnegie Mellon University's CAPTCHA resource page: http://www.captcha.net

4.6.8   Each Member will ensure that visually impaired taxpayers may access and complete the CAPTCHA program.

4.7   Hacker Attacks and Attempts at Intrusion on Member Websites.

4.7.1   Any Member that learns of an inappropriate disclosure of a taxpayer's return information to an unauthorized Person, in the course Member's provision of Services, must immediately:

(i)   Report as soon as possible the unauthorized disclosure to the Executive Director and the IRS but not later than the next business day after confirmation of the incident. Members shall follow the Instructions on IRS.gov for submitting incident reports, http://www.irs.gov/Tax-Professionals/e-File-Providers-&-Partners/Instructions-for--Reporting-Web-site-Security-Incidents-(updated-10-02-08).

(ii)   Shut down Member's Free File Website at the time of detection.

4.7.2   The Executive Director and/or the IRS have complete emergency authority to shut down and/or remove the link to any Member's Free File Website if the Executive Director and/or the IRS believe, based upon objective information, that

11

unauthorized disclosure of taxpayer information has occurred and/or a threat of disclosure of taxpayer return information exists. Objective information includes, but is not limited to, copies of screens containing unauthorized taxpayer information. Objective information is not merely a complaint or allegation by a taxpayer or third party that an unauthorized disclosure has taken place. However, such a complaint or allegation, when supported by additional facts, can become the necessary objective information. Once a Member's Free File Website has been voluntarily or involuntarily shut down, the Executive Director, the IRS and the Member will conduct a prompt review to ensure that the decision to shut down a Member's Free File Website was well founded. Such a review should be completed by the second business day after a Member is delisted. Inability to substantively complete the review based on a failure by the Member to cooperate shall extend this review. A Member's Free File Website may be relisted once the issues which caused concerns are remedied, but the Executive Director and/or IRS may request or require a broader evaluation of a Member's Free File Website before any relisting is permitted.

4.8     One Time No Cost Refiling of Taxpayer Return. When the IRS has rejected a taxpayer's return, Members will permit the IRS rejected return to be refiled at least one time without cost to the taxpayer regardless of whether the IRS rejected the taxpayer's return solely as a result of the taxpayer's mistake, e.g., the taxpayer's entry of an incorrect SSN causes the IRS rejection of the taxpayer's return.

4.9     Self-Select Personal Identification Numbers (PINs). Members must permit self-select PINs as an option for taxpayers who qualify for electronic filing of free services.

4.10    Time Out Feature. All Members must include a feature in their tax preparation software that will "time out" the session after no changes are made for a period of time consistent with best practices approved by privacy seal certification program.

4.11    Guarantee of Calculations.

4.11.1  Each Member shall guarantee the accuracy of calculations performed by its federal free file offering. State returns are not included in this guarantee. For the purposes of this section, the term "Calculations" is defined to mean the numerical addition, subtraction, or multiplication of numbers, and related automatic features that select numbers from tax tables. Calculations do not include any instance where a taxpayer can make a decision to substitute a number for the one automatically computed by the program, and Members are not responsible for changes in tax law made by the Congress during the tax season. All Members will pay any IRS penalties and/or interest resulting from an error in the Member's Software Program's Calculations, notwithstanding the lack of revenue from FFI Filers. The amount of this guarantee shall be limited to the amount accrued when the IRS provides notice to the taxpayer of an improper calculation.

4.12   Section 7216 Compliance. Members shall only use or disclose the tax return data Members collect in provision of Services to taxpayers in accordance with the provisions of Section 7216 of the Code.

  4.12.1   Members will validate that the servers and transmission of tax return data are located in the U.S. If the servers or transmitter are located outside the U.S. or any territory or possession of the U.S., the taxpayer must agree and sign a form consenting to the disclosure. Refer to Revenue Procedure 2008-35, section 4.04(1)(e) and to Treasury Regulation §301.7216-3(a)(3) for complete information and for specific language.

4.13   Use of SSN. Whenever taxpayers are requested or required to provide their SSN, it must be part of a secure session.

