Darren K. Cottriel (State Bar No. 184731)
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612
Telephone: +1.949.851.3939
Facsimile: +1.949.553.7539
Email: dcottriel@jonesday.com

Christopher R.J. Pace (State Bar No. 202623)
JONES DAY
600 Brickell Avenue, Suite 3300
Miami, FL 33131
Telephone: +1.305.714.9730
Facsimile: +1.305.714.9799
Email: crjpace@jonesday.com

Carol A. Hogan (*pro hac vice*)
JONES DAY
77 West Wacker, Suite 3500
Chicago, IL 60601
Telephone: +1.312.782.3939
Facsimile: +1.312.782.8585
Email: chogan@jonesday.com

Attorneys for Defendants
HRB TAX GROUP, INC.
and HRB DIGITAL LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PELENATITA OLOSONI, and DEREK SNARR, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HRB TAX GROUP, INC. and HRB DIGITAL LLC,<br><br>Defendants. | Case No. 3:19-cv-03610-SK<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE**<br><br>Date: May 18, 2020<br>Time: 9:30 a.m.<br>Courtroom: C, 15th Floor<br>Judge: Hon. Sallie Kim |

| | |
|---|---|
| 1 | **NOTICE OF MOTION** |
| 2 | Please take notice that on May 18, 2020, at 9:30 a.m., or as soon thereafter as the matter |
| 3 | may be heard, before the Honorable Sallie Kim in Courtroom C, located at the San Francisco |
| 4 | Courthouse, 450 Golden Gate Ave., San Francisco, California, HRB Tax Group, Inc. and HRB |
| 5 | Digital LLC ("Defendants") will and hereby do move to strike paragraphs 43 (lines 18-20), 45, |
| 6 | 54-55, 61-67, and 101-102 and all references to "Fake Free Offer," "True Free Offer," "Bait-and- |
| 7 | Switch Program," "Trick[]," and "Hijack" from the First Amended Complaint ("FAC") of |
| 8 | Plaintiffs Pelenatita Olosoni and Derek Snarr ("Plaintiffs") pursuant to Federal Rule of Civil |
| 9 | Procedure ("Rule") 12(f). |
| 10 | This motion is based upon this Notice of Motion and Motion, the Memorandum of Points |
| 11 | and Authorities in support thereof, all other pleadings and papers on file herein, and such other |
| 12 | argument and evidence as may be presented to the Court. |
| 13 | **RELIEF REQUESTED** |
| 14 | Strike paragraphs 43 (lines 18-20), 45, 54-55, 61-67, and 101-102 and all references to |
| 15 | "Fake Free Offer," "True Free Offer," "Bait-and-Switch Program," "Trick[]," and "Hijack" from |
| 16 | Plaintiffs' FAC. |
| 17 | **STATEMENT OF ISSUE TO BE DECIDED** |
| 18 | Whether, pursuant to Rule 12(f), paragraphs 43 (lines 18-20), 45, 54-55, 61-67, and 101- |
| 19 | 102 and all references to "Fake Free Offer," "True Free Offer," "Bait-and-Switch Program," |
| 20 | "Trick[]," and "Hijack" should be stricken from Plaintiffs' FAC. |
| 21 | / / / |
| 22 | / / / |
| 23 | / / / |
| 24 | / / / |
| 25 | / / / |
| 26 | / / / |
| 27 | / / / |
| 28 | / / / |

1

DEFENDANTS' MOTION TO STRIKE
Case No. 3:19-cv-03610-SK

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendants bring this Motion to Strike pursuant to Rules 8(d) and 12(f), which govern what is appropriately included in a pleading and provide for striking any matter that is redundant, immaterial, impertinent, or scandalous from pleadings.

As shown below, Plaintiffs have now clearly defined the parameters (the who, what, when, where, and how) of their fraud claims.[1] Plaintiffs have defined the "when" for Plaintiff Snarr as when he performed a Google search to reach the H&R Block website on April 15, 2019, and for Plaintiff Olosoni as when she actually logged into her account on January 26, 2019. Plaintiffs have defined the "where" of their fraud claims—that is, where the misrepresentations or omissions that form the basis of their claims under California consumer protection statutes occurred—as on the Google results page, the H&R Block website, and the successive screens that Plaintiffs saw thereafter. Having so defined their fraud claims, as required by Rule 9(b), it follows that any allegations in Plaintiffs' FAC relating to Defendants' alleged business practices or conduct that occurred before Plaintiffs' fraud claim began are irrelevant and immaterial to their claims.[2]

In addition to immaterial and irrelevant matters, Plaintiffs' FAC also contains improper, prejudicial, offensive, and scandalous matters, and inflammatory and prejudicial language, that have no place in any complaint and which should be stricken under Rules 8(d) and 12(f).

