1

2

3                   UNITED STATES DISTRICT COURT

4                   NORTHERN DISTRICT OF CALIFORNIA

5

6     DEREK SNARR,                                Case No.  19-cv-03610-SK

7                    Plaintiff,
                                                  **ORDER GRANTING MOTION TO**
8           v.                                    **DISMISS**

9     HRB TAX GROUP, INC., et al.,
                                                  Regarding Docket No. 130
10                   Defendants.

11          On March 29, 2021, Defendants HRB Tax Group, Inc. and HRB Digital LLC

12   ("Defendants") moved to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(1), the First

13   Amended Complaint filed by Plaintiff Derek Snarr ("Plaintiff"). (Dkt. 130.)  Having reviewed the

14   submissions of the parties, the relevant legal authorities, and the record in the case, and having had

15   the benefit of oral argument, the Court HEREBY GRANTS Defendants' motion to dismiss for the

16   reasons set forth below.

17                              **BACKGROUND**

18   **A.     Procedural History.**

19          Plaintiff filed his original complaint in San Francisco County Superior Court on May 17,

20   2019.  (Dkt. 1-1.)[1]  On June 21, 2019, Defendants removed the action to this Court.  (Dkt. 1.)  On

21   August 9, 2019, Plaintiff filed his First Amended Complaint.  (Dkt. 19.)  Shortly thereafter,

22   Defendants simultaneously moved to compel arbitration and to stay the litigation based on the

23   primary jurisdiction doctrine.  (Dkts. 27, 28.)  Plaintiff opposed both motions.  (Dkts. 32, 31.)

24   Plaintiff also moved to appoint Gutride Safier LLP ("Gutride") as interim lead counsel and

25   submitted a request for judicial notice of a relevant second-filed class action complaint pending in

26

27          [1]  Plaintiff's complaint sets forth facts in support of a purported class action suit.  Plaintiff
     originally brought suit with named Plaintiff Pelanatita Olosoni; however, the parties stipulated to
28   dismiss Olosoni's claims, which was effective July 21, 2020.  (Dkt. 107.)  The Court therefore
     refers to Plaintiff Snarr in the singular.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    the Western District of Missouri.  (Dkts. 26, 40.)  Defendants opposed the motion to appoint

2    interim lead counsel.  (Dkt. 29.)  In an order dated November 5, 2019, the Court took judicial

3    notice of the second filed action, denied the motion to compel arbitration, denied the motion to

4    stay based on primary jurisdiction doctrine, and granted the motion to appoint interim lead counsel

5    ("First Order Denying Arbitration").  (Dkt. 51.)

6            While the Court's decision on those motions was still pending, Defendants filed a motion

7    to transfer venue to the Western District of Missouri.  (Dkt. 43.)  After briefing and oral argument,

8    the Court denied the motion to transfer venue.  (Dkt. 57.)  Defendants appealed the Court's First

9    Order Denying Arbitration.  (Dkt. 58.)  Defendants then moved to stay pending their appeal.  (Dkt.

10   60.)  Defendants also moved to dismiss the action pursuant to Federal Rule of Civil Procedure

11   12(b)(1) and 12(b)(6).  (Dkt. 62.)  After briefing and oral argument, the Court denied both the

12   motion to stay pending appeal and the motion to dismiss on March 24, 2020.  (Dkt. 85.)  On April

13   7, 2020, Defendants moved to strike several allegations and terms from the First Amended

14   Complaint under Federal Rule of Civil Procedure 12(f).  (Dkt. 86.)  Plaintiff opposed the motion

15   (Dkt. 88), and the Court issued an order denying the motion to strike on May 28, 2020 (Dkt. 96).

