1

**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)

2
100 Pine Street, Suite 1250
San Francisco, CA 94111

3
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

4

5
Stephen M. Raab (appearing *pro hac vice*)
stephen@gutridesafier.com

6
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (415) 639-9090 x109

7

*Interim Class Counsel*

8

9
UNITED STATES DISTRICT COURT

10
NORTHERN DISTRICT OF CALIFORNIA

11
SAN FRANCISCO DIVISION

12
DEREK SNARR, on behalf of himself, the
general public, and those similarly situated,

13

CASE NO.  3:19-cv-03610-SK

14
Plaintiff,

**NOTICE OF MOTION AND MOTION
FOR ATTORNEYS' FEES UNDER A
CATALYST THEORY; MEMORANDUM
OF POINTS AND AUTHORITIES**

15

16
vs.

MOTION HEARING
DATE:         October 18, 2021

17
TIME:         9:30 a.m.
LOCATION:  COURTROOM C,

18
HRB TAX GROUP, INC. and HRB
DIGITAL LLC,
                          15th FLOOR

19

20
Defendants.

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 18, 2021 at 9:30 a.m., or as soon thereafter as the parties may be heard, in Courtroom 15 of the above entitled court, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiff Derek Snarr will and hereby does move the Court for an order of an award of attorneys' fees.

This Motion is made pursuant to California Code of Civil Procedure § 1021.5. Plaintiff seeks an award of attorneys' fees of $2,610,932.50.

This Motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the Declarations of Seth A. Safier ("Safier Decl.") filed in support of this motion and supporting evidence; the pleadings and papers on file in this action; any argument which may be presented at the time of the hearing; and any other matter of which this Court may take notice.

Dated: September 7, 2021                          Respectfully submitted,

                                                                 **GUTRIDE SAFIER LLP**

                                                                 */s/Seth A. Safier/*
                                                                 Seth A. Safier, Esq.
                                                                 100 Pine Street, Suite 1250
                                                                 San Francisco, California 94111
                                                                 Telephone: (415) 789-6390
                                                                 Facsimile: (415) 449-6469
                                                                 seth@gutridesafier.com

                                                                 Stephen M. Raab, Esq. (*pro hac vice*)
                                                                 stephen@gutridesafier.com
                                                                 305 Broadway, 7th Floor
                                                                 New York, NY 10007
                                                                 Telephone: (415) 639-9090 x109

                                                                 *Interim Class Counsel*

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I.    INTRODUCTION ........................................................................................ 1

II.   FACTS AND PROCEDURAL HISTORY ........................................................ 3

    A.    Overview of Defendants' Bait-and-Switch Scheme. .................................... 3

    B.    Defendants' Deceptive Practices Were Publicly Criticized for Years to No Avail.... 4

    C.    Plaintiff Snarr Filed A Lawsuit Seeking An Injunction To End Defendants' Bait-And-Switch Scheme.................................................................................... 5

    D.    Defendants Repeatedly Sought to Escape the Lawsuit on Procedural Grounds and Deferred Mediation. ................................................................................ 6

    E.    After the Denial of Their Motion to Dismiss, Defendants Withdrew From the Free File Alliance. ...................................................................................... 7

    F.    The Court Ruled That Defendants Had Voluntarily "Ceased" The "Wrongful Behavior" Alleged in Plaintiff's FAC.......................................................... 8

    G.    Plaintiff's Claims Were Strongly Supported by Evidence............................. 8

    H.    Over More Than Two Years, Plaintiff's Counsel Vigorously Litigated This Case and Defeated Defendants' Motions and Appeals, Until the Court Held Plaintiff Had Achieved His Requested Relief. ........................................................... 10

III.  ARGUMENT ............................................................................................ 12

    A.    The Court May Award Attorneys' Fees Pursuant to § 1021.5................................. 12

        1.    Plaintiff Snarr Is A Successful Party....................................................... 13

        2.    Plaintiff Has Enforced An Important Right Affecting the Public Interest. 18

        3.    Plaintiff Has Conferred A Significant Benefit On the General Public Or A Large Class Of Persons. ................................................................. 19

        4.    The Necessity And Financial Burden Of Private Enforcement Are Such As To Make Plaintiff's Fee Request Appropriate. ........................................ 19

        5.    There Is No Separate Recovery From Which Fees Can Be Paid. .............. 21

    B.    Plaintiff's Requested Fee Award Is Reasonable. ........................................ 21

        1.    Plaintiff's Counsel's Lodestar Is Reasonable. ......................................... 22

        2.    A "Cross-Check" Of The Requested Fee Against the Value to the Public Confirms Its Reasonableness. .............................................................. 23

IV.   CONCLUSION .......................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*American Constitutional Party v. Munro*, 650 F.2d 184 (9th Cir. 1981).....................................13

*Baxter v. Salutary Sportsclubs, Inc.*, 122 Cal. App. 4th 941 (Cal. Ct. App. 2004)..............19, 22

*Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1407 (Cal. Ct. App. 1991) ..............................23

*Cates v. Chiang*, 213 Cal. App. 4th 791 (Cal. Ct. App. 2013)............................................17, 18

*Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663 (Cal. Ct. App. 2006) ...............18

*Collins v. City of Los Angeles,* 205 Cal.App.4th 140 (Cal. Ct. App. 2012)...............................20

*Cty. of Colusa v. Cal. Wildlife Conservation Bd.*, 145 Cal.App.4th 637 (Cal. Ct.
    App. 2006) .......................................................................................................................18

*Dickey v. Advanced Micro Devices, Inc.*, No. 15-cv-04922-HSG, 2020 U.S. Dist.
    LEXIS 30440 (N.D. Cal. Feb. 21, 2020) .........................................................................22

*Evans v. DSW, Inc.*, No. 2:16-cv-03791 JGB (SPx), 2018 U.S. Dist. LEXIS
    218829 (C.D. Cal. Aug. 17, 2018)...................................................................................19

*Fed-Mart Corp. v. Pell Enterprises*, 111 Cal. App. 3d 215 (Cal. Ct. App. 1980).....................21

*Gardner v. GC Servs., LP*, No. 10cv0997 - IEG (CAB), 2012 U.S. Dist. LEXIS
    47034 (S.D. Cal. Apr. 2, 2012)........................................................................................24

*Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th (Cal. 2004) .....................................................13

*Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS
    213045 (N.D. Cal. Dec. 17, 2018) ...................................................................................22

*Henderson v. J.M. Smucker Co.*, No. CV 10–4524–GHK (VBKx), 2013 WL
    3146774 (C.D. Cal. June 19, 2013)..................................................................................14

*Hogar v. Cmty. Dev. Com. of City of Escondido*, 157 Cal.App.4th 1358 (Cal. Ct.
    App. 2007) .......................................................................................................................14

*In re Activision Securities Litigation*, 723 F. Supp.1373 (N.D. Cal. 1989) ...............................24

*In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2018 U.S. Dist. LEXIS
    16242 (N.D. Cal. Sept. 20, 2018)....................................................................................22

*In re Taco Bell Wage & Hour Actions*, 222 F.Supp.3d 813 (E.D. Cal. 2016)...........................14

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994)................23

*Klamath Siskiyou Wildlands Ctr. v. Babbitt,* 105 F.Supp.2d 1132 (D. Or. 2000) .....................14

*Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19 (Cal. Ct. App. 2000) ....................21, 23, 24