4.14   Returning Free File Tax Filers. If a taxpayer used and completed his/her return with a Member's Free File products or services in the immediately preceding tax year, and in the subsequent tax year visits the Member's commercial website(s) for tax preparation and logs into an account registered with the Member, the taxpayer must be given a first option to return to the Member's Free File offer before receiving any other alternative choices for the Member's publicly available commercial tax preparation products or services.  FFI, in consultation with the IRS, shall prescribe the requirements of this uniform communication to the taxpayer, including but not limited to the text, format and prominence of the messaging.  Manipulation of the font size and other graphical elements in order to give prominence to the secondary non-Free File option is prohibited.

4.15   Disclosure of Taxpayer Service Options.

  4.15.1   Members must permit a taxpayer who qualifies for a free return to print their return for free on their personal computer system for both e-filed and paper filed returns. This capacity must be provided for the same period of time (e.g., 3 days, 3 weeks, or 3 months) that such services are provided for free to commercial customers.

  4.15.2   Members must permit a taxpayer who does not qualify for a free return to print their return after paying the applicable fee, if any, charged to Members' commercial customers.

  4.15.3   Members must permit taxpayers who have begun to complete a tax return to complete the return during the current tax year.

  4.15.4   Members must clearly list their free customer service options.  This disclosure must be available on the Member's Free File Landing Page (or such page must have a clear and prominent link to such disclosures directly from this page).  Members must provide taxpayers a free electronic method to obtain a copy and learn the status of their electronically filed tax return.

13

4.16    <u>Availability of Free Services</u>. If a Member's services have not been made available
        on or before March 15 of any tax season, the Member will not be listed after that

date. If a Member's free services will not be available for the remainder of the tax season based on any unplanned outage, their listing will be removed. Each Member shall promptly notify FFI and the IRS of any planned or unplanned unavailability or scheduled maintenance (i.e., down time) of an offering that is anticipated to exceed 5 hours in duration. Members whose services are delisted will be restored to the IRS Free File Website consistent with IRS service capabilities, but not more than 5 business days after the IRS and the Executive Director agree the services can be relisted. IRS may display members whose Free File program remains active on IRS.gov up to the date that IRS closes processing through the MeF program.

4.17    <u>Blackouts</u>. Maintaining a consistent level of service is important.

    4.17.1  No planned blackouts of service are permitted from January 15 through April 15.

    4.17.2  Unplanned blackouts or scheduled maintenance in excess of 5 hours requires electronic notice of unavailability to the IRS, FFI, and, whenever possible, via Member's Free File Landing Page. Failure to provide this notice on more than one occasion is grounds for delisting.

    4.17.3  During any unplanned blackout or scheduled maintenance, customers seeking to access the Free File option should not be directed to or have access to the fee-based services of the Member.

4.18    <u>Contact Person for Notification</u>. Each Member, in making its offer, shall provide a contact name and number of a person(s) who may be reached 24 hours per day/7 days a week for issues regarding unavailability of the services and security breach of taxpayer data. The IRS (as well as the Executive Director) is entitled to delist any Member if contacts with such person are not successful within a 12 hour period.

4.19    <u>Eligible Taxpayers/No Promotional Codes or Rebates/Links to Paid Sites</u>. In providing free services to qualified taxpayers, Member programs cannot utilize promotional codes or rebates as the methodology of providing free services.

    4.19.1  Tagging of Returns. For taxpayers who enter a Member Free File Website from the IRS Free File Website and save any portion of their return, that return should be "tagged" so as to remain eligible for the Member's free offer. This paragraph does not apply to those services offered by Members in permitting extensions (4868) to be filed.

    4.19.2  Ineligibility Notification. Free File Member programs must unequivocally inform taxpayers who are ineligible for the free offer at the earliest feasible point:

        (i)      That they are ineligible for the Free File offer, and

<div align="center">15</div>

    (ii)    The reason that they are not eligible for the offer, and

    (iii)   The taxpayer shall be directed back to the IRS Free File Landing Page as the first and most prominent alternative action so that they may immediately consider other Free File offers available from the Free File Program, and

    (iv)   The disqualification practice of each Member must adhere to the standard messaging, language and formatting guidance to be provided by FFI in consultation with the IRS.