## II. RELEVANT FACTS

### A. Plaintiffs' FAC

1. Plaintiffs' FAC is 47 pages long and contains 154 separate allegations not including multiple subparts. *See* Dkt. No. 19.

///

---

[1] There is no dispute that all of Plaintiffs' claims sound in fraud and are subject to the heightened pleading standard of Rule 9(b).

[2] Defendants understand the importance and utility of a certain amount of background, but also remind the Court that Plaintiffs' FAC consists of 154 separate allegations (not counting voluminous subparts) and that this Motion seeks to strike just a handful of allegations.

2

**B. Plaintiffs' Admissions Regarding Their Claims and Allegations in the FAC**

2. Defendants moved to dismiss Plaintiffs' FAC on December 12, 2019. Dkt. No. 62. One of the bases for that Motion to Dismiss was Plaintiffs' failure to plead their claims brought under the California consumer protection statutes with the specificity required by Rule 9(b)—that is, to plead with specificity the who, what, when, where, and how of their fraud claims.

3. Plaintiffs filed their Opposition to that Motion to Dismiss on January 15, 2020. Dkt. No. 69. In an effort to convince this Court that they had pled their claims with specificity, Plaintiffs' Opposition stated:

> The "who" are Defendants. **The "when" is January 26, 2019 for Olosoni and April 15, 2019 for Snarr. (Citations omitted). The "where" consists of the landing pages within Defendants' website by which Plaintiffs accessed Defendants' online tax preparation service and the windows' (successive screens) comprising that online filing service. (Citation omitted). For Snarr, the "where" also includes the Google search results page he viewed just before linking to Defendants' website.** (Emphasis added).
>
> The "what" includes Defendants' representations to Plaintiffs that they were not eligible for Defendants' free filing service and "need[ed]" to pay to file their taxes using Defendants' online services, and Defendants' corresponding omissions (failing to disclose that Plaintiffs were eligible for Defendants' True Free File Service and they did <u>not</u> need to pay Defendants to have Defendants prepare and file their tax returns), and the resulting sales of Defendants' paid tax preparation services to Plaintiffs on the above identified dates.

*See* Dkt. No. 69, pp. 16-17.

4. In defining the specific parameters of their fraud claims, Plaintiffs further admitted that facts about things Defendants allegedly said or did not say before Plaintiff Olosoni logged into her account, or Plaintiff Snarr conducted his Google search and reached the H&R Block website, were irrelevant to their fraud claims. *Id.* at p. 6, lines 18-20; p. 18, lines 12-18.

**C. Plaintiffs' FAC Contains Prejudicial, Scandalous, Impertinent and Immaterial Allegations Unrelated to Their Fraud Claims**

5. The FAC contains 81 paragraphs before making a single allegation about what occurred between either of the named Plaintiffs and Defendants.

3

6. Among those first 81 paragraphs of the FAC are allegations such as:

> As explained in more detail below, among other things: (a) Defendants pay to broadly advertise their Bait-and-Switch Program on multiple platforms, in ways designed to deceive, mislead and confuse consumers about the nature and cost of Defendants' tax services and to effectively supplant Defendants' True Free File Service.
>
> […]
>
> Defendants have paid for extensive ad campaigns on television, radio, internet and social media for Defendants' Bait-and-Switch Program.

See Dkt. No. 19, ¶ 43, lines 17-20, and ¶ 44.[3]

7. Paragraphs 61-62 of the FAC contain allegations regarding Defendants' alleged instructions to customer service staff to "push people away from its free offering," *id.* at ¶ 62:

> H&R Block explicitly instructs its customer service staff to push people away from its free offering. In written internal guidance regarding the Free File Program, H&R Block instructs its employees as follows: "Do not send clients to this Web site unless they are specifically calling about the Free File Program. We want to send users to our paid products before the free product, if at all possible." (Citation to ProPublica Article from May 2019).

See *id.* at ¶¶ 61-62.

8. Paragraphs 63-64 of the FAC contain allegations discussing Defendants' alleged affiliate marketing programs for tax preparation services with third-party publishers of blogs and other websites. See Dkt. No. 19, ¶¶ 63-65.