16           With Defendants' appeal of the Court's First Order Denying Arbitration still pending, the

17   parties continued with discovery, and the Court entered orders pertaining to case scheduling,

18   discovery, and a protective order.  (Dkts. 104, 109, 111.)  On December 10, 2020, the Court of

19   Appeals for the Ninth Circuit issued its Memorandum regarding Defendants' appeal of the Court's

20   First Order Denying Arbitration.  (Dkt. 112.)  The Ninth Circuit affirmed the Court's First Order

21   Denying Arbitration.  (*Id.*)  In so doing, the Ninth Circuit noted that Defendants raised the

22   argument for the first time on appeal that they had voluntarily ceased participation in the Free File

23   Program, rendering Plaintiff's request for public injunctive relief moot.  (*Id.*)  The Ninth Circuit

24   observed that "voluntary cessation is fact-intensive," and the record presented no facts on

25   cessation; therefore, the court declined to address the issue.  (*Id.*)  The Ninth Circuit further noted

26   that "some part of the public injunction sought by Snarr may still be available even without HRD

27   offering an IRS-affiliated service, based on the complaint's allegations that HRB's advertising of

28   its own tax services includes false and misleading statements in violation of the three statutes;"

1    accordingly, the court did "not preclude HRB from presenting this argument to the district court in

2    the first instance." (*Id.*)  This Court received the Ninth Circuit's Mandate on January 4, 2021.

3    (Dkt. 114.)

4        The parties continued with discovery until Defendants brought a Renewed Motion to

5    Compel Arbitration ("Renewed Motion to Compel") on February 22, 2021.  (Dkt. 120.)  Plaintiff

6    opposed the Renewed Motion to Compel and cross-moved for corrective action and injunctive

7    relief.  (Dkt. 123.)  Defendants opposed the cross-motion.  (Dkt. 129.)  On the same date,

8    Defendants moved to dismiss the action for lack of subject matter jurisdiction pursuant to Federal

9    Rule of Civil Procedure 12(b)(1).  (Dkt. 130.)  The Court heard oral argument on the Renewed

10   Motion to Compel on April 19, 2021.  (Dkt. 137.)  On May 13, 2021, the Court denied the

11   Renewed Motion to Compel and granted the cross-motion for corrective action.  (Dkt. 140.)

12       The Court heard oral argument on this motion to dismiss on June 21, 2021.  (Dkt. 155.)

13   **B.    Factual Background.**

14       In his First Amended Complaint, Plaintiff alleges that Defendants violated several

15   California statutes by creating a "bait and switch" program to lure customers into paying for

16   Defendants' services to file tax returns.  (Dkt. 19.)  This case arises out of an attempt by the

17   Internal Revenue Service ("IRS") to encourage taxpayers to file their tax returns electronically.

18   Rather than developing its own system, the IRS engaged with private, for-profit companies to

19   develop online tax services and to make them available for free to certain taxpayers.[2]  (Dkt. 19 at ¶

20   3.)  The resulting program is commonly referred to as the "Free File" program.  (*Id.* at ¶ 4.)

21   Several companies formed the Free File Alliance, LLC and later Free File, Inc. ("FFI") to offer

22   those online tax services, and Defendants are currently part of FFI.  (*Id.* at ¶¶ 31, 32.)  The IRS

23   and FFI entered into agreements regarding the services, and the most recent version is the Eighth

24   Memorandum of Understanding on Service Standards and Disputes Between the Internal Revenue

25   Service and Free File, Incorporated ("MOU").  (Dkt. 19 at Ex. 2.)  That MOU became effective

26   October 31, 2018, and terminates on October 31, 2021.  (*Id.*)

27

28   _____
     [2]  Generally speaking, the Free File program is for taxpayers with adjusted gross income
     of $66,000 or less.  (Dkt. 19 ¶ 3.)

United States District Court
Northern District of California

1    The MOU provides specific guidelines for FFI members' processing services, including

2    requirements related to number of taxpayers, security measures, continuity of service, and dispute

3    resolution. (*Id*.)  The MOU provides that FFI's members "must clearly list their free customer

4    service options" on the "Free File Landing Page (or such page must have a clear and prominent

5    link to such disclosures directly from this page)." (*Id*. § 4.15.4.)  However, other than that

6    provision in Section 4.15.5, the MOU is largely silent on the specific manner in which FFI's

7    members are required to present the Free File program on their websites.  Section 4.4 of the MOU

8    simply requires that the websites "be functionally adequate in permitting a taxpayer to complete

9    taxpayer's return if the return is consistent with the Member's free offer" and states that the IRS

10   will review member websites for "usability." (*Id*. § 4.4.)  The MOU also contains a provision that

11   calls for an annual review of the Free File program and provides the IRS with the unilateral ability

12   to propose additional standards.  (*Id*.)