*Macdonald v. Ford Motor Co.*, 142 F. Supp. 3d 884 (N.D. Cal. 2015)......................................12

*McPhail v. First Command Fin. Planning, Inc.*, No. 05cv179-IEG-JMA, 2009
    U.S. Dist. LEXIS 26544 (S.D. Cal. Mar. 30, 2009)........................................................25

*Meister v. Regents of Univ. of Calif.*, 67 Cal. App. 4th 437 (Cal. Ct. App. 1998)....................21

*Missouri v. Jenkins*, 491 U.S. 274 (1989)..................................................................................23

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, No. 16-cv-
    00236-WHO, 2020 U.S. Dist. LEXIS 241035 (N.D. Cal. Dec. 22, 2020) .........................22

*Ramos v. Countrywide Home Loans, Inc.*, 82 Cal. App. 4th 615 (Cal. Ct. App.
    2000) ...............................................................................................................................23

*Robinson v. Kimbrough,* 652 F.2d 458 (5th Cir. 1981) .............................................13

*Serrano v. Priest (Serrano III)*, 20 Cal. 3d 25 (Cal. 1977) .......................................21

*Singer v. Becton Dickinson & Co.*, No. 08-CV-821 - IEG (BLM), 2010 U.S. Dist.
  LEXIS 53416 (S.D. Cal. June 1, 2010)...................................................................24

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003)..................................................21

*Sternberg v. Fletcher,* 143 F.3d 748 (2nd Cir. 1998)................................................22

*Sullivan v. Com. of Pa. Dept. of Labor, etc.,* 663 F.2d 443 (3d Cir. 1981) ...............13

*Thomas v. Kent*, No. CV 14-8013 FMO (AGRx), 2019 U.S. Dist. LEXIS 107981
  (C.D. Cal. May 30, 2019)......................................................................................18

*Tipton-Whittingham v. City of Los Angeles*, 34 Cal. 4th 604 (2004) .........................13

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995)......................25

*Vizcaino v. Microsoft Corp.,* 290 F.3d 1043 (9th Cir. 2002) ....................................25

**STATUTES**

Cal. Bus. & Prof. Code § 17200 ...................................................................................5

Cal. Bus. & Prof. Code § 17500 ...................................................................................5

Cal. Code of Civ. Proc. § 1021.5 ...............................................................ii, 2, 12, 13, 18

Cal. Civ. Code § 1750....................................................................................................5

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

In dismissing this case as moot because Defendants had withdrawn from the IRS Free File Program and had promised not to rejoin, the Court concluded that it "can no longer provide effective relief in this case because the allegedly wrongful behavior that is the subject of the request for public injunctive relief has ceased and cannot reasonably be expected to recur." Dkt. 169 at 8. Plaintiff now seeks to recover his attorneys' fees.  Under California law, Plaintiff is entitled to so recover if (1) his lawsuit was a material or contributing factor in motivating the Defendants to provide the relief sought; (2) Plaintiff enforced an important right affecting the public interest; (3) the result provided a significant benefit to a substantial number of people; and (4) an award of fees is appropriate given the need for and financial burden of enforcement through his private lawsuit. Given the Court's conclusion,[1] all four factors are present.

As to the first factor, Defendants' decision to withdraw from the IRS Free File Alliance in 2020 was motivated, at least in significant part, by this lawsuit. Multiple articles and reports had failed to stop H&R Block from diverting people eligible for H&R Block's Free File service into H&R Block's paid services. After Plaintiff sued, Defendants still refused to change, instead attempting to avoid this lawsuit on procedural grounds: they moved to compel individual arbitration, to stay the case based on primary jurisdiction of the IRS, to transfer the case to another court, and to dismiss under Rule 12(b). All of those motions were denied. Defendants then revised their arbitration clause and withdrew from IRS Free File Program, asserting, even before the withdrawal was official, that the withdrawal rendered Plaintiff's public injunction claims "moot."  The Court eventually agreed, holding that Defendants' underlying misconduct of which Plaintiff complained had ended. While Defendants will argue that Plaintiff did not specifically seek to have H&R Block withdraw from the Free File program, the key point is that Plaintiff sought to end the violations of California's consumer protection statutes, and the Court

---

[1] Plaintiff maintains that the Court erred in various respects in characterizing Plaintiff's allegations and in dismissing Plaintiff's claims, and Plaintiff has filed a notice of appeal. However, this motion is based on the Court's order of dismissal, Dkt. 169.

1   held that has occurred. A company does not automatically escape the catalyst doctrine simply

2   because it discontinued a product or service, if the litigation prompted that change.

3       On the second factor, Plaintiff enforced an important right affecting the public interest.

4   The primary goal of Plaintiff's lawsuit was to prevent Defendants from using the bait of "free"

5   filing to lure unsuspecting consumers into Defendants' paid services.  The Court held that,

6   because of Defendants' voluntary changes during the pendency of litigation, Plaintiffs had

7   achieved that goal, as members of the public could no longer be deceived in the way alleged in

8   Plaintiff's complaint.

9       Third, the result provided a significant benefit to a substantial number of people. Each

10  year, ████████████ California residents were misled into paying Defendants ████████

11  ████ for tax filing services that, under Defendants' Free File service, should have been

12  provided for free. The Court has concluded that this particular bait-and-switch is no longer

13  occurring and is unlikely to reoccur, and thus that future tax filers will not be fleeced in that way.

14      Fourth, private enforcement was necessary, and Plaintiff undertook a substantial burden

15  on behalf of the public. H&R Block's efforts to make consumers pay for filing tax returns, even

16  though they were eligible for free filing, were known and criticized for years without any public

17  enforcement. Although the Los Angeles City Attorney filed an action days before Plaintiff did in

18  May 2019, that lawsuit did not allege violations of the CLRA or the FAL, did not seek any class

19  recovery, and has not yet resulted in any major rulings or appeals. Plaintiff's action added

20  necessary pressure, experience, and resources against a multi-billion dollar corporation with a

21  substantial war chest. Defendants' changed practices coincide with major developments in this

22  case. Thus—even though a city attorney had been fighting Defendants concurrently—

23  Defendants' actions were motivated, at least in substantial part, by Plaintiff's lawsuit.

24      Plaintiff is therefore entitled to reasonable attorney fees pursuant to California Code of

25  Civil Procedure § 1021.5.

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.    FACTS AND PROCEDURAL HISTORY

### A.    Overview of Defendants' Bait-and-Switch Scheme.

The Court has determined that this case was not only primarily but *entirely* about Defendants' operation of a bait-and-switch scheme. *See* Dkt. 169 at 3, 8-9. At the time suit was initiated, Defendants—in conjunction with other major online tax service providers and the IRS—were part of a program intended to bring free online filing to about 70% of taxpayers (the "IRS Free File program"). Dkt. 19 ¶¶ 30-33, 37; Dkt. 87 ¶¶ 30-33, 37. As part of Defendants' participation in the IRS Free File program, Defendants were required to operate a free online tax filing service (Defendants' "FFA Product"). Safier Decl., Ex. 2 (Gibson Dep. 24:2-12). However, directing the majority of taxpayers into that free service would undercut the large profits Defendants earn from selling paid tax services, so Defendants concocted a scheme whereby they would divert consumers seeking free e-filing into their paid products. *See generally* Dkt. 19.