    (v)    The taxpayer next may be offered a free alternative for completion of their return, provided that the taxpayer is covered by the Program limit of being among the lowest 70 percent of taxpayers.

    (vi)   The taxpayer would next be offered the option to continue on the Free File Member's site and pay a fee – which is fully disclosed – to file their federal and/or state return.

4.19.3  Links to Paid Site. Providing an automatic link from the IRS Free File Website to a Member's paid website will result in delisting.

4.19.4  Solicitation for Payment. Members shall not post a billing screen requesting or collecting bank/financial information (e.g., debit/credit card information) from customers who qualify for a free return where no state tax return products have been purchased.

4.20  <u>Date Changes</u>. The IRS has the authority to change any date utilized in this MOU to conform to changes made in regulatory or statutory requirements, or to update the MOU each calendar year. Notice of such change will be tied to such specific regulatory or statutory requirements.

4.21  <u>Disclosure of State Preparation and Filing Options</u>. FFI shall offer free state tax preparation and e-filing in all states that participate in a State Free File Program. FFI is not required to provide free services for state returns in Non-Free File States. The IRS will not provide links to any Non-Free File State Department of Revenue websites from the IRS.gov Free File Website.

4.21.1  FFI members must disclose their state service offerings on each individual Member's Free File Landing Page and make clear whether such returns are free or paid. Any offer for paid state return preparation and e-filing services shall state clearly all the details of the offer, including a single, consolidated fee for such service. Free or paid state offers shall be displayed on the Free File Landing Page prominently. Members must provide the list of states that they currently support. This list shall only include states that have completed state testing and whose software programs have been approved by the state and are ready for use. Members shall include a listing of each State Free File Program that the Member participates in and a hyperlink that will allow taxpayers to access the Members' Department of Revenue State Free File offering.

4.21.2  The IRS may provide information for taxpayers on the IRS Free File Website.

Such information may include, but is not limited to, the following:

(i)    Federal Free File supports preparation of Federal tax returns. Many member companies also offer free or paid state tax preparation and e-filing services.

17

(ii)    Some companies may not offer state tax preparation and e-file services for all states.

The IRS further agrees it will not provide links to the Websites of any Non-Free File States Department of Revenue Websites from the IRS.gov Free File website

4.22    <u>Unilateral Changes by U.S. Government</u>. Any unilateral changes imposed by the U.S. government on FFI whether by statute, regulation, or administrative action will result in an immediate re-evaluation of the decision to continue FFI, and could result in an immediate suspension of free services upon the decision of each Member. Any inclusion of links from the IRS Free File Website to Non-Free File State Department of Revenue websites is grounds for FFI to immediately dissolve its obligations in this MOU.

4.23    <u>Compliance with Federal, State, and Local Laws</u>. Each Member shall provide all Services in accordance with all applicable federal, state, and local laws, rules, and regulations. Each Member shall immediately notify the Executive Director upon its receipt of any notification, oral or written, alleging that such Member is not providing the Services as set forth herein.

4.24    <u>No Transfer or Assignment of Membership Permitted</u>. No Member may transfer its membership interest in FFI to any Person, unless as a result of a merger or acquisition to a successor corporation to the Member reported in a timely fashion to FFI

4.25    <u>Free File Indicator</u>. Members will provide an electronic Free File indicator. If the Member is providing a Spanish version of their Free File product they will provide a Spanish Free File indicator.

4.25.1  The IRS agrees it will not use the indicator to build a marketing database;

4.25.2  The IRS agrees it will not use the indicator to compile company specific data or proprietary data; and

4.25.3  The IRS agrees it will only use the database to create aggregate data profiles of all users.

4.26    <u>Disclosure</u>. The IRS will ensure its Freedom of Information Act office is aware of FFI concerns about disclosure of company specific data, and actively afford notice and opportunity to intervene by FFI and impacted company as is required by statute and regulation.