> 63. In addition, Defendants run affiliate marketing programs or campaigns for third-party publishers of blogs and other websites. Such affiliate marketing programs encourage such publishers to promote Defendants' tax services on their website and provide links to Defendants' web pages where consumers can sign up for Defendants services. In exchange, the publishers earn a commission when such consumers use Defendants' services, particularly Defendants Paid HRB products. Through such affiliate marketing programs, Defendants provide financial incentives for third-party

---

[3] Defendants object and also move to strike herein the inflammatory, scandalous, and improper terminology of Plaintiffs' FAC, including the terms "Bait-and-Switch" and "True Free File." *See infra,* at pp. 9-10.

publishers to direct consumers to Defendants' Bait-and-Switch Program.

> 64. In the affiliate marketing program, the tax payer typically takes a slight detour by clicking on an article or web page published by the affiliate publisher. That article or web page (perhaps in the guise of providing a review, a recommendation, or some other information) refers to H&R Block services, may actively promote H&R Block services, and provide the link to Defendants' website. The affiliate then collects the commission for transactions in which that consumer engages while on Defendants' website.

*Id.* at ¶¶ 63-64; *see also id.* at ¶ 65.

9. Paragraphs 101-102 of the FAC contain allegations regarding Defendants' alleged lobbying activities:

> 101. To protect these illicit and inequitable profits and to maintain space in which to conduct their deceptive and unfair practices with respect to taxpayers who are entitled to free tax preparation services, Defendants have spent millions of dollars lobbying to make sure that the IRS is legally prohibited from offering their own tax preparation and filing service, which would make tax filing easy and free for most taxpayers and thereby substantially reduce Defendants' profits from their paid HRB Tax Programs.
>
> 102. Defendants' investment of money in such lobbying efforts shows a determination to minimize the number of people who actually file tax returns for free, and intend to continue to profit from taxpayers who should be filing for free, and thus an intent to undermine the IRS free file program.

*See id.* at ¶¶ 101-102. Defendants hereinafter refer to paragraphs 43 (lines 18-20), 45, 54-55, 61-67, and 101-102 as the "Immaterial Allegations."

### III. LEGAL STANDARD

Rule 8(d) provides that "each allegation must be simple, concise and direct." Fed. R. Civ. P. 8(d); s*ee McHenry v. Renne*, 84 F.3d 1172, 1177-80 (9th Cir. 1996) (affirming violation of Rule 8 where pleading was "argumentative, prolix, replete with redundancy, and largely irrelevant"); *Harnden v. California*, 2010 WL 3489379, *1 (N.D. Cal. Sept. 2, 2010) (noting that plaintiff's initial complaint violated Rule 8 due to its "highly inflammatory" nature). Rule 12(f) permits the Court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

A matter is immaterial if it "has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Forgerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *reversed on other grounds*, 510 U.S. 517 (1994) (citation omitted). A matter is "impertinent" if it consists of statements that do not pertain to and are not necessary to the issues in question. *Id*. A matter is "scandalous" if it "improperly casts a derogatory light on someone, most typically on a party to the action." *Cortina v. Goya Foods Inc.*, 94 F. Supp. 3d 1174, 1182 (S.D. Cal. 2015).

The function of a Rule 12(f) motion to strike is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy*, 984 F.2d at 1527 (citation omitted). California courts routinely hold that it is appropriate to strike allegations under Rule 12(f) if it will make trial less complicated or eliminate serious risk of prejudice to the moving party, delay, or confusion of the issues. *Id.* at 1527-28; *Sliger v. Prospect Mortg., LLC*, 789 F. Supp. 2d 1212, 1216 (E.D. Cal. 2011); *Nguyen v. CTS Elec. Mfg. Sols. Inc.*, 301 F.R.D. 337, 343 (N.D. Cal. 2014) ("The possibility that issues will be unnecessarily complicated is the type of prejudice that is sufficient to support the granting of a motion to strike.").