13   Plaintiff alleges that Defendants advertised widely the availability of the Free File program

14   but then used a variety of methods to divert potential customers into Defendants' own programs,

15   which charged a fee. (Dkt. 19 at ¶¶ 41-81.)  The manner by which Defendants allegedly diverted

16   taxpayers into Defendants' system, which required payment, is based on the way in which a

17   taxpayer viewed Defendants' website and then interacted with the website.  (*Id.* at ¶¶ 53-57.)  For

18   example, Plaintiff alleges that "Defendants purposely made it difficult to find" the free part of the

19   system "by placing a 'noindex' tag on the webpage for the free part of the system, with the result

20   that the search engines did not go to that page but instead to Defendants' system which required

21   payment of fees." (*Id.* at ¶ 46.)  Defendants also allegedly created a webpage that "is designed to

22   capture taxpayers seeking free e-filing services" and then essentially hid the free part of the

23   system.  (*Id.* at ¶¶ 53-59.)  Plaintiff refers to Defendants' actions as a classic "bait and switch"

24   maneuver.  (*Id.* at ¶ 5.)

25   Plaintiff brings statutory claims for violation of the Consumers Legal Remedies Act, Cal.

26   Civ. Code § 1750 *et seq.* ("CLRA"); violation of the False Advertising Law, Cal. Bus. & Prof.

27   Code § 17500 *et seq.* ("FAL"); and violation of the Unfair Competition Law, Cal. Bus. & Prof.

28   Code § 17200 *et seq.* ("UCL"). (Dkt. 19.)  Plaintiff proposes to represent the following class of

United States District Court
Northern District of California

4

1    plaintiffs:

2            All persons who, between May 17, 2015 and the present, paid to file
3            one or more federal tax returns through Defendants' internet-based
         filing system even though they were eligible to file those tax returns
4            for free through Defendants' True Free File Service,[3] and who
         resided in and were citizens of California at the time of the
5            payments[.]

6    (Dkt. 19 at ¶ 110.)  Plaintiff seeks a public injunction to prevent Defendants from engaging in

7    fraudulent business practices and false advertising, compensatory damages and/or restitution for

8    taxpayers who paid Defendants, and attorneys' fees.  (*Id.* at pp. 43-46.)  As to each claim, Plaintiff

9    on behalf of himself, "the Classes, and the general public" requests the entry of "a public

10   injunction temporarily and permanently enjoining Defendants from continuing the unlawful,

11   deceptive, fraudulent, and unfair business practices alleged in this Complaint" related to the

12   marketing and offering of allegedly "free" tax preparation services.  (*Id.* at p. 43.)

13           Defendants argued for the first time on appeal that they had voluntarily ended their

14   participation in the Free File program.  (Dkt. 112, p. 6.)

15   **C.      Motion to Dismiss.**

16           Defendants now move to dismiss Plaintiff's First Amended Complaint pursuant to Federal

17   Rule of Civil Procedure 12(b)(1).  (Dkt. 130.)  Defendants argue that Plaintiff's request for a

18   public injunction is now moot because Defendants have stopped participating in the IRS Free File

19   Program.  (*Id.*)  Defendants further argue that, although there is an exception to mootness when

20   defendants voluntarily cease allegedly wrongful behavior, that exception does not apply in this

21   case because there is no risk that Defendants will resume the allegedly wrongful behavior.  (*Id.*)

22           Plaintiff opposes the motion to dismiss, countering that the First Amended Complaint

23   alleges broad claims for deception regarding the nature and scope of the purportedly free services

24   Defendants offer.  (Dkt. 143.)  Plaintiff argues that Defendants' website remains misleading even

25   after their voluntary cessation of participation in the Free File Program because of its confusing

26

27           [3] Plaintiff refers to the actual system for filing tax returns without a fee as the "True Free
28   File" system and Defendants' system with a fee as the "Fake Free File" system.  (Dkt. 19, ¶¶ 53-
     59.)