The Court's August 13, 2021 order summarized the facts as follows:

> Defendants advertised widely the availability of the Free File program but then used a variety of methods to divert potential customers into Defendants' own programs, which charged a fee. (Dkt. 19 at ¶¶ 41-81.) The manner by which Defendants allegedly diverted taxpayers into Defendants' system, which required payment, is based on the way in which a taxpayer viewed Defendants' website and then interacted with the website. (*Id.* at ¶¶ 53-57.) For example, Plaintiff alleges that "Defendants purposely made it difficult to find" the free part of the system "by placing a 'noindex' tag on the webpage for the free part of the system, with the result that the search engines did not go to that page but instead to Defendants' system which required payment of fees." (*Id.* at ¶ 46.) Defendants also allegedly created a webpage that "is designed to capture taxpayers seeking free e-filing services" and then essentially hid the free part of the system. (*Id.* at ¶¶ 53-59.)

Dkt. 169 at 4.

**B.     Defendants' Deceptive Practices Were Publicly Criticized for Years to No Avail.**

ProPublica, a nonprofit news organization that focuses on investigative journalism in the public interest has been reporting on Defendants' tactics to lure consumers into paying for products that they do not need for years.

In 2017, ProPublica published a report that the tax preparation industry, including Defendants, had vigorously lobbied Congress and engaged in other practices to minimize the risk of free tax filings. Jessica Huseman, *Filing Taxes Could Be Free and Simple. But H&R Block and Intuit Are Still Lobbying Against It.*, PROPUBLICA (Mar. 20, 2017), https://www.propublica.org/article/filing-taxes-could-be-free-simple-hr-block-intuit-lobbying-against-it. The article quotes Senator Elizabeth Warren as saying "[l]et's call the so-called Free File Alliance what it really is — a front for tax prep companies who use it as a gateway to sell expensive products no one would even need if we'd just made it easier for people to pay their taxes." *Id.* The article also noted that only two percent of those eligible for the program use it. *Id.*

In 2018, in a follow-up report, ProPublica reported that "U.S. taxpayers eligible for Free File are spending about $1 billion a year in unnecessary filing fees." Tik Root, *Why Are Millions Paying Online Tax Preparation Fees When They Don't Need to?*, PROPUBLICA (June 17, 2018), https://www.propublica.org/article/free-file-online-tax-preparation-fees-intuit-turbotax-h-r-block. The article described the use of confusing product names by online tax preparers to mislead the public about their "free" offers. *Id.* It also mentioned that TurboTax had failed to link to their FFA Products on their commercial websites (a tactic that Defendants similarly employed). *Id.*

In 2019, ProPublica reported that Defendants had intentionally hid its Free File Offer page from search engines exposing that Defendants were actively seeking to undermine the agreement they had with the IRS at the expense of tax payers. Justin Elliott, *TurboTax Deliberately Hid Its Free File Page From Search Engines*, ProPublica (Apr. 26, 2019), https://www.propublica.org/article/turbotax-deliberately-hides-its-free-file-page-from-search-engines.

ProPublica was not the only one to expose H&R Block's misconduct. In 2015, the Wall Street Journal published an article noting that few taxpayers actually use the Free File program

and that some providers, including H&R Block, have free offers that "can come with additional fees." Laura Saunders, *Why 'Free File' for Taxes Isn't So Popular*, Wall St. J. (Jan. 30, 2015), https://www.wsj.com/articles/why-free-file-for-taxes-isnt-so-popular-1422633546. In 2016, Senator Elizabeth Warren's staff published a report finding that "[t]he tax preparation industry-run Free File program has failed" because it is used by "only 3% of eligible filers" and "can trick taxpayers into purchasing unnecessary products." Staff of Sen. Elizabeth Warren, *Tax Maze: How the Tax Prep Industry Blocks Government from Making Tax Day Easier* (Apr. 2016), https://www.warren.senate.gov/files/documents/Tax_Maze_Report.pdf.

Despite the fact that major news organizations and at least one U.S. Senator have been investigating and publishing reports regarding Defendants' efforts to suppress free filing for years, Defendants continued their illegal scheme to defraud consumers, without any public enforcement action.

### C. Plaintiff Snarr Filed A Lawsuit Seeking An Injunction To End Defendants' Bait-And-Switch Scheme.

Plaintiff filed his complaint in San Francisco County Superior Court on May 17, 2019. Dkt. 1-1. Defendants removed the action to the Northern District of California. Dkt. 1.

On June 26, 2019, Plaintiff served Defendants with a CLRA demand letter. Dkt. 19, Ex. 3. The letter summarized Defendants' bait-and-switch scheme and requested that Defendants "[i]mmediately cease from engaging, or if immediate cessation is impossible or unreasonably expensive under the circumstances, then cease from engaging within a reasonable time, in the above-complained of methods, act, or practices." *Id.* Defendants failed to respond to Plaintiff's letter or to take any of the requested actions within thirty days. Safier Decl., ¶ 50.

In his First Amended Complaint, Plaintiff alleges violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"); violation of the False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.* ("FAL"); and violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL").[2] Dkt. 19 ¶¶ 120-54. As to each claim, Plaintiff

---

[2] Plaintiffs' amended his complaint to remove his breach of contract and unjust enrichment claims, to remove Defendant H&R Block Inc., and to add a CLRA damages claim.

requested an injunction to stop Defendants from continuing the alleged unlawful, deceptive, fraudulent, and unfair business practices. *Id.* ¶¶ 126, 140, 154.

### D.   Defendants Repeatedly Sought to Escape the Lawsuit on Procedural Grounds and Deferred Mediation.

In response to Plaintiff's claims, Defendants filed a series of procedural motions. Defendants' first motions were to compel arbitration and to stay the litigation based on the doctrine of "primary jurisdiction." Dkts. 27, 28. Defendants also moved to transfer venue to the Western District of Missouri. Dkt. 43. After oral argument on the motions to compel arbitration, to stay the litigation, and to appoint GSLLP as interim class counsel, but before the Court could issue its written decision, Defendants filed an administrative motion urgently requesting the Court to advance the hearing date on its venue motion and to transfer the case prior to issuing its impending rulings. Dkt. 48.

On November 5, 2019, the Court issued an opinion denying Defendants' motions to compel arbitration, to stay the litigation, and to advance the hearing date for the motion to transfer venue and granted Plaintiff's motion appointing GSLLP as interim class counsel. Dkt. 51. On November 27, the Court denied Defendants' motion to transfer venue. Dkt. 57. Defendants appealed the Court's arbitration decision (Dkt. 58), lost that appeal (Dkt. 112), and are seeking review by the Supreme Court (Dkt. 141).

After losing their initial series of motions, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. 62. On March 24, 2020, the Court denied Defendants' motion to dismiss in its entirety. Dkt. 85.

Defendants then renewed their motion to compel arbitration, arguing that Plaintiff had agreed to a new arbitration agreement while this action was pending. Dkt. 120. Plaintiff cross-moved for corrective action to invalidate the new arbitration provisions as applied to Plaintiff and the putative class and to require Defendants to obtain court approval for communications with the putative class in the future. Dkt. 123. The Court denied Defendants' motion and granted Plaintiff's cross-motion. Dkt. 140. Defendants again appealed. Dkt. 150.

Throughout these numerous procedural motions and appeals, Defendants did not believe mediation would be productive until much later in this case. *See* Dkt. 53, 118, & 162.