4.26.1  The IRS will promptly notify the Executive Director in writing if a governmental agency or entity, including, but not limited to the Congress, any Inspector General, or Taxpayer Advocate, or a private party is requesting aggregate data concerning individual Members; and the IRS has concluded it cannot refuse to provide such data:

(i)     The Executive Director upon receipt of the IRS's written notification may immediately advise Members that they can cease providing the indicator;

(ii)    FFI cannot unilaterally suspend the indicator absent proof which it supplies the IRS that the aggregate data concerning an individual Member described above has been compiled or released;

(iii)   In the event any domestic law enforcement agency formally subpoenas or provides the IRS with appropriate process for data resulting from the indicator that is not aggregated, notification to the Executive Director can be delayed for a period not to exceed 90 days; and

(iv)    Any Member(s) which suspends the indicator in accordance with the terms described above shall be expected to provide the total number of accepted e-filed tax returns originating from their Free File service under procedures mutually agreed to by the IRS and the Executive Director.

4.27    Pop-ups, Spyware and other Marketing Tools. The IRS will work with FFI to develop further agreed upon guidance for Members to ensure that their web sites/Free File pages are in compliance with IRC §7216 with respect to pop-ups, pop-unders, adware, spyware, etc.

4.28    Customer Satisfaction Survey. The Members will provide the necessary support to accomplish a customer satisfaction survey.

4.29    Annual Review. For any multi-year agreement between the IRS and the FFI on an annual basis, the parties will review the Free File Program and decide what, if any, improvements need to be made for the next filing season. Any improvements agree to by the parties shall be reflected in an MOU executed by the parties.

     4.29.1    Review for Compliance. FFI and IRS conduct reviews of Members' Free File Landing Pages for compliance with the requirements and obligations contained in this MOU. The review process is under the control of the Executive Director and IRS leadership but will consist of a pre-filing season review for compliance that allows a Member to remediate any identified deficiencies, and a review to ensure that remediation has occurred. The IRS also conducts a random, unannounced review during the filing season to ensure continued compliance.

4.30    Annual Revision. The IRS and the Executive Director may annually revise the MOU between the parties that provides structure for the roles.

4.31    Modifications to Standards of Practice. The Executive Director and the IRS may unilaterally propose additional standards necessary for the Standards of Practice during the tax season. Any additional standards shall be provided to the Members by email. The Executive Director and/or the IRS shall determine whether the standards need to become effective immediately or can await a Member meeting. In any instance where the Executive Director and/or the IRS believe the standards need to be immediately effective, the immediacy of the effect of the new standard shall be noted in the email transmittal, and the additional standards will become effective 5

19

days later, or the first business day if the fifth day falls on a weekend or holiday.

4.32    <u>Permitted Sales, Limits on Ancillary Sales, and Selling Activity</u>

4.32.1  Sale of State Tax Returns Permitted But Not Required. Taxpayers who enter a Member's Free File Landing Page must be able to see a clearly-stated offer for state tax return preparation and e-filing. The free or paid state return offer must be

20

clear and located on the top half of the landing page, and if different fonts are used, the fees and description of the state tax preparation and e-filing must be presented with a typeface and prominence no less than the majority of text on the page, and must include a single, consolidated fee charged for state return preparation and e-filing, as well as a link to a list of state forms offered and federal forms and schedules offered. This offer to provide a free or paid state return may be repeated one additional time in the Member's site. Member providers of unbranded fillable form utilities may not offer a state return.

4.32.2   Provision of Federal Return When Taxpayer Does Not Qualify for a Member Free File Offer Is Permitted. When a taxpayer enters a Member's Free File Landing Page and begins to complete a return but ultimately cannot qualify for the Member's free offer, the Member must provide, as a first option, a prominent hyperlink for the taxpayer to return to the IRS Free File Landing Page (consistent with Paragraph 4.19.2). A Member also may provide free returns to those who do not qualify for the Free File offer, provided they are covered within the terms of the Program. Finally, a Member may inform the taxpayer that he or she has the choice of preparing and filing a federal return using the Member's commercial product. The charge for such commercial product or service shall not exceed the usual commercial price for such products or services.

4.32.3   Reasonable and Customary Charges for Taxpayer Use of Credit Card or its Equivalent Are Permitted. A Member company may charge taxpayers who have a balance due reasonable and customary charges from credit card service providers or their equivalent related to payment services they provide. Refund Anticipation Loans, Refund Anticipation Checks, and other forms of payment are not permitted by this section.