What's more, the claims brought by Plaintiffs under the California consumer protection statutes require reliance as an inherent and undisputed element of each claim. Courts have routinely granted motions to strike allegations contained in complaints brought under those same consumer protection statutes that are not tethered to or connected in any way to something a named plaintiff saw or relied on. For example, in *Victor v. R.C. Bigelow Inc.*, 2014 WL 1028881, at *7 (N.D. Cal. Mar. 14 2014), the court found that while the plaintiff had alleged that he actually read the labels on the products themselves, he conceded he had never seen certain statements on the defendants' website. Thus, the *Bigelow* court ruled that to the extent the plaintiff's claims were premised upon alleged website misrepresentations, they were stricken. *Id*. Likewise in *Lanovaz v. Twinings N. Am., Inc.*, 2013 WL 675929, at *4 (N.D. Cal. Feb. 25, 2013), the court struck allegations contained in the plaintiff's complaint regarding misinformation

///

6

contained on the defendant's website because the plaintiff had not alleged with specificity that she had purchased any particular product based on those website misrepresentations.

## IV.   ARGUMENT

Plaintiffs have now defined for this Court the specific parameters of their fraud claims. They have told the Court when they encountered Defendants' alleged misrepresentations and omissions (January 26, 2019, for Plaintiff Olosoni, and April 15, 2019, for Plaintiff Snarr), where they encountered those misrepresentations and omissions (the H&R Block website and successive screens Plaintiffs allegedly viewed for online tax preparation, as well as the Google search results for Plaintiff Snarr), and what those misrepresentations and omissions were. Plaintiffs do not and cannot dispute that a critical element of each of their causes of action brought under the California consumer protection statutes is to show reliance upon either a material misstatement or omission. Thus, to the extent the FAC contains generalized complaints about Defendants' alleged business practices generally, that have no connection whatsoever to anything the Plaintiffs ever saw, relied on, or experienced, those allegations are per se immaterial, irrelevant, and unnecessary. Plaintiffs' FAC is chock-full of such allegations, which they themselves now admit do not, and cannot, be necessary, or relate in any way, to their purported claims.

### A.   Paragraph 43 (Lines 18-20), 45, 54-55, 61-67, and 101-102 Should All Be Stricken as Irrelevant, Immaterial, Impertinent, and Unnecessary to Plaintiffs' Claims

Based on Plaintiffs' own admissions about the extent and scope of their fraud claims—that they encountered Defendants' alleged misrepresentations and omissions in Google search results, on the H&R Block website, and/or in successive screens in the online tax preparation process—it is undeniably true that any alleged conduct or statements by Defendants through television, radio, social media, or internet advertising (with the exception of Google search results purportedly relevant to Plaintiff Snarr) are utterly irrelevant to Plaintiffs' fraud claim here. *See* Dkt. No. 19, ¶ 43, lines 17-20, ¶ 45.

/ / /

/ / /

The same is true with respect to Plaintiffs' generalized allegations regarding Defendants' alleged used of third-party and affiliate marketing. *Id.* at ¶¶ 63-65. There is not a single allegation in the FAC that connects either of the named Plaintiffs to having seen or read any such marketing. Indeed, Plaintiff Olosoni claims she came directly to the H&R Block website and logged in, while Plaintiff Snarr claims he conducted a Google search and clicked on a link for the H&R Block website. *Id.* at ¶¶ 86, 92-93. Thus, it is undeniably true that Plaintiffs' allegations regarding third-party and affiliate marketing have no connection whatsoever to their specific claims.

Likewise, there is no connection between Plaintiffs' claims and their allegations that H&R Block customer service agents were instructed to push people into paid products. *Id*. at ¶¶ 61-62. Neither Plaintiff alleges that any customer service agent ever made any misrepresentations to them, let alone pushed them into paid products.

And finally, it is undeniably true that Plaintiffs' assertions regarding lobbying, a constitutionally protected legislative activity, also play no role whatsoever in this case and have no connection, real or imagined, to Plaintiffs' alleged experience with H&R Block online tax preparation services. There is no allegation in the FAC that tethers these incendiary allegations about constitutionally protected activities to anything that occurred with either of the named Plaintiffs in reaching the H&R Block website and using H&R Block online tax preparation services. *Id.* at ¶¶ 101-102.

While Defendants are sensitive to the fact that granting motions to strike allegations are generally disfavored, the law is well-settled that when it is clear that the matter sought to be stricken has no bearing on the issues in the litigation, the motion to strike must be granted. This case is unique, akin to *Bigelow and Lanovaz*, in that Plaintiffs' own admissions establish undeniably that the Immaterial Allegations that Defendants seek to strike here fall into that category. That is, Plaintiffs themselves have conceded that the Immaterial Allegations that are the subject of this Motion are irrelevant, immaterial, and unnecessary to their claims. That is all this Court needs to grant Defendants' Motion to Strike those allegations.