United States District Court
Northern District of California

United States District Court
Northern District of California

1    marketing of "free" e-filing services.  (*Id.*)  Plaintiff remains eligible for the actual Free File

2    Program, so he argues that Defendants' marketing materials still pose the risk of misleading

3    consumers eligible to file somewhere, albeit no longer through Defendants, for free using the IRS

4    Free File Program.  Further, Plaintiff contends that Defendants can easily rejoin the Free File

5    Program, such that their voluntary cessation of participation falls into the exception to mootness.

6    (*Id.*)  Plaintiff maintains that the Court can still provide effective public injunctive relief in this

7    case.  (*Id.*)

8                                        **DISCUSSION**

9    **A.     Legal Standards.**

10           "A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) tests whether

11   the court has subject matter jurisdiction" under Article III of the Constitution.  *Williams v. Apple,*

12   *Inc.*, 449 F. Supp. 3d 892, 900 (N.D. Cal. 2020) (citing *Nw. Requirements Utilities v. FERC*, 798

13   F.3d 796, 808 (9th Cir. 2015)).  A party challenging jurisdiction under Rule 12(b)(1) may bring

14   either a factual or a facial attack.  "In a facial attack, the challenger asserts that the allegations

15   contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast,

16   in a factual attack, the challenger disputes the truth of allegations that, by themselves, would

17   otherwise invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th

18   Cir. 2004).  In resolving a factual attack, the court "need not presume the truthfulness of the

19   plaintiff's allegations" and may look to "evidence beyond the complaint without converting the

20   motion to dismiss into a motion for summary judgment."  *Id.*  After a defendant has moved to

21   dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the burden shifts to the plaintiff

22   to establish the court's jurisdiction.  *Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115,

23   1122 (9th Cir. 2010).

24           A challenge based on mootness is appropriately raised in a motion to dismiss brought

25   pursuant to Federal Rule of Civil Procedure 12(b)(1) because it pertains to subject-matter

26   jurisdiction under Article III.  *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  Article III

27   of the United States Constitution limits the jurisdiction of federal courts to "Cases" and

28   "Controversies."  U.S. Const. art. III, § 2, cl. 1.  The "irreducible constitutional minimum of

United States District Court
Northern District of California

1    [Article III] standing contains three elements:" (1) an injury in fact (2) that is fairly traceable to the

2    challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial

3    decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The doctrine of mootness

4    is "embedded in Article III's case or controversy requirement" and dictates "that an actual,

5    ongoing controversy exist at all stages of federal court proceedings." *Pitts v. Terrible Herbst, Inc.*,

6    653 F.3d 1081, 1086 (9th Cir. 2011) (citing *Burke v. Barnes*, 479 U.S. 361, 363 (1987)).

7    "Because the power of a federal court to decide the merits of a claim ordinarily evaporates

8    whenever a prerequisite to standing disappears, the doctrine of mootness has been described as

9    'the doctrine of standing set in a time frame.'" *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853,

10   861-62 (9th Cir. 2017) (quoting *Native Village of Noatak v. Blatchford*, 38 F.3d 1505, 1509 (9th

11   Cir. 1994)). "The basic question in determining mootness is whether there is a present

12   controversy as to which effective relief can be granted." *Ruiz v. City of Santa Maria*, 160 F.3d

13   543, 549 (9th Cir. 1998) (quoting *Nw. Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir.

14   1988)).

15        The party asserting mootness must carry the heavy burden of establishing that the court

16   can provide no effective relief. *Bayer*, 861 F.3d at 862. An action is moot "only when it is

17   impossible for a court to grant any effectual relief whatever to the prevailing party." *Id.* (quoting

18   *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)). *Id.* (citations omitted).

19        An exception to mootness arises in the form of the voluntary cessation doctrine. The

20   voluntary cessation doctrine provides that a defendant cannot automatically moot a case by

21   ceasing the conduct the case challenges, only to resume such conduct after obtaining a dismissal

22   on mootness grounds. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). "[A] defendant

23   claiming that its voluntary compliance moots a case bears the formidable burden of showing that it

24   is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."