**E.      After the Denial of Their Motion to Dismiss, Defendants Withdrew From the Free File Alliance.**

Defendants were one of the founding members of the Free File Alliance (now Free File, Inc.), and participated in that organization (and the IRS Free File program) from its inception in 2002-2003 through the 2020 tax filing season. Safier Decl., Ex. 4 (Daise Dep. 15:4-11).

On March 6, 2020, Defendants filed their opening brief with the Ninth Circuit appealing the Court's November 5, 2019 order denying arbitration. The brief made no mention of any plan to withdraw from the Free File Alliance. Safier Decl. ¶ 15.

On June 11, 2020—after over a year of litigation, while Defendants' first appeal was pending, and less than 90 days after the Court entered an order denying Defendants' first motion to dismiss Plaintiff's FAC—Defendants provided notice to the IRS that they were terminating membership in the IRS Free File Alliance. Dkt. 120-1 (Watts Decl. ¶ 11).

On September 25, 2020, Defendants filed their appellate reply brief arguing for the first time that they were withdrawing from the Free File Alliance, and that the withdrawal mooted Plaintiff's request for injunctive relief. Safier Decl. ¶ 15.

On October 31, 2020, Defendants' membership in the Free File Alliance terminated, and their participation in the program ceased.  Dkt. 120-1 (Watts Decl. ¶ 13).  Defendants have stated that they have no intention of seeking readmission to the Free File Alliance or participating in the IRS Free File Program in the future. *Id.* ¶ 14.[3]

The Ninth Circuit affirmed this Court's denial of the motion to compel arbitration but instructed that upon remand, the Court could consider whether Defendant's withdrawal from the Free File program rendered moot the claim for public injunction. Dkt. 112.

---

[3] Though Plaintiff argued and maintains that Defendants are capable of resuming their membership in the Free File Alliance, the Court has ruled that the "Defendants' withdrawal from the Free File Program is entrenched because they cannot simply resume the conduct of which Plaintiff complains; rather, they would have to undergo an application process . . . and receive the permission of the IRS to return to participation in the Free File Program." Dkt. 169 at 8.

**F.     The Court Ruled That Defendants Had Voluntarily "Ceased" The "Wrongful Behavior" Alleged in Plaintiff's FAC.**

On March 29, 2021, Defendants filed a second motion to dismiss, arguing that the Court did not have subject matter jurisdiction to rule on Plaintiff's request for injunctive relief because Defendants had voluntarily ceased the conduct challenged in Plaintiff's FAC by withdrawing from the Free File Alliance. Dkt. 130. On August 24, 2021, the Court entered a ruling on Defendants' second motion to dismiss stating that "[t]he Court can no longer provide effective relief in this case because the allegedly wrongful behavior that is the subject of the request for public injunctive relief has ceased and cannot reasonably be expected to recur." Dkt. 169 at 8. The Court went on to explain that "[a]bsent Defendants' participation in the Free File Program with the IRS, Defendants no longer have the 'bait' that forms the basis for the 'bait and switch' that is the subject of Plaintiff's First Amended Complaint," and "Defendants can no longer advertise their participation in the actual Free File Program with the IRS to divert consumers toward their own commercial products." *Id.* at 9. The Court subsequently entered Judgment in accordance with its August 24, 2021 order on the motion to dismiss. Dkt. 170.

**G.     Plaintiff's Claims Were Strongly Supported by Evidence.**

Although discovery was still ongoing when the Court issued the dismissal, Plaintiff's claims were well supported by the evidence.

Throughout the class period, H&R Block offered multiple commercial products (or SKUs) within its online filing system that were distinguished by the forms included with each product and by price; more expensive products included more forms. Safier Decl. Ex. 2 (Gibson Dep. 20:9-23:13).

Moreover, H&R Block concealed the FFA Product from eligible users. Defendants drew consumers into their main webpages, where they heavily marketed commercial products with the language "Free." *Id.*, Ex. 20; Ex. 21 (webpage displaying H&R Block's e-filing options from March 10, 2019);



**H.**     **Over More Than Two Years, Plaintiff's Counsel Vigorously Litigated This Case and Defeated Defendants' Motions and Appeals, Until the Court Held Plaintiff Had Achieved His Requested Relief.**

There can be no reasonable dispute that Plaintiff's attorneys have performed work of the highest quality, over a long period, against one of the nation's top litigation firms. They have worked more than 3000 hours on this case, incurring a total lodestar of approximately $2.6 million at their regular rates. Safier Decl., ¶¶ 61-62. Plaintiff's attorneys have also incurred a total

of approximately $21,612.20 in out-of-pocket expenses. *See* Pl's. Memorandum of Costs. Here is a brief summary of the work that Plaintiff has done in this case:

- Plaintiff thoroughly researched the allegations of the complaint before filing, including consulting with experts.  Safier Decl., ¶ 3.
- Plaintiff defeated Defendants' motion to stay the litigation under the doctrine of "primary jurisdiction." Dkt. 51.
- Plaintiff defeated Defendants' motion to compel arbitration. Dkt. 51.
- Plaintiff defeated Defendants' motion to transfer venue to the Western District of Missouri. Dkt. 57.
- Plaintiff defeated Defendants' motion to stay the litigation pending the outcome of their appeal to the Ninth Circuit.  Dkt. 85.
- Plaintiff defeated Defendants' appeal to the Ninth Circuit. Dkts. 51, 85, 112.
- Plaintiff successfully moved for appointment as interim class counsel. Dkt. 51.
- Plaintiff defeated Defendants' motion to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. 85.
- Plaintiff defeated Defendants' motion to strike several allegations and terms from the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(f). Dkt. 96.
- Plaintiff defeated Defendants' renewed motion to compel arbitration Dkt. 140.
- Plaintiff successfully cross-moved for corrective action and injunctive relief to preclude Defendants from making further attempts to induce class members to agree to the new arbitration provision. Dkt. 140.
- Plaintiff opposed Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Dkt. 143.
- Plaintiff negotiated a Protective Order and a Stipulation Regarding ESI Discovery with Defendants. Dkts. 104, 106.
- Plaintiff's attorneys collected 78,139 documents from Plaintiff.

- Plaintiff received 31,836 documents from Defendants and third parties and coded and reviewed 21,571 documents.

- Plaintiff issued 25 interrogatories, 68 requests for production, and 6 third-party subpoenas. Safier Decl. ¶¶ 21-27, 33-34.

- Plaintiff fought multiple discovery disputes. Dkts. 137, 160, 161, 166.

- Plaintiff took four fact witness depositions and deposed three 30(b)(6) deponents. *Id.* ¶¶ 35-36.

- Plaintiff drafted his class certification motion and supporting declarations, and was preparing to file them by the August 27, 2021 deadline; they were not filed only because the Court issued the dismissal order on August 24. *Id.* ¶ 20.

As the summary above shows, Defendants have pursued an aggressive litigation posture, filing repeated Rule 12 motions (three), repeated motions to compel arbitration (two), appeals (two), and a petition for certiorari with the Supreme Court.

## III.   ARGUMENT

### A.   The Court May Award Attorneys' Fees Pursuant to § 1021.5.

"California's Code of Civil Procedure section 1021.5 provides an exception to the general rule that each party to a lawsuit bears its own attorneys' fees." *Macdonald v. Ford Motor Co.*, 142 F. Supp. 3d 884, 890 (N.D. Cal. 2015). Section 1021.5 provides that:

> [A] court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.

Cal. Civ. Proc. Code § 1021.5.