4.32.4   Email Communication with Free File Taxpayers. Free File Members shall communicate not less than once annually via email with their taxpayer customers who used Free File services and completed their returns through Free File in the immediately preceding tax year prior to the opening of the following tax season. The content of this email(s) shall only remind the taxpayer about the availability of the Member's Free File offer and invite them to return to the Member's Free File Landing Page. Free File Members shall not use these communications to communicate with the taxpayer about any non-Free File commercial products or services. No marketing, soliciting, sale or selling activity, or electronic links to such activity, will be permitted in these email(s).

4.32.5   No Other Sales and Selling Activity. No marketing, soliciting, sales or selling activity, or electronic links to such activity, are permitted in the Free File Program, with the exception of the following: (i) the sale of a federal return where, as noted herein, the taxpayer is determined ineligible for the Member's Free File offer and chooses to complete and file his or her return using the Member's commercial offer, or (ii) disclosures or sales (as applicable) related to free or paid state tax preparation offers as specifically provided for in this MOU.

21

4.32.6  <u>Prohibition on "Value-Added" Button.</u>  Members shall not include a "value-added" button (i.e., an icon, link or any functionality that provides a taxpayer with access to a Member's commercial products or services) on the Member's Free File Landing Page.

4.32.7  The Member shall have a prominent link permitting taxpayers on a Member's Free File Landing Page to easily and clearly return to the IRS.gov Free File Landing Page.

4.33  <u>Names Utilized by Member Companies</u>. Members shall possess a clear association between the company or product name posted on <u>IRS.gov</u> and the Member's company or product name. Where a company or product name has been used prior to 2007 by a Member company, the Executive Director and the IRS has the authority to accept or reject a proposed name change to company or product name, and if the Executive Director refuses to permit such change, it is subject to the Dispute Resolution Mechanism at Article 7. No change in name of company or product will be permitted once the Member submits its name to FFI and the IRS for the tax season, unless such a change is required by an adjudication regarding such name.

4.34  <u>Use of the Free File Logo</u>. The IRS and the Members agree to use the logo consistent with the terms specified in Version 1 of the Trademark and Copyright Assignment and License Agreement, December 31, 2007.

4.35  <u>Promotion of the Free File Program</u>. The IRS will make consistent, good-faith efforts to promote the Free File Program in appropriate media activities, interactions with other federal agencies, social media and social networking activities, and in its appropriate technology applications.

4.36  <u>Innovations</u>. FFI and IRS agree that specific, continuous, and ongoing efforts should be made to provide further innovations for the benefit of Free File taxpayers.

4.36.1  <u>Pre-Population of Returning Taxpayer's Prior Year Tax Information</u>. IRS and FFI share the goal that Members should be encouraged to incorporate technology that pre-populates a taxpayer's prior year return data into the current year return

whenever a Free File taxpayer uses a Member's Free File Website for any consecutive year(s).

4.36.2 <u>Pre-Population of Taxpayer Data from W-2 and 1099 to Current Year Returns</u>. IRS and FFI agree that Members should incorporate technology that permits taxpayers to upload forms, such as W-2 and 1099, in order to pre-populate individual, current-year tax returns with the data from these forms. FFI will make a good faith effort to offer Members the use of such technology for use in the Free File program, which may be patented, copyrighted, or trade secret protected. If successful in procuring such technology at no cost, FFI will offer the use of such technology for free to Members who choose to provide this service to taxpayers within the Free File program. Notwithstanding the foregoing, any member may use its own technology to provide the services described in this paragraph. IRS will investigate requirements or voluntary agreements it may reach with payroll companies to encourage them to cooperate with this pre-population.

4.36.3 IRS and FFI mutually agree to support and promote Free File as an "Innovation Lab" to test, pilot, and offer capabilities to simplify taxpayer compliance, such as data importation offered by industry as described herein, and such as IRS's Application Programming Interface (API) projects, consistent with all other terms and conditions in this MOU.

4.36.4 This agreement does not limit IRS from providing phone-based, web-based or electronic interaction between the IRS and a taxpayer (or taxpayer's representative) regarding issues in a previously filed return after such a return has been accepted by IRS. IRS will make an effort to communicate its activities in this respect to FFI and seek opportunities to work with FFI Members.