///

Moreover, although not necessary for the relief they seek, striking the Immaterial Allegations would also reduce confusion in this case and avoid the clear prejudice that will inure to Defendants if they are required to defend against allegations that have no relevance whatsoever to Plaintiffs' claims.

**B.  Paragraphs 61-62 and 101-102 Should Be Stricken For The Additional Reason That They Are Scandalous And Serve No Purpose Other Than To Cast Defendants In A Bad Light**

Paragraphs 61-62 and 101-102, which deal with Defendants' (1) alleged instructions to its customer service representatives, (2) alleged use of third-party and affiliate marketing programs, and (3) alleged lobbying activities, are not only irrelevant to the claims brought by the named Plaintiffs, but are undeniably generalized complaints about Defendants' alleged business practices that exist purely to cast Defendants in a negative light generally.

As noted above, these are exactly the kind of untethered, prejudicial, and scandalous allegations that courts routinely strike from complaints, particularly in cases where plaintiffs have acknowledged that the allegations have no relevance whatsoever to their specific fraud claims.

**C.  All References In Plaintiffs' FAC To "Fake Free Offer," "True Free Offer," Or "Bait-And-Switch Program" Or To Defendants' "Trick[ing]" Or "Hijack[ing]" Consumers Should Be Stricken As Impertinent, Scandalous, And Improper**

Plaintiffs' entire FAC is drafted in an argumentative tone in violation of Rules 8 and 12(f). In particular, Plaintiffs created highly inflammatory, derogatory, and offensive definitions for H&R Block tax preparation services and business practices and then utilized those offensive and prejudicial terms throughout the FAC. Among the most inflammatory of those terms are the terms "Fake Free Offer," which Plaintiffs use to define the H&R Block online tax preparation service known as H&R Block Free Online. Plaintiffs also use the term "True Free Offer" to refer to the IRS Free File program delivered by H&R Block. Plaintiffs' FAC repeatedly refers to Defendants' alleged "Bait-and-Switch Program," which is a defined term that is put into quotations in paragraph 5 of the FAC. That term, on its face, is highly inflammatory and

9

improper. These three prejudicial and offensive terms are then utilized repeatedly over and over again by Plaintiffs, infecting nearly every allegation of the FAC. In addition, peppered throughout Plaintiffs' FAC are references to Defendants "trick[ing]" or "hijack[ing]" taxpayers through their alleged business practices. *See* Dkt. No. 19, ¶¶ 51, 79; *see also* titles throughout FAC at p. 11, lines 3-4, and p. 21, lines 1-2. Such terms have no place in a pleading under Rule 8(d). These terms and the general tenor of the FAC, which reads like a highly prejudicial closing argument, add nothing of factual value or substance to Plaintiffs' claims, but rather are clearly included in the FAC for dramatic affect and solely to cast Defendants in a bad light. These are exactly the kinds of allegations that Rule 8(d) prohibits and 12(f) mandates must be stricken from a complaint. In fact, the entire reason for Rule 8(d) and 12(f) existing is to advise courts on what is properly contained in a complaint and what is not. Plaintiffs' FAC, with its use of these highly inflammatory terms, is exactly the kind of complaint that Rule 12(f) was written to prohibit.

As such, Defendants respectfully request that the Court also strike from Plaintiffs' FAC any references to the terms "Fake Free Offer," "True Free Offer," or "Bait-and-Switch Program," or to Defendants "trick[ing]" or "hijack[ing]" taxpayers through their alleged business practices.

## V.     CONCLUSION

Wherefore, Defendants respectfully request that this Court strike from Plaintiffs' FAC the following:

- Paragraphs 43 (lines 18-20), 45, 54-55, 61-67 and 101-102,
- All references to "Fake Free Offer," "True Free Offer," "Bait-and-Switch Program," "Trick[]" or "Hijack,"

and for all other relief this Court deems just and proper.

Dated: April 7, 2020                                Respectfully submitted,

                                                    JONES DAY


                                                    By:  /s/ Darren K. Cottriel
                                                         Darren K. Cottriel

                                                    Attorneys for Defendants
                                                    HRB TAX GROUP, INC.
                                                    and HRB DIGITAL LLC

10

DEFENDANTS' MOTION TO STRIKE
Case No. 3:19-cv-03610-SK