25   *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 190

26   (2000). The party alleging mootness must submit evidence showing that the change in its

27   behavior is "entrenched" or "permanent." *Fikre v. Fed. Bureau of Investigation*, 904 F.3d 1033,

28   1037 (9th Cir. 2018). A change in conduct is not considered entrenched or permanent when a

1    defendant is free to return to the original challenged conduct at any time.  *See F.T.C. v. Affordable*

2    *Media*, 179 F.3d 1228, 1238 (9th Cir. 1999); *EEOC v. Fed. Express Corp.*, 558 F.3d 842, 847 (9th

3    Cir. 2009).

4    **B.      Analysis.**

5            The Court can no longer provide effective relief in this case because the allegedly wrongful

6    behavior that is the subject of the request for public injunctive relief has ceased and cannot

7    reasonably be expected to recur.  On June 11, 2020, Defendants provided notice to the IRS that

8    they were terminating membership in the Free File Program.  (Dkt. 120-1 (Watts Dec. ¶ 11).)

9    Defendants publicly announced the termination on June 16, 2020.  (*Id.* ¶ 12.)  On October 31,

10   2020, Defendants' membership in the Free File Program terminated, and their participation in the

11   program ceased.  (*Id.* ¶ 13.)  Defendants have no intention of seeking readmission to the Free File

12   Program or participating in the Free File Program in the future.  (*Id.* ¶ 14.)  In order to resume

13   participation in the Free File Program, Defendants would be required to petition the IRS to reapply

14   for admission into the Free File Program.  (*Id.*)  As Plaintiff himself points out, the Eighth MOU

15   governs readmission, and Defendants would be required to satisfy a series of requirements to gain

16   readmission.  (Dkt. 143.)

17          Defendants' withdrawal from the Free File Program mooted Plaintiff's entire request for

18   public injunctive relief.  Defendants' withdrawal from the Free File Program is entrenched

19   because they cannot simply resume the conduct of which Plaintiff complains; rather, they would

20   have to undergo an application process governed by the MOU, discussed *supra*, and receive the

21   permission of the IRS to return to participation in the Free File Program.  Thus, the voluntary

22   cessation doctrine to mootness does not apply.

23          Plaintiff argues that the dispute is not moot because Defendants continue to market other

24   "free" services of their own, outside the formal Free File Program with the IRS, and that

25   Defendants intend to use the same scheme of enticing consumers with allegedly free services and

26   then switching them to paid services.  (Dkt. 143.)  However, Plaintiff's claim for public injunctive

27   relief as expressed in the First Amended Complaint seeks relief from the confusion that

28   Defendants created between the Free File Program with the IRS and Defendants' own paid

United States District Court
Northern District of California

8

1    programs.  (Dkt. 19, ¶¶ 5, 110.)  Although Plaintiff discusses in the Opposition other programs

2    that Defendants misleadingly label as free, the First Amended Complaint does not mention

3    Plaintiff's other "free file" programs.  (*Compare* Dkt. 143 at pp. 5-7 *with* Dkt. 19.)  Plaintiff

4    alleged in the First Amended Complaint that Defendants were operating a "bait and switch"

5    program in which they lured consumers to their website with the promise that consumers were

6    eligible for the Free File Program with the IRS but then funneled those consumers into

7    Defendants' own internal service, which consumers belatedly found out was not in fact free.  (Dkt.

8    19.)  The First Amended Complaint defines "Defendants' True Free File Service" or "H&R Block

9    Free File" service as the IRS program (Dkt. 19, ¶ 4), and the First Amended Complaint addresses

10   only the "bait and switch" scheme from that specific program to Defendants' paid services.  The

11   First Amended Complaint makes clear that the "bait" is the IRS program (as specifically defined

12   in ¶ 4), and there is no mention of any other "bait" in the form of a free file program separate from

13   the IRS program.

14        Absent Defendants' participation in the Free File Program with the IRS, Defendants no

15   longer have the "bait" that forms the basis for the "bait and switch" that is the subject of Plaintiff's

16   First Amended Complaint.  Defendants can no longer advertise their participation in the actual

17   Free File Program with the IRS to divert consumers toward their own commercial products.

18        To the extent that Defendants now market other "free" services in a misleading way,

19   another lawsuit against them may be possible.  But the case currently before the Court is moot.

## CONCLUSION

21        For the reasons set forth above, the Court GRANTS Defendant's motion to dismiss the

22   First Amended Complaint in its entirety.

23        **IT IS SO ORDERED**.

24   Dated: August 24, 2021

25   _____

     SALLIE KIM
26   United States Magistrate Judge

27

28

9

*United States District Court*
*Northern District of California*