Here, (1) Plaintiff Snarr is a successful party because his lawsuit was the catalyst for causing Defendants to withdraw from the free-file program, which the Court concluded brought an end to the bait-and-switch and statutory violations at issue; (2) he has enforced an important right affecting the public interest; (3) he has conferred a significant benefit on the general public

or a large class of persons; (4) the necessity and financial burden of private enforcement makes the award appropriate; and (5) and there has been no direct monetary recovery from which fees could otherwise be paid. His attorneys incurred considerable time, risk, and effort in his claims. Accordingly, the Court should award fees.

## 1.    Plaintiff Snarr Is A Successful Party.

A plaintiff is a "successful party" under Section 1021.5 if (1) "the lawsuit was a catalyst motivating the defendants to provide the primary relief sought;" (2) "the lawsuit had merit and achieved its catalytic effect by threat of victory, not by dint of nuisance and threat of expense;" and (3) the plaintiff "reasonably attempted to settle the litigation prior to filing the lawsuit" or such settlement demand would have been futile. *Macdonald*, 142 F. Supp. 3d at 890-91, 895 (quoting *Tipton-Whittingham v. City of Los Angeles*, 34 Cal. 4th 604, 608 (2004)) ("Catalyst Test"). A lawsuit can be considered a catalyst "whether the relief is obtained through a 'voluntary' change in the defendant's conduct, through a settlement, or otherwise." *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th at 567 (Cal. 2004) (citing *Sullivan v. Com. of Pa. Dept. of Labor, etc.,* 663 F.2d 443, 447-450 (3d Cir. 1981); *Robinson v. Kimbrough,* 652 F.2d 458, 465-466 (5th Cir. 1981); *American Constitutional Party v. Munro*, 650 F.2d 184, 187-188 (9th Cir. 1981)).

As explained *infra*, Plaintiff satisfies all three prongs of the Catalyst Test and, therefore, he is a successful party eligible for a fee award pursuant to Cal. Civ. Proc. Code § 1021.5.

### a)    Defendants' Voluntarily Ceased Their Participation In IRS Free File In Response To Plaintiffs' Litigation.

Courts take "a broad, pragmatic view of what constitutes a successful party," and "[a] plaintiff will be considered a successful party where an important right is vindicated by activating defendants to modify their behavior." *Graham*, 34 Cal. 4th at 565, 567 (internal quotation marks and citations omitted).

To demonstrate that the litigation was a catalyst for the change at issue, the plaintiff must show that his suit was "a substantial causal factor" in the changed conduct, but not necessarily the

only factor. *See Henderson v. J.M. Smucker Co.*, No. CV 10-4524-GHK (VBKx), 2013 U.S. Dist. LEXIS 87030, at *11 (C.D. Cal. June 19, 2013) (quoting *Graham*, 34 Cal. 4th at 573). Thus, a plaintiff must show that the lawsuit was a "material factor" or "contributed in a significant way" to the changed practice. *Id.* "[T]he chronology of events may raise an inference that the litigation was the catalyst for the relief." *Hogar v. Cmty. Dev. Com. of City of Escondido*, 157 Cal.App.4th 1358, 1366 (Cal. Ct. App. 2007); *see also In re Taco Bell Wage & Hour Actions*, 222 F.Supp.3d 813, 825 (E.D. Cal. 2016) ("[W]ithin several months of this lawsuit being filed [defendant] changed its . . . policy . . . to comply with California law. The timing of the change . . . is circumstantial evidence from which the Court finds that this lawsuit was the reason that [defendant] changed its . . . policy."). While Defendants may rebut that inference, courts should be "mindful that 'defendants, on the whole, are usually rather reluctant to concede that the litigation prompted them to mend their ways." *Macdonald*, 142 F. Supp. 3d at 891 (quoting *Klamath Siskiyou Wildlands Ctr. v. Babbitt,* 105 F.Supp.2d 1132, 1139 (D. Or. 2000)).

As explained *supra,* the chronology of events supports an inference that Plaintiff's lawsuit caused Defendants to withdraw from the Free File Program. Despite public attention to the misconduct, the filing of the complaint, the issuance of a CLRA letter, and an amended complaint, Defendants did not withdraw from the program until it was strategically beneficial. Specifically, Defendants waited until *after* the Court had denied their motions to compel arbitration, to transfer, to stay, and to dismiss. Indeed, Defendants first notified the IRS of their intent to withdraw from the program 79 days after the Court unequivocally recognized that Plaintiff's claims are actionable, and more than a year after the Complaint had been filed. Therefore, at minimum, it can be inferred that Plaintiff's lawsuit and the numerous victories he achieved played a substantial role in Defendants' decision.

Second, the primary relief that Plaintiff sought was to end Defendants' misleading and unfair practices under three California consumer protection statutes. Here, Plaintiff's request for relief listed injunctive relief first (Dkt. 19 at 43), and Plaintiff's request for a public injunction has thus far been the primary focus of this litigation, including in Defendants' motions to compel

1    arbitration (*see* Dkts. 14, 27, 120), appeals (*see* Dkt. 112), and motions to dismiss (*see* Dkts. 62,

2    130). The Court held that "Defendants' withdrawal from the Free File Program mooted Plaintiff's

3    entire request for public injunctive relief." Dkt. 169 at 8. Plaintiff maintains that the relief he

4    seeks is broader than what the Court determined; however, according to the Court's ruling,

5    Plaintiff has obtained the primary relief sought. Indeed, on the basis of that ruling, the Court

6    dismissed the entire litigation. In any event, Plaintiff need not show that he obtained *all* the relief

7    he sought. *See RiverWatch v. Cty. of San Diego Dep't of Envtl. Health*, 175 Cal. App. 4th 768,

8    782-83 (2009) ("The party seeking attorney fees need not prevail on all its claims alleged in order

9    to qualify for an award."). Rather, Plaintiff is a successful party as long as he succeeded "on any

10   significant issue in litigation which achieves some of the benefit [he] sought in bringing suit." *Id.*

11   at 783. Moreover, the success can be a conceptual one, in terms of obtaining compliance with the

12   statutes at issue, rather than actual or concrete. *See id.* at 781 (explaining that the benefit

13   conferred by the result "may be conceptual or doctrinal and need not be actual or concrete;

14   further, the effectuation of a statutory or constitutional purpose may be sufficient").

15          According to the conclusion of this Court, and consistent with the principles identified

16   above, Plaintiff has succeeded in bringing Defendants into compliance with California's

17   consumer protection statutes. In most bait-and-switch cases, consumers will generally prefer that

18   companies stop the "switch," while companies may prefer (if they cannot continue the bait-and-

19   switch) to remove the "bait." Indeed, even if injunctions and judgments are entered against them,

20   companies always have the option of discontinuing the challenged marketing, product, or service,

21   rather than providing a better product or service or more effective disclosures. In the end,

22   Plaintiff, and even this Court, can require only that Defendants comply with the law; Defendants

23   cannot be compelled to continue their participation in the Free File program. The Court has held

24   that the bait-and-switch is over and thus that consumers are no longer being *wrongly* charged to

25   file their taxes in the ways that were at issue in this lawsuit. That is both a conceptual and

26   concrete benefit to the public. Plaintiff's legal victory is not negated in any way by Defendants'

27

28

decision to end the bait-and-switch one way rather than another, as long as the ultimate goal (the end of the bait-and-switch) was achieved.