## ARTICLE 5
## TERM

This agreement [the 8th MOU] shall be complete and binding as of the date of the last signature on this document. Notwithstanding this, the 7th MOU continues in force and effect until its termination on October 30, 2018. The term of this 8th MOU is 3 years, from its effective date on October 31, 2018 to its termination date, which shall be October 31, 2021, and may only be terminated or amended according to the terms of this agreement.

The early completion of the 7th MOU is intended to enhance the Free File Program by providing additional taxpayer protections and choice.

## ARTICLE 6
## BREACH AND REMOVAL FROM THE IRS FREE FILE WEBSITE

6.1    <u>Removal from the IRS Free File Website</u>. A Member's listing may be removed from the IRS Free File Website, or a New Market Entrant may be refused permission to list its offering upon the IRS Free File Website, based upon the occurrence of any of the following:

    6.1.1    The IRS and/or the Executive Director's determination that a New Market Entrant does not meet the Level of Service and/or Standards of Practice of this MOU;

    6.1.2    The IRS and/or the Executive Director's determination that a Member has failed to provide Services in accordance with the Standards of Practice set forth in this MOU, and the Member has not taken necessary corrective actions, if any may be taken, in the timeframe allotted by the IRS's and/or Executive Director's written notice to the Member;

    6.1.3    The IRS and/or the Executive Director's determination that a Member has failed to comply with its obligations under this MOU per Section 4.29.1, and that the Member has failed to timely remediate identified deficiencies.

    6.1.4    The IRS and/or the Executive Director's receipt of notice that a Member has undergone an event of Bankruptcy; or

    6.1.5    The IRS and/or the Executive Director's receipt of written notice from a Member that the Member does not wish to be listed on the IRS Free File Website and/or continue in FFI

6.2    <u>Determination Process</u>. The Executive Director and/or the IRS may make the determinations described in 6.1.1 through 6.1.4 above (i) in coordination with each other; (ii) upon each party's own volition with written notice to the other party; or (iii) upon the reasonable request of a Member and/or third party as determined by the IRS in coordination with the Executive Director.

## ARTICLE 7
## DISPUTES

7.1    <u>Administrative Review</u>. After a determination process pursuant to Article 6 of this MOU, a Member advised by the IRS of the denial or removal of its free offer from posting on the IRS Free File Website has the right to an administrative review. The Member may submit a detailed written explanation with supporting documentation requesting a final determination that the decision to deny or remove their offer from the IRS Free File Website should be withdrawn. Within 3 business days of receipt of the Member's written response, the IRS will reconsider and may either withdraw or affirm its action. During this administrative review process, the decision remains in effect.

7.2    <u>Administrative Remedy</u>. After a determination process pursuant to Article 6 of this MOU, any Member who has been refused the ability to list on the IRS Free File Website and/or has been removed from the IRS Free File Website by the IRS, or

mutually by the IRS and FFI, may challenge the determination to the Civilian Board of Contract Appeals (CBCA) in accordance with the CBCA' s Rule of Procedure.

The CBCA's review is authorized by the Alternative Dispute Resolution laws and regulations issued by the U.S. Government and are in lieu of any litigation in any court.

7.2.1    The CBCA will be the exclusive venue for resolving disputes concerning any action taken by the IRS or the IRS and FFI under the terms of this MOU as described in 7.2.

7.2.2    FFI shall be responsible for paying the CBCA for all costs incurred by the CBCA in any proceeding related to this provision. Each party to the adjudication shall initially pay its own costs and fees. For the purposes of this section, a party to adjudication may include any Member, FFI, and/or the IRS.

7.2.3 If the IRS, or mutually by the IRS and FFI, determines not to permit a New Market Entrant to list its offering on the IRS Free File Website, the IRS and FFI, by mutual agreement, may permit or refuse the New Market Entrant the right to use this provision to review the decision not to permit the New Market Entrant's listing on the IRS Free File Website. For the purposes of this Section, the payment provisions of Section 7.2.2 apply to any adjudication brought by a New Market Entrant.7.2.4 A Member or New Market Entrant who does not prevail in its appeal before the CBCA is required to pay 100 percent of the costs, fees, and expenses incurred by the CBCA and FFI. FFI will invoice the Member and/or New Market Entrant for such costs, fees and expenses, and the Member and/or New Market Entrant shall pay FFI within 10 days of presentation of an invoice for such amount. If the Member or New Market Entrant does not pay these costs, they are no longer in good standing and cannot participate in FFI meetings or be posted on the IRS website.