### b) Plaintiff's Lawsuit Has Merit.

A lawsuit has merit for the purposes of the catalyst theory if it is not "frivolous, unreasonable or groundless." *Henderson*, 2013 U.S. Dist. LEXIS 87030, at *28 (citing *Graham*, 34 Cal. 4th at 575 (internal citations and quotations removed)). *Graham* instructs that this inquiry does not require the Court to determine whether the plaintiff could have obtained "a final decision on the merits" but rather "at a minimum that the questions of law or fact are grave and difficult." *Id.* at 575-76. The requirement for the suit to have merit is "designed to screen out nuisance suits." *Id.*

Plaintiff's action cannot be considered a nuisance suit. The action survived multiple challenges and, though it was ultimately dismissed, this was not for failure to properly plead an actionable claim. Rather, the Court held that the case was mooted because Defendants voluntary ceased their "allegedly wrongful behavior." Dkt. 169 at 8.

Further, as elaborated in section II.G, Plaintiff's claims were on the eve of certification and were well supported by evidence showing that Defendants omitted material information that consumers were eligible for Defendants' FFA Product and Defendants also made affirmative misrepresentations that consumers ██████ H&R Block's paid products even though they were eligible to file for free using the FFA Product within that very same online filing system. Further, the evidence shows that Defendants actively concealed their FFA Product, which shows that Defendants were well aware of their actions and knew that their customers were eligible for the offer but wished to prevent them from accessing it. *See In re Toyota RAV4 Hybrid Fuel Tank Litig.*, No. 20-cv-00337-EMC, 2021 U.S. Dist. LEXIS 69643, at *63-64 (N.D. Cal. Apr. 9, 2021) (explaining a duty to disclose arises where the defendant had exclusive knowledge of material facts or actively concealed material facts); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 960 (N.D. Cal. 2014) (noting "the presence of information online does not automatically defeat exclusive knowledge").

1

             **c)**       **Any Attempt to Settle The Lawsuit Pre-litigation Would Have Been Futile.**

2        "[A] plaintiff seeking attorney fees under a catalyst theory must first reasonably attempt to

3    settle the matter short of litigation." *Henderson*, 2013 U.S. Dist. LEXIS 87030, at *30 (quoting

4    *Graham*, 34 Cal. 4th at 577). However, where settlement attempts would have been futile, this

5    rule is not an absolute bar to an award of fees under section 1021.5. *See, e.g, Cates v. Chiang*, 213

6    Cal. App. 4th 791, 817 (Cal. Ct. App. 2013) ("Exercising its broad discretion, the court did not err

7    in concluding that because the undisputed evidence shows a prelitigation demand would have

8    been futile, Cates was not barred from recovering section 1021.5 attorney fees."); *Envtl. Prot.*

9    *Info. Ctr. v. California Dep't of Forestry & Fire Prot.*, 190 Cal. App. 4th 217, 237 (2010), *as*

10   *modified on denial of reh'g* (Dec. 15, 2010) ("The question a trial court must address in making

11   its necessity determination is whether a reasonable settlement offer might have prevented a

12   lawsuit."); *see also Vasquez v. State of Cal.*, 45 Cal. 4th 243, 259 n.5 (2008) (noting that whether

13   settlement efforts would have been futile "is logically relevant to a trial court's determination of

14   the question whether private enforcement was sufficiently necessary to justify an award of fees").

15        Here, there is substantial evidence suggesting that any attempt to notify Defendants of

16   Plaintiff's claims before filing suit would have been futile. First, news outlets such as ProPublica

17   and the Wall Street Journal had been publishing stories regarding Defendants' practices for years

18   preceding Plaintiff's complaint, and Defendants' bait-and-switch conduct continued. Similarly,

19   Senator Elizabeth Warren was a vocal critic of Defendants' practices but that pressure did not

20   cause Defendants to change their practices. Second, Defendants have poured an inordinate

21   amount of resources into this litigation, making it clearer than words that they were not willing to

22   negotiate. Prior to their exit from the Free File program, Defendants were not interested in

23   negotiating with Plaintiff to provide the relief sought (by offering to end the practices at issue).

24   For example, prior to amending his complaint to seek damages, Plaintiff Snarr sent Defendants a

25   CLRA demand letter.  Defendants expressly accepted service but then failed to respond to the

26   letter. Further, Plaintiff has been willing to negotiate with Defendants regarding resolution of the

27   claims through mediation but Defendants have repeatedly sought to defer those efforts. Safier

28

Decl. ¶¶ 50-56.  Here, as stated in *Cates,* the purpose of the pre-settlement demand rule is not to bar valid fees awards where Plaintiff has worked diligently to resolve a matter, rather, it is to encourage efficient resolution of claims. *See* 213 Cal. App. 4th 791 at 816 ("But because it is a judicially-created rule to promote the purposes of section 1021.5 and deter attorneys from filing meritless suits merely to obtain attorney fees, it should not be applied to bar an attorney fees recovery where to do so would defeat the core purpose of the statute."). Here, undisputed evidence suggests that any attempt to settle the matter with a pre-litigation notice would have been futile.

### 2.    Plaintiff Has Enforced An Important Right Affecting the Public Interest.

"In determining what constitutes an important right, courts should 'ascertain the strength or social importance of the right involved . . . in terms of its relationship to the achievement of fundamental legislative goals.'" *Thomas v. Kent*, No. CV 14-8013 FMO (AGRx), 2019 U.S. Dist. LEXIS 107981, at *29-30 (C.D. Cal. May 30, 2019) (quoting *Cty. of Colusa v. Cal. Wildlife Conservation Bd.*, 145 Cal. App. 4th 637, 652 (Cal. Ct. App. 2006)). The enforcement of the California consumer protection laws qualifies as "an important right affecting the public interest." *Henderson,* 2013 U.S. Dist. LEXIS 87030, at *33 (quoting *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 703 (Cal. Ct. App. 2006)).

Plaintiff sought an injunction to end Defendants' illegal bait-and-switch scheme on behalf of the people of California on the basis that the scheme violated the California statutes. The Court recognized that Plaintiff had adequately pleaded violations of the consumer statutes. Dkt. 85 (denying motion to dismiss FAC). Subsequently, the Court held that because Defendants had ended their participation in the IRS Free File Program, there was no additional injunctive relief that could be awarded under those statutes on Plaintiffs' complaint. Dkt. 169 ("[T]he allegedly wrongful behavior that is the subject of the request for public injunctive relief has ceased and cannot reasonably be expected to recur."). Thus, under the Court's ruling, Plaintiff has achieved enforcement of the statutes at issue. *See, e.g.*, *Henderson,* 2013 U.S. Dist. LEXIS 87030, at *33.

1

**3.     Plaintiff Has Conferred A Significant Benefit On the General Public Or A Large Class Of Persons.**

2       The Court determines "the significance of the benefit and the size of the class receiving

3   that benefit by realistically assessing the gains that have resulted in a particular case."

4   *Macdonald*, 142 F. Supp. 3d at 896 (quoting *Baxter v. Salutary Sportsclubs, Inc.*, 122 Cal. App.

5   4th 941, 945 (Cal. Ct. App. 2004)). For example, a recall affecting about 70,000 vehicles satisfies

6   this inquiry. *Id.* Alternatively, in cases enforcing statutory or constitutional rights, "[t]he

7   substantial benefit may be conceptual or doctrinal, and need not be actual and concrete, so long as

8   the public is primarily benefited." *Planned Parenthood v. Aakhus*, 14 Cal. App. 4th 162, 171

9   (1993); *RiverWatch*, 175 Cal. App. 4th at 781.

10       Defendants' bait-and-switch scheme defrauded ███████████████ Californians

11   who were eligible for Defendants' FFA Product but were charged for a forms-based product

12   during the class period. ████████████████████████████████████████████

13   ████████████████████████████████████████████████████████████

14   ████████████████████████████   Those are just the numbers of people who were

15   financially victimized in the past, not the ██████ of people who could potentially have been

16   affected going forward. Moreover, it is not necessary for Plaintiff to provide a specific number to

17   satisfy this element; it is enough that the general public has generally benefitted from the lawsuit.

18   *See id.* ("Regardless of the specific number, the Court finds that both the class of individuals who

19   bought or leased 2005-07 Freestyle vehicles and the general public have benefited from the

20   CSP."). The Court's determination that Defendants' bait-and-switch has ended implies benefits to

21   ████████████████   California residents going forward, both conceptually and concretely.

22
**4.     The Necessity And Financial Burden Of Private Enforcement Are Such As To Make Plaintiff's Fee Request Appropriate.**
23

24       "A court must ask 'whether private enforcement was necessary and whether the financial

25   burden of private enforcement warrants subsidizing the successful party's attorneys.'" *Evans v.*

26   *DSW, Inc.*, No. 2:16-cv-03791 JGB (SPx), 2018 U.S. Dist. LEXIS 218829, at *15-37 (C.D. Cal.

27   Aug. 17, 2018) (citing *In re Conservatorship of Whitley*, 50 Cal. 4th 1206, 1214 (Cal. 2010)

28

1   (internal quotation marks and citation omitted).). Courts take into account all relevant

2   circumstances, such as "whether anyone previously called the problem to the defendant's

3   attention, whether attempts to settle were futile, and whether exigent circumstances required

4   immediate resort to judicial processes." Necessity is proven where public enforcement of the right

5   affecting the public interest in the case "is inadequate." *Collins v. City of Los Angeles,* 205 Cal.

6   App. 4th 140, 154 (Cal. Ct. App. 2012). The financial burden of private enforcement makes a fee

7   award "appropriate when the cost of the claimant's legal victory transcends his personal interest,

8   that is, when the necessity for pursuing the lawsuit placed a burden . . . out of proportion to his

9   individual stake in the matter." *County of Inyo v. City of Los Angeles* (1978) 78 Cal.App.3d 82,

10  89 (quotation omitted).

11          With regard to necessity, although the Los Angeles City Attorney filed a similar lawsuit

12  against Defendants that it is still pending in state Court, Plaintiff's lawsuit alleged two additional

13  causes of action, one under the CLRA and one under FAL and has proceeded in Federal Court.

14  Additionally, Plaintiff brought his action as a class action on behalf of California consumers,

15  which increased the pressure on Defendants. The Los Angeles City Attorney's state court

16  proceeding is proceeding slowly, as the court denied a motion to stay on August 31, 2020 (relying

17  part on this Court's decision denying a similar motion to stay in this case), and the only

18  substantive order since has been the resolution of a discovery dispute in May 2021. *See* Safier

19  Decl. Ex. 24. In any event, necessity does not require that there be no public resources

20  prosecuting the case, only that those resources be insufficient. Plaintiff's lawsuit brought

21  additional pressure to bear on Defendants and was necessary in achieving the Defendants'

22  voluntary changes of action. The timing of Defendants' withdrawal from the Free File Alliance

23  only a short time after Plaintiff defeated Defendants' motions to compel arbitration and dismiss

24  supports an inference that Plaintiff's action was a necessary and substantial factor in achieving

25  the changed practices.

26          With regard to burden, Plaintiff and his counsel have expended resources that far exceed

27  their personal interest in this matter. Plaintiff Snarr's individual damages are around $145: the

28

1   amount he paid Defendant in tax filing fees.  But because he agreed to serve as a named plaintiff,

2   he had to have his entire personal computer imaged for a forensic analysis by Defendants; he

3   spent hours going through his files, helping Plaintiff's counsel to respond to written discovery

4   requests, and preparing for and testifying at his deposition. Plaintiff's counsel has also expended

5   thousands of hours on this matter and has expended $21,612.20 in out-of-pocket costs without

6   any compensation. Plaintiff and his counsel were motivated by their desire to serve the public and

7   to end Defendants' deceptive practices.

8   **5.      There Is No Separate Recovery From Which Fees Can Be Paid.**

9        Finally, the Court must consider whether the "fees should not in the interest of justice be

10  paid out of the recovery, *if any*." Cal. Civ. P. Code § 1021.5 (emphasis added). This factor

11  requires the Court to consider whether attorney fees are more appropriately be paid from any

12  recovery achieved on behalf of the public. However, the language "if any" indicates that this

13  factor only can be considered if a plaintiff has achieved monetary recovery. Because the Court

14  dismissed the case as moot, there will be no class recovery from which fees can be recovered.

15  **B.      Plaintiff's Requested Fee Award Is Reasonable.**

16       Plaintiff requests a fee award of $2,610,932.50, equal to their actual lodestar. *See*

17  *RiverWatch*, 175 Cal. App. 4th at 783 ("Prevailing counsel who qualify for an award under

18  section 1021.5 are entitled to compensation for all hours reasonably spent."). As explained below,

19  the requested amount is reasonable and fair to compensate Plaintiff's attorneys for their work on

20  this case.

21       In California, attorneys' fee awards are traditionally determined by the "lodestar-

22  multiplier method." *See Serrano v. Priest (Serrano III)*, 20 Cal. 3d 25, 48-49 (Cal. 1977)*; see also*

23  *Meister v. Regents of Univ. of Calif.,* 67 Cal. App. 4th 437, 449 (Cal. Ct. App. 1998).

24       The Court may also "cross-check" the reasonableness of a lodestar against the fee that

25  might be awarded as a "percentage of recovery," if the recovery can be "monetized with a

26  reasonably degree of certainty." *See Lealao v. Beneficial Cal., Inc.,* 82 Cal. App. 4th 19, 49-50

27  (Cal. Ct. App. 2000); *cf. Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003) (where value of

28

1  injunctive relief can be "accurately ascertained," courts should include it in the value of the

2  recovery). Here, the requested fee is well within the appropriate percentage range of the amount

3  saved by class members.

4  **1.  Plaintiff's Counsel's Lodestar Is Reasonable.**

5  Plaintiff's Counsel's lodestar through the date of this application is $2,610,932.50. Safier

6  Decl., ¶ 61 (table showing hours worked by timekeeper).

7  Plaintiff's Counsel calculated their lodestar using Plaintiff's Counsel's regular billing

8  rates. *Id.*, ¶ 62. These rates are current market rates in San Francisco for attorneys of Plaintiff's

9  Counsel's background and experience. *See, e.g.*, *Planned Parenthood Fed'n of Am., Inc. v. Ctr.*

10  *for Med. Progress*, No. 16-cv-00236-WHO, 2020 U.S. Dist. LEXIS 241035, at *13 n.4 (N.D. Cal.

11  Dec. 22, 2020) (approving as reasonable partner and associates rates ranging from $545-

12  $1,280/hour and paralegal rates of up to $405/hour); *Hefler v. Wells Fargo & Co.*, No. 16-cv-

13  05479-JST, 2018 U.S. Dist. LEXIS 213045, at *39 (N.D. Cal. Dec. 17, 2018), *aff'd*, 802 Fed.

14  App'x 285 (9th Cir. 2020) (finding hourly rate ranges from $400-$1,250 and from $245-$350 for

15  paralegals to be reasonable); *Human Rights Def. Ctr. v. Cty. of Napa*, No. 20-cv-01296-JCS, 2021

16  U.S. Dist. LEXIS 59778, at *32 (N.D. Cal. Mar. 28, 2021) (approving fees of between $625-

17  $1,100/hour for attorneys and up $350/hour for paralegals); *Dickey v. Advanced Micro Devices,*

18  *Inc.*, No. 15-cv-04922-HSG, 2020 U.S. Dist. LEXIS 30440, at *22 (N.D. Cal. Feb. 21, 2020)

19  (approving rates up to $1,000); *In re Lidoderm Antitrust Litig.,* No. 14-md-02521-WHO, 2018

20  U.S. Dist. LEXIS 162425, at *33 (N.D. Cal. Sep. 20, 2018) (approving rates up to $1,050 for

21  partners in 2018). Plaintiff's Counsel attended top law schools, worked at other prestigious firms,

22  and have many years of experience. Safier Decl., ¶¶ 70-71 & Ex 1 (Firm Resume).  As the Court

23  recognized in appointing Plaintiff's Counsel as Interim Class Counsel, "[GSLLP's] designation as

24  interim lead counsel is appropriate given its . . . expertise drawn from work on similar complex

25  consumer class action cases." Dkt. 51 at 11.

26  The rates being used are the 2021 rates charged by Plaintiff's Counsel, which is

27  appropriate given the deferred and contingent nature of counsel's compensation. *See LeBlanc-*

28

---

1   *Sternberg v. Fletcher,* 143 F.3d 748, 764 (2nd Cir. 1998) ("[C]urrent rates, rather than historical

2   rates, should be applied in order to compensate for the delay in payment. . . .") (citing *Missouri v.*

3   *Jenkins,* 491 U.S. 274, 283-84 (1989)), *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19

4   F.3d 1291, 1305 (9th Cir. 1994) ("The district court has discretion to compensate delay in

5   payment in one of two ways: (1) by applying the attorneys' current rates to all hours billed during

6   the course of litigation; or (2) by using the attorneys' historical rates and adding a prime rate

7   enhancement.").

8          Although Plaintiff's counsel does not request a multiplier, one could easily be justified. A

9   court may award a multiplier after taking into account a variety of factors "including the quality

10   of the representation, the novelty and complexity of the issues, the results obtained and the

11   contingent risk presented." *Lealao,* 82 Cal. App. 4th at 26; *see also Serrano III*, 20 Cal. 3d at 48-

12   49; *Ramos v. Countrywide Home Loans, Inc.*, 82 Cal. App. 4th 615, 622 (2000); *Beasley v. Wells*

13   *Fargo Bank*, 235 Cal. App. 3d 1407, 1418 (Cal. Ct. App. 1991) (multipliers are used to

14   compensate counsel for the risk of loss, and to encourage counsel to undertake actions that benefit

15   the public interest). As explained above, GSLLP attorneys are of the highest quality. Further, the

16   issues in this case were complex including a wide range of legal issues including, *inter alia*,

17   "primary jurisdiction," standing for injunctive relief, and appeals before the Ninth Circuit.

18   Plaintiff's counsel competently and consistently won these motions and appeals for the public.

19   Finally, the result that Plaintiffs' counsel has achieved substantial, and per the Court' August 24,

20   2021 order, Defendants have voluntary stopped the wrongful conduct in Plaintiff's FAC. Dkt. 169

21   at 8.  Plaintiff undertook considerable risk in bringing this action and Plaintiffs' counsel bore the

22   costs of this litigation out of pocket, which further would support award of a multiplier to

23   incentivize competent private attorneys to work for the public good.

24          **2.      A "Cross-Check" Of The Requested Fee Against the Value to the**
            **Public Confirms Its Reasonableness.**
25

26          The fee request also is supported by a "cross-check" against the fee that might be awarded

27   as a "percentage of recovery." This kind of cross-check may be performed, if necessary, to adjust

28

---

the lodestar based on the "amount at stake" and the "results obtained." *See Lealao*, 82 Cal. App. 4th. at 39-40 ("in cases in which the value of the class recovery can be monetized with a reasonable degree of certainty and it is not otherwise inappropriate, a trial court has discretion to adjust the basic lodestar through the application of a positive or negative multiplier where necessary to ensure that the fee awarded is within the range of fees freely negotiated in the legal marketplace in comparable litigation"); *see also Glendora Community Redevelopment Agency,* 155 Cal. App. 3d 465; *In re Activision Securities Litigation*, 723 F. Supp.1373, 1378 (N.D. Cal. 1989) (percentage of benefit approach is preferred to ensure "proportionality, predictability and protection of the class," while ignoring that approach "encourages abuses such as unjustified work and protracting the litigation").

While here, the injunction did not result in a "recovery," the value of the changed practice to the public can be estimated at well in excess of $██████. According to evidence produced in discovery, ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████. If Defendant's withdrawal from IRS Free File has eliminated the potential for similar fraudulent or unfair charges in the future (as the Court's mootness ruling would suggest), then the value of the changed practices over the next ten years, applying a discount rate of 10% per year, is ████████████ *See* Safier Decl. ¶¶ 74-77.

Courts applying the percentage-of-the-recovery approach have typically set a percentage-of-the-recovery benchmark at approximately 25%, although often the awarded rate is above 30%. *See, e.g., Singer v. Becton Dickinson & Co.,* No. 08-CV-821 - IEG (BLM), 2010 U.S. Dist. LEXIS 53416, at *22-23 (S.D. Cal. June 1, 2010) (awarding counsel one-third of a million dollar common fund); *Gardner v. GC Servs., LP,* No. 10cv0997 - IEG (CAB), 2012 U.S. Dist. LEXIS 47034, at *5 (S.D. Cal. Apr. 2, 2012) (awarding counsel 30 percent of common fund where class would receive an average cash award of several hundred dollars); *McPhail v. First Command Fin.*

*Planning, Inc.,* No. 05cv179-IEG-JMA, 2009 U.S. Dist. LEXIS 26544, at *20 (S.D. Cal. Mar. 30, 2009) (departure from benchmark appropriate where litigation spanned four years and involved sophisticated briefing); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 297-98 (N.D. Cal. 1995) (citing cases finding 30-50 percent of common fund an appropriate range where common fund is less than ten million). The same factors that govern use of a multiplier also apply to diverging from the benchmark. *See Singer*, 2010 U.S. Dist. LEXIS 53416, at *8 (citing *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1048–50 (9th Cir. 2002)). Here, the total fee is less than ███ of the presumptive class savings.

## IV.    CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully request that they be awarded $2,610,932.50 in attorneys' fees.

Dated: September 7, 2021              Respectfully submitted,

**GUTRIDE SAFIER LLP**

*/s/Seth A. Safier/*
Seth A. Safier, Esq.
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 789-6390
Facsimile: (415) 449-6469
seth@gutridesafier.com

Stephen M. Raab, Esq. (*pro hac vice*)
stephen@gutridesafier.com
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (415) 639-9090 x109

*Interim Class Counsel*