7.3    The following rules apply to all CBCA proceedings: the Member and/or New Market Entrant who challenges an IRS determination or a joint determination of the IRS and FFI under Section 6 or 7 of this MOU shall not be entitled to any monetary remedies, and the Member's and/or New Market Entrant's sole and only remedy shall be an order directing the IRS to act in accordance with the CBCA's decision. The CBCA's decision with respect to the termination or reinstatement of the Member on the IRS Free File Website or any other order shall be final and binding and shall not be subject to review. The CBCA shall have the authority to grant motions, including motions to dismiss and motions for summary judgment, in appropriate circumstances. The CBCA shall have no authority to add to or to modify this MOU, except as permitted by joint agreement of the CBCA, IRS and FFI.

## ARTICLE 8
## NO RELATIONSHIP TO FFI OPERATING AGREEMENT

FFI can continue to change and amend the FFI Operating Agreement without regard to this MOU. Notwithstanding the prior sentence, the terms of the FFI Operating Agreement and/or any change in the FFI Operating Agreement have no impact on this MOU unless and until the

MOU is amended in writing by agreement between the IRS and FFI, which agreement can be withheld by the IRS.

## ARTICLE 9
## INTEGRATED AGREEMENTS

The terms of this MOU are final and binding unless and until it is superseded by a signed agreement between the parties. The IRS and FFI agree that this document and all prior original and supplemental signed agreements other than only the current and latest MOU between the IRS and FFI remain in full force and effect unless the language of this MOU is inconsistent with such prior written terms, in which case the terms and language of this MOU shall control.

## ARTICLE 10
## TERMINATION

10.1   Either party may terminate this MOU for cause if the other Party fails to comply with this MOU, and such failure is not cured within thirty days of written notice of such failure from the other party.

10.2   The IRS may terminate this MOU without cause, such termination to be effective 12 months after the date of notice of such termination.

10.3   Should the IRS commit funding to offer Services for free to taxpayers the IRS shall notify FFI immediately. If the IRS gives such notice during the tax season (between January 1 and April 15, or the last day of the filing deadline if that date is changed from April 15) of any year, FFI may, by written notice to IRS, terminate this MOU, effective on April 16 (or, if the filing deadline is changed from April 15, on the day following such new deadline) of that year. If the IRS gives such notice between April 16 (or, if the filing deadline is changed from April 15, on the day following such new deadline) and October 15 of any year, then FFI may, by written notice to IRS other than during a tax season, terminate this Agreement, such termination to be effective no fewer than 30 days after the date of FFI's notice of such termination. If IRS gives such notice between October 15 and December 31, FFI may by written notice immediately terminate this Agreement at any time on or before December 31.

Date: 10-31-18

Kenneth Corbin
Commissioner, Wage and Investment Division
Internal Revenue Service

Date: 10-25-18

Timothy Hugo
Executive Director,
Free File, Inc.

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

Seth Safier, Esq. (SBN 197427)
Gutride Safier LLP, 100 Pine Street, Suite 1250, San Francisco, CA 94111

TELEPHONE NO.: 415-336-6545   FAX NO.: 415-449-6469
ATTORNEY FOR (Name): Plaintiffs

**FILE BY FAX**

FILED
San Francisco County Superior Court

MAY 17 2019

CLERK OF THE COURT
BY: Sandra _____
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: 400 McAllister Street
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME: San Francisco Superior Court

CASE NAME:
Olosoni, et al v. H&R BLOCK, INC

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter   ☐ Joinder | CGC-19-576093 |
| | | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: |
| | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☑ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition (not specified above) (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action (specify): four (4)
5. This case ☑ is ☐ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015)

Date: May 17, 2019
Seth A. Safier, Esq.
(TYPE OR PRINT NAME)                